# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

GERMAN C. SINISTERRA, )
)
**Movant,** )
)
vs. )      **Case No. 04-8003-CV-W-GAF**
)      **Crim. No. 98-00311-02-CR-W-GAF**
UNITED STATES OF AMERICA, )
)
**Respondent.** )

## ORDER DENYING MOVANT'S 28 U.S.C. § 2255 MOTION

After trial by jury, Movant's convictions and sentence were affirmed on direct appeal. *United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002), *cert. denied*, 124 S.Ct. 920 (2003). Now pursuant to 28 U.S.C. § 2255, Movant argues his convictions and sentence to death should be vacated and set aside.

## I.  LEGAL CHALLENGES

### A.  Statutory Aggravating Factors

Movant, German C. Sinisterra, first claims that his Fifth and Sixth Amendment rights were violated by the Government's failure to charge statutory aggravating circumstances in the indictment based on *Ring v. Arizona*, 536 U.S. 584 (2002) - an opinion handed down two years after Sinisterra's trial. The Supreme Court has held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2526 (2004). The Eighth Circuit has stated that although *Ring* did not "address whether the Fifth Amendment also requires capital aggravating factors to be found by the grand jury and included in the indictment" the court found that "*Ring* necessarily implies such a Fifth Amendment requirement." *United States v. Allen*, 406 F.3d 940, 942 (8th Cir. 2005).

Appellate Case: 08-1925    Page: 1    Date Filed: 04/23/2008 Entry ID: 3426453

However, the Eighth Circuit has held that the failure to charge at least one statutory aggravating factor in the indictment is not, as Sinisterra claims, a structural error. *Allen, id*. at 945. Thus, even if *Ring* was applied retroactively, the inquiry for the appellate court would have been whether the defect in the indictment was harmless beyond a reasonable doubt. *Id*.

Furthermore, in the case at bar, although statutory aggravating factors were not specifically alleged in the indictment, the charges in Counts Two and Three of the indictment were part of the aggravating factors used by the petit jury to impose the death penalty. In essence, statutory aggravating factors were in the indictment, but in the form of the charges in Counts Two and Three, and thus considered by both the grand jury and the petit jury.

Sinisterra's counsel did contest the aggravating factors presented to the petit jury, and the Eighth Circuit found that the aggravating factors were correct and the jury, as the rational trier of the facts, properly found the aggravating circumstances beyond a reasonable doubt. *See United States v. Ortiz*, 315 F.3d 873, 900-02 (8th Cir. 2002).

If an appellate court reviewed the evidence in Sinisterra's case that was either presented to the grand jury, or reviewed the entire record presented to the petit jury, or viewed the petit jury's verdict which found the aggravating factors beyond a reasonable doubt, either scenario would lead to the conclusion that the fact that no aggravating circumstances were listed in the indictment amounted to harmless error. *See Allen*, *id*. at 946.

Consequently, even if his counsel had appealed, they would not have prevailed as seen by the appellate court's review of the aggravating factor issues raised by Sinisterra. Sinisterra's counsel, therefore, were not ineffective in not preserving this issue and raising it on appeal as additionally argued.

2

**B.**      <u>**FDPA Evidentiary Standard During Death Penalty Phase**</u>

Sinisterra claims the Federal Death Penalty Act (FDPA) is unconstitutional in that the evidentiary standards are relaxed in the death penalty phase. However, Sinisterra's reliance on *United States v. Fell*, 217 F.Supp.2d 469 (D.Vt. 2002), *rev'd by* 360 F.3d 135 (2nd Cir. 2004) to support his claim is misplaced. When the *Fell* case was reversed, the Second Circuit ruled that the FDPA does not impair the reliability of the evidence submitted during the penalty phase. *Fell*, 360 F.3d at 145-146. Thus, *Fell* offers no support to Sinisterra's claim.

Furthermore, the Eighth Circuit Court of Appeals agreed with the Second Circuit that "[r]ather, the admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *United States v. Lee*, 374 F.3d 637, 645 (8th Cir. 2004) (citing *Fell*, 360 F.3d at 143).

**C.**      <u>**Vienna Convention**</u>

Sinisterra next contends that the Government's failure to comply with the Vienna Convention on Consular Relations violated his right to consular consultation. As Sinisterra acknowledges, the Eighth Circuit has already addressed this issue and found that "this record contains no evidence that violations of the Vienna Convention in this case of defendants prejudiced them in any way." *Ortiz*, 315 F.3d at 887. In fact, the Eighth Circuit disagreed with the contention that a violation of the Vienna Convention renders a defendant's statements inadmissible. *Id*. at 886. The court stated that:

> Even if we assume for present purposes that the Convention creates an individually enforceable right, it would not follow, on this record, that the statements should be excluded merely because the Convention has been violated. The reason is that appellants are unable to establish a causal connection between

Appellate Case: 08-1925      Page: 3      Date Filed: 04/23/2008 Entry ID: 3426453

the violation and their statements.  The District Court found: "No credible evidence suggests that had defendants been advised of their right to have their Colombian consul notified of their arrest, they would not have made the statement."  Opinion of Magistrate Judge at 33.  This finding is not clearly erroneous.

*Id.*

The court went on to address the defendants' other contention that a violation of the Convention should prohibit the Government from seeking the death penalty.  In denying this aspect of the argument, the court found, again assuming the Convention creates individually enforceable rights, "no causal or logical connection at all between the penalty imposed on defendants and violation of the Vienna Convention.  The death penalty is provided by statute." *Id*. at 887.  The defendants "own incriminating statements, potent evidence supporting the conviction, would have been made even if consular contact had occurred.  The Convention itself says nothing about the appropriateness of penalties, and certainly does not provide the death penalty is excluded if the Convention is violated." *Id.*

Sinisterra contends he is "entitled to meaningful de novo review and reconsideration of the Vienna Convention violation in his case and appropriate remedy" in light of the decision by the International Court of Justice (ICJ) in *Avena and Other Mexican Nationals,* 2004 I.C.J. 12 (March 31).  Sinisterra correctly states that the Government has an obligation to review and reconsider a conviction and sentence of a defendant whose Vienna Convention rights were violated.  *Avena,* I.C.J. at 72.  Particularly, Article 36 of the Convention requires notification of consular officials when their nationals are arrested and grants consular officials the right to visit and communicate with their incarcerated nationals.  *Ortiz*, 315 F.3d 873-74.  Unlike Sinisterra, however, the defendants in *Avena* failed to timely object to an alleged violation of their

4

Appellate Case: 08-1925     Page: 4     Date Filed: 04/23/2008 Entry ID: 3426453

Convention rights, and thus procedurally defaulted. *Avena*, 2004 I.C.J. at 44. Though the ICJ held that the procedural default rule is not invalid under the Convention, the rule as applied in *Avena* prevented meaningful review and reconsideration of the defendants' Convention rights. *Id*. at 56-57.

Here, conversely, the Eighth Circuit considered Sinisterra's claimed violation of the Vienna Convention on direct appeal. *Ortiz*, 315 F.3d at 885-88. The court held that, although a violation of Sinisterra's Vienna Convention rights occurred, Sinisterra was not prejudiced by the violation, and the court, therefore, denied relief. *Id*. Thus, *Avena* does not require the district court to re-visit, yet again, Sinisterra's request for relief.

**D.     Constitutionality and Impact of Federal Death Penalty**

Sinisterra next claims that the federal death penalty disproportionately and unconstitutionally applies to race.

In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the United States Supreme Court found that in order to prevail on a claim that the death penalty disproportionately impacts race and ethnicity in violation of the Eighth Amendment, a defendant has the burden of proving both discriminatory intent and discriminatory effect. *Id*. at 292-93. In order to prove discriminatory intent, a defendant must demonstrate that the "decision makers in his case acted with discriminatory purpose." *Id*. at 292. Such a showing cannot be met by systemic statistics alone - that is, discriminatory intent in a particular prosecution cannot conclusively be inferred from system-wide findings suggestive of racially disparate impact. *Id*. at 297. "[S]tatistics, when produced 'without regard to the facts of a particular case,' are insufficient proof of

5

discrimination." *United States v. Minerd*, 182 F.Supp.2d 459, 462 (W.D. Pa. 2002) (quoting *McCleskey, id.* at 293).

In this case, Sinisterra only has statistics of the percentages of blacks verses whites approved for death penalty prosecution by the Department of Justice from 1995-2000, and the percentages under former Attorney General John Ashcroft. With only these numbers, Sinisterra falls short of meeting the first prong of his equal protection claim - providing evidence of discriminatory intent as required under *McCleskey*.

Sinisterra also fails to show the decision to pursue the death penalty in his case had the requisite discriminatory effect to establish a violation of the Eighth Amendment. In order to show prima facie proof of discriminatory effect, a defendant must proffer evidence that shows "that similarly situated individuals of a different race were treated differently." *Edelin, id.* at 261 (citing *United States v. Armstrong*, 517 U.S. 456, 466 (1996)). Sinisterra has not established any such information or evidence.

**E.     Prosecutorial Misconduct**

Sinisterra contends the prosecutor's references to Jeffrey Dahmer, Adolf Hitler, and Charles Manson in closing argument during the death penalty phase constituted prosecutorial misconduct in violation of the Fifth and Eighth Amendments. These allegedly improper references were, however, raised on direct appeal and decided by the Eighth Circuit Court of Appeals. The appellate court stated that "the prosecutor made these references when arguing that a family's love for a convicted criminal should not excuse the criminal's behavior . . . [and] the thrust of his argument was that familial love should not outweigh the aggravating circumstances of a crime in deciding on the appropriate punishment." *United States v. Ortiz*, 315

6

F.3d 873, 903 (8th Cir. 2002). "This type of reference is not 'prejudicial enough to deprive [the] defendant[s] of [their] constitutional rights to a fair penalty phase hearing.'" *Id.* (quoting *United States v. Allen*, 247 F.3d 741, 776 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002)).

This issue has been resolved on appeal.

**F.      Sinisterra's Death Sentences Do Not Constitute Cruel and Unusual Punishment**

Next, Sinisterra claims his death sentences under the FDPA are disproportionately harsh and in violation of the Eighth Amendment since co-defendant Hinestroza, who was more culpable, only received a life sentence.

In 2000, Sinisterra was convicted and sentenced to death for the murder of Julian Colon, which resulted from the actions of a drug conspiracy of which Sinisterra was a member. According to Sinisterra, the murder was actually "planned and organized" by co-defendants who did not receive a death sentence. The co-defendants Sinisterra refers to were either sentenced subsequent to Sinisterra, or were tried and sentenced by a different jury years after Sinisterra's sentencing.

At the initial trial, Sinisterra and co-conspirator Ortiz received death sentences, while co-conspirator Tello received life imprisonment. Co-conspirator Hinestroza was apprehended at a later date, and was tried in 2005 before a different jury. Hinestroza's jury failed to recommend a death sentence because it was deadlocked on punishment. Given these varying sentences, Sinisterra alleges his death sentence was arbitrarily imposed in violation of 18 U.S.C. § 3595 and the Fifth and Eighth Amendments.

7

### 1. <u>Review for Proportionality</u>

Sinisterra claims his death sentence was arbitrarily imposed in violation of 18 U.S.C. § 3595 and the Eighth Amendment.

#### a. <u>Statutory claim</u>

In pertinent part, 18 U.S.C. § 3595 authorizes the reviewing court "to consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor." Sinisterra focuses solely on the alleged arbitrariness of his sentence in light of Hinestroza's sentence of life imprisonment. Though § 3595 fails to specifically authorize a proportionality review, Sinisterra attempts to read one into the statute's "arbitrariness" language. For support, Sinisterra cites *United States v. Llera-Plaza*, 179 F.Supp.2d 444 (E.D.Pa. 2001). In that case, the district court determined that nothing in the statutory language precludes a proportionality review. *Id*. at 457. However, the district court conceded that "[d]etermining the proper scope of appellate review is, of course, a matter to be determined by a court of appeals, not by a district court." *Id*.

Both the Fourth and Fifth Circuits have examined the proper scope of review under the statute. The Fifth Circuit in *United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), viewed § 3595(c)(1) as establishing a two-part test. First, the court reviewed the evidence to determine if it supported the jury's finding under a sufficiency of the evidence standard. *Id*. at 353. Assuming this is satisfied, "[its] next responsibility is to ensure that the sentence was not handed down under the influence of passion, prejudice, or some other arbitrary factor." *Id*. at 354.

8

Appellate Case: 08-1925    Page: 8    Date Filed: 04/23/2008 Entry ID: 3426453

Though the court declined to articulate the standard of review, it concluded that "[t]he death sentence [was] warranted by the jury's specific findings" in that case. *Id.*

The Fourth Circuit similarly adopted a jury-centered approach in *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000). The court stated,

> There is no indication that the jury did not weight the evidence, and it had sufficient evidence to reach its particular findings on the aggravating factors, even if the defense is correct that the above allegations were errors, which we do not hold. We recognize that while the proceedings must be free from passion, prejudice, and other arbitrary factors, a death penalty case will not be emotionless. The errors alleged by the defense did not rise to a level that overwhelmed the proceedings and created an improper basis for the verdict.

*Barnette*, *id.* at 821.

When evaluating whether or not a sentence of death is improperly based on "passion, prejudice, or other arbitrary factor," the jury-centered approach is the appropriate measure. The record in the case at bar does not reflect that the jury was filled with passion, prejudice, or otherwise acted arbitrarily.

### b.  <u>Eighth Amendment Claim</u>

In addition to his statutory claim, Sinisterra also asserts that his sentence is unconstitutional under the Eighth Amendment. This argument again rests on the disparity in sentences between Sinisterra, Ortiz, and Hinestroza. The proportionality review is not required by the Eighth Amendment. *See Pulley v. Harris*, 465 U.S. 37 (1984). However, Sinisterra attempts to distinguish his case from that of *Harris*. *Harris* concerned "inter-crime" proportionality whereas this appeal is one of "intra-crime" proportionality. *Harris* makes a distinction between "an abstract evaluation of the appropriateness of a sentence for a particular crime" and the appropriateness of the punishment given "punishment imposed on others

9

convicted of the same crime." *Id*. at 42-43. It is the latter type of review that concerned the *Harris* court. *Id*. Unlike Sinisterra's assertion, the Court's language does not appear to be limited to "inter-crime" comparisons. Additionally, different juries sat in judgment of Sinisterra and Hinestroza making the comparison more akin to "inter-crime" rather than a true "intra-crime" in which one jury would sit in judgment of all defendants.

Furthermore, the Court in *Harris* emphasized that proportionality review may be "constitutionally superfluous" given the "safeguards of the . . . statute." *Harris*, *id*. at 49. The Fifth Circuit in *United States v. Jones*, 132 F.3d 232 (5th Cir. 1998), *upheld in* 527 U.S. 373 (1999), spoke directly to this issue. The court held that the statute "is not so lacking in other checks on arbitrariness that it fails to pass constitutional muster for lack of a proportionality review." *Id*. at 240.

The fact that Hinestroza's jury failed to unanimously recommend the death sentence does not alter the fact that the jury in Sinisterra's case acted properly under the statute.

### 2. <u>Substantive Due Process and Equal Protection</u>

In his substantive due process argument, Sinisterra recites the standard tests of "shocks the conscience" and "arbitrarily and capriciously." However, Sinisterra fails to apply these standards to this case other than merely asserting the different sentences, given the facts, fail to satisfy these long-held standards. The many protections and safeguards of the statute and the Eighth Amendment alleviate the concern over an arbitrary imposition of the death penalty. *See Jones, id*., 132 F.3d at 240.

In a similar vein, Sinisterra asserts that the "disparate treatment" of his two co-conspirators deprives him of equal protection of the law. As his subsequent citation to *Gregg v.*

Appellate Case: 08-1925    Page: 10    Date Filed: 04/23/2008 Entry ID: 3426453

*Georgia*, 428 U.S. 153 (1976) indicates, Sinisterra is actually concerned with the differing sentences that resulted from the application of the same law.  He makes no allegation that the federal courts have applied different rules to similar cases.  These claims are without merit.

## II.  <u>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS</u>

Sinisterra makes 11 claims of ineffective assistance of counsel.  Sinisterra must satisfy a heavy burden to successfully establish an ineffective assistance of counsel claim:

> A claim of ineffective assistance of counsel under § 2255 must be scrutinized under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under *Strickland*, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case.  The first part of the test is met when the defendant shows that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances.  The second part is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988) (citations omitted).

Counsel's performance will not be deficient if the performance was one of "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  For a defendant to show otherwise, he must show that counsel's representation fell below an objective standard of reasonableness, and but for counsel's ineffective assistance, there is a "reasonably probability" that the result would have been different.  *Id*. at 694.  "Reasonable probability" means a probability sufficient to undermine the confidence in the outcome of the trial.  *Id*.

In the inquiry of assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance which is a barrier that the defendant must overcome.  *Id*.; *see also Blankenship v. United States*, 159 F.3d 336 (8th Cir. 1998).  The

11

defendant bears the burden to affirmatively prove the prejudice aspect of the claim which requires proof of a reasonable probability that the result would have been different but for counsel's deficient performance. *French v. United States*, 76 F.3d 186, 188 (8th Cir. 1996) (citing *Strickland*, 466 U.S. at 694). In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," and concentrate on the circumstances as they appeared to counsel at the time of trial. *Strickland*, 466 U.S. at 689.

The failure to establish "prejudice" is dispositive of a § 2255 claim, and the court does not have to then address the reasonableness of the attorney's performance. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *see also United States v. Montanye*, 77 F.3d 226, 230 (8th Cir. 1996); *Sanders v. Trickey*, 875 F.2d 205, 222 n.8 (8th Cir. 1989).

### 1. <u>Testimony that Sinisterra was a Violent Person</u>

Sinisterra's first ineffective assistance of counsel contention relates to counsel not moving to exclude testimony from Government witnesses Andres Borja Molina and Edward Ortiz regarding their prior discussions and experiences with Sinisterra, and not objecting to their testimony. Sinisterra claims this testimony was improper Rule 404(b) evidence.

Contrary to Sinisterra's claim, the testimony of Borja-Molina and Edward Ortiz explained their relationship with Sinisterra. Furthermore, Borja-Molina's testimony about Sinisterra was an explanation of why he was concerned about a possible double-cross when he saw Sinisterra's truck at the house where he and Julian Colon were shot. (*See* T. Vol. VI at 1218-20). Additionally, Borja-Molina was conveying his prior conversations with Sinisterra. (T. Vol. VI at 1321). This testimony was admissible other than as Rule 404(b) evidence.

12

However, even if such evidence were Rule 404(b) evidence, it was still admissible. Rule 404(b) of the Federal Rules of Evidence provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

"To be admissible under Rule 404(b), the evidence must be (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *United States v. Vieth*, 397 F.3d 615, 617-18 (8th Cir. 2005) (citations and internal quotations omitted); *see also* Fed.R.Evid. 403. A general denial defense, as in the case at bar, places the defendant's state of mind at issue. *United States v. Jackson*, 278 F.3d 769, 771 (8th Cir. 2002).

### 2. "*Murraco*" meeting

Second, Sinisterra complains that his counsel did not present evidence to challenge the Government's eye-witness testimony that Sinisterra was present at a meeting on Thanksgiving 1998, where there was a discussion that a body ("murraco") must pay for the attack and robbery of $250,000 from Hinestroza's girlfriend. Contrary to Sinisterra's claim, defense counsel Fred Duchardt fully addressed the defense team's strategy relating to the "murraco" meeting. First, Mr. Duchardt stated that although Sinisterra claimed he was not at the meeting, his potential alibi evidence was problematic. Mr. Duchardt stated that he did not believe Sinisterra's wife and her mother (or others allegedly present at the Thanksgiving dinner which was a potential alibi) could account for Sinisterra's whereabouts the entire day. Mr. Duchardt explained that "when I

13

probed, in a way I felt likely would occur in cross-examination, as to their ability to account for all of the time of the day, and precisely when dinner had occurred, neither woman could say that she could account for Mr. Sinisterra's presence so as to preclude the possibility that he left for a time (for example, to go across town, to be present outside during the 'murraco meeting'). Thus, I believed that the testimony of these witnesses would have been easily undercut by what I believed to be a likely line of cross-examination." (Duchardt Aff. 18, ¶ 20.)

Furthermore, the defense strategy was to not put Sinisterra's wife on the stand because there was a danger that she could have been implicated and possibly charged. Additionally, her testimony could have led to questions about her "knowledge about her husband's involvement with drug dealings, most certainly her knowing that Mr. Sinisterra would contribute sums of money to the family, with no means for obtaining those funds other than through drug dealings." (Duchardt Aff. 19, ¶ 20.)

Additionally, part of defense strategy was that the "murraco" meeting was not particularly significant because Sinisterra did not participate in the meeting since the testimony was that he was outside. (Duchardt Aff. 19, ¶ 20.) Furthermore, even if Sinisterra was not part of this "murraco" meeting, there still was ample evidence that he took part in the planning of the killing of Colon and attempt to kill Borja-Molina. Sinisterra traveled from Houston to Kansas City and was present when the shooting took place, and he also confessed to "roughing-up" and actually shooting Colon. The decision to not focus on the "murraco" meeting was a decision both counsel made after discussion with Sinisterra. (Duchardt Aff. 19, ¶ 20.) While Sinisterra may not have totally understood the defense strategy, the fact that other evidence overwhelmingly convinced the jury beyond a reasonable doubt does not amount to his counsel

14

providing ineffective assistance.  In light of the reasons stated by Mr. Duchardt, counsel's strategy was objectively reasonable.

### 3.    Preparation for and Presentation of Sinisterra's Testimony

Sinisterra's third ineffective assistance of counsel claim revolves around counsel's preparation of Sinisterra for testimony on his own behalf.  Lead counsel Fred Duchardt states that "work on Mr. Sinisterra's testimony was done in my discussions with him over the months prior to trial.  Particularly, because Mr. Sinisterra had testimony during pretrial hearings, I had had the chance to observe certain things which he did, and was able to coach him about those things afterward."  (Duchardt Aff. 22, ¶ 23.)

Mr. Duchardt further stated in his affidavit that there was some difficulty in communicating with Sinisterra in English and Spanish.  However, Mr. Duchardt found that the best way to communicate was through the method used by Sinisterra's wife, Michelle, which was to talk slowly in English but be willing to repeat ideas and explain back to assure accurate communication of that idea.  (Duchardt Aff. 21-22 ¶ 21.)

Mr. Duchardt explains that any supposed appearance of unpreparedness of Sinisterra's testimony, or his seemingly "not coming off as well as possible," was due to his testimony being translated through an interpreter, not from lack of preparation by counsel. (Duchardt Aff. 23, ¶ 22.)

### 4.    Communication with Sinisterra Through a Spanish-Speaking Interpreter

In his fourth ineffective assistance of counsel claim, Sinisterra complains that his counsel failed to use an interpreter which would have resulted in "meaningful communication" with Sinisterra.  As Mr. Duchardt explained in his affidavit, counsel communicated with Sinisterra in

15

Appellate Case: 08-1925    Page: 15    Date Filed: 04/23/2008 Entry ID: 3426453

both English and Spanish throughout his representation. However, while counsel had a particular concern that Sinisterra understood the English in his *Miranda* warnings, counsel utilized what he thought was the best approach, the method used by Sinisterra's wife, Michelle, which was to talk slowly in English but be willing to repeat ideas and explain back to assure accurate communication of that idea. (Duchardt Aff. 21-22, ¶ 21.)

Mr. Duchardt explained that he utilized an interpreter, but found that "interpreters often were counterproductive against communication" since most "paraphrase in English and Spanish, thereby putting their own interpretation, even spin, on what each party is saying." (Duchardt Aff. 21, ¶ 21.) Counsel ultimately used "simultaneous interpreters" at trial, but there still was "a gap in communication." (Duchardt Aff. 21, ¶ 21.) Mr. Duchardt facilitated his communication in English with Sinisterra by spending "long periods of time in each session, and spent more sessions." (Duchardt Aff. 21, ¶ 21.)

Any arguable lack of understanding legal strategy can occur with English-speaking defendants as well. Counsel's communication with Sinisterra was sufficient to allow Sinisterra to participate in an effective, although not successful, defense.

### 5. Retention and Utilization of a Mitigation Specialist

In his fifth issue, Sinisterra claims that Dan Grothaus functioned as a mitigation investigator rather than a mitigation specialist, and counsel's representation was ineffective in not hiring a "separate, trained mitigation specialist." Mr. Duchardt clarifies Mr. Grothaus' education and experience which made him qualified as a mitigation specialist in this case. (Duchardt Aff. 2, ¶ 4.) Mr. Grothaus served in the dual role as a mitigation investigator and specialist in both phases of trial. Specifically, Mr. Grothaus had previous experience as a private

16

investigator in Kansas City and Houston, Texas; had been an investigative journalist with the Houston Chronicle and educationally trained in human relations; and had extensive connections with and knowledge about the Houston area. (Duchardt Aff. 2, ¶ 4.) Mr. Duchardt believed Mr. Grothaus's education and experience made Grothaus "qualified, even more than those who often act as 'mitigation specialists' to take on the multifaceted tasks that confronted us as concerned investigation of both phases of the trial of this case." (Duchardt Aff. 3, ¶ 4.) Mr. Grothaus was assigned the investigation work for the first phase of trial, while Mr. Duchardt and Ms. Herndon developed "mitigation themes and evidence." (Duchardt Aff. 4, ¶ 6.) Both counsel drew upon their years of experience with death penalty cases to develop the mitigation themes and evidence. (Duchardt Aff. 4, ¶ 6.) Contrary to Sinisterra's claim, the defense team possessed the clinical skills contemplated by the ABA Guidelines in death penalty cases.

Sinisterra's claim that the penalty phase was "disjointed, unfocused, and incomplete" is not supported by the record. Furthermore, any such arguable characterization would not be attributable to ineffective assistance of counsel. The witnesses from Colombia could not obtain visas to travel to the United States, through no fault of defense counsel. Counsel timely applied for entry visas, but the visas were rejected. (Duchardt Aff. 11, ¶ 13.) The court of appeals did not find sufficient prejudice from the denial of the visas. *United States v. Ortiz*, 315 F.3d 873, 904 (8th Cir. 2002). In any event, Sinisterra's mother could not travel even if the visas had been granted because of her health. (Duchardt Aff. 11, ¶ 13.)

Contrary to Sinisterra's claim, Mr. Duchardt developed mitigation evidence from the Houston, Texas area and with Sinisterra's extended family. (Duchardt Aff. 7, ¶ 8.) The information developed by counsel was presented during the trial process.

17

Mr. Grothaus was employed as the mitigation specialist by the defense. (Duchardt Aff. 13, ¶ 14.) The type of information Sinisterra suggests in his motion is really that of a forensic social worker who would "synthesizes all of the background information about the client, and then testifies, in hearsay fashion, about the information gathered by him/her and others from other persons and sources. (Duchardt Aff. 13-14, ¶ 15.) Mr. Duchardt, in his experience with capital cases, has found that "such presentations about a client's background are more effectively made if family members can be enlisted to make the presentations directly, themselves, instead of second hand, through a forensic social worker." (Duchardt Aff. 14, ¶ 15.)

Both Mr. Duchardt and Ms. Herndon believed that the forensic presentation could be accomplished through testimony of Sinisterra's wife, mother, and other family members. (Duchardt Aff. 14, ¶ 15.) Ms. Herndon was authorized by the court to travel to Colombia and employ a Colombian interpreter/guide. (Duchardt Aff. 14-15, ¶ 15.) Ms. Herndon produced videotapes, which were played to the jury, depicting how Sinisterra was raised and the cultural environment in Colombia, reasonable strategy as opposed to the jury hearing hearsay information from a forensic social worker.

### 6. Thorough Mitigation Investigation

As explained above in sub-section 5, counsel did conduct a mitigation investigation in this case. Additionally, contrary to Sinisterra's claim, counsel did attempt to converse with Sinisterra in his "native" language. (*See* Duchardt Aff. 20-22, ¶ 21.)

As referenced above, in an effort to present evidence of Sinisterra's background, socio-economic conditions of his childhood and other mitigating factors, Ms. Herndon traveled to Colombia. It was counsel's intention to present Sinisterra's "youthful background information"

18

Appellate Case: 08-1925     Page: 18     Date Filed: 04/23/2008  Entry ID: 3426453

through live testimony at trial from his family members because "there were no records about Mr. Sinisterra's childhood which were available from Colombian authorities." (Duchardt Aff. 10-11, ¶ 13.) However, family members could not obtain visas to travel to the United States, resulting in Ms. Herndon making a trip to Colombia to obtain information. (Duchardt Aff. 11-12, ¶ 13.) Ms. Herndon suggested defense use videotapes of witness testimony, which she pursued. (Duchardt Aff. 12, ¶ 13.)

The videotapes of Sinisterra's upbringing in Colombia sufficiently conveyed to the jury information deemed as mitigating factors. This is demonstrated in the jurors finding as a non-statutory mitigating factor that Sinisterra's "lack of guidance and support as an adolescent made him an easy target of the violent drug culture." It is clear that the videotapes had an impact on the jury's findings during the penalty phase. Counsels' actions and duties to provide such background information were in accordance with the standard set forth in *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), in that both knew and attempted to exercise their duty to investigate Sinisterra's medical, family, social, and educational history. The fact that the ABA Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases (Guidelines) recommend utilization of a "mitigation specialist" in a capital proceeding does not in any way require a finding of ineffective assistance of counsel for failing to employ an individual who holds himself out solely and specifically as a "mitigation specialist." The Guidelines are advisory and do not establish the constitutional baseline for effective assistance of counsel. *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). The important consideration is that mitigation evidence be investigated in an effort to discover "all reasonably available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting 1989 ABA guideline 11.4.1.C). A

19

Appellate Case: 08-1925    Page: 19    Date Filed: 04/23/2008 Entry ID: 3426453

seasoned attorney of Mr. Duchardt's experience and ability in capital cases is capable of exercising skillful judgment on matters of mitigation without the assistance of an individual who holds themself out specifically as a "mitigation specialist." Sinisterra's claim that counsel did not conduct and present a thorough mitigation investigation is without merit and refuted by the record.

### 7. Investigation and Presentation of Mental Health During Penalty Phase

Sinisterra claims his counsel was ineffective in not introducing evidence of Sinisterra's mental health during the penalty phase. However, as Mr. Duchardt states in his affidavit, Dr. Wheelock's conclusions were pursued and Dr. Wheelock testified about his finding that Sinisterra had a low IQ during the trial. (Duchardt Aff. 17, ¶ 18.) The jury had an opportunity to hear this testimony and consider it during the trial and penalty phase.

Contrary to Sinisterra's claim that a mental health expert was not utilized, Mr. Duchardt, in his affidavit, states that in light of Dr. Wheelock's report, counsel had Sinisterra evaluated before trial by a mental health expert, Dr. Enrique Dos Santos, M.D., whose oral report indicated that Sinisterra had no mental problems. (Duchardt Aff. 17, ¶ 19.) Dr. Santos is a Spanish-speaking psychiatrist who was the Clinical Director of the Fulton State Hospital. In light of Dr. Santos' evaluation, counsel rightly did not pursue a mental health issue. (Duchardt Aff. 17, ¶ 19.)

Even in light of the evaluation report completed in 2006, years after the trial, by Dr. Antolin M. Llorente, PhD., Mr. Duchardt still would question whether he would have pursued such testimony because of "its lack of strength." (Duchardt Aff. 17, ¶ 19.) Further, Mr. Duchardt states that, "Had we relied on such an expert, it would have permitted evaluation of

20

Mr. Sinisterra by a mental health expert of the government's choosing . . . .  I believe that the evidence from such an expert would likely be quite damaging, so as to counterbalance whatever benefit would be gained by Dr. Llorente's opinions."  (Duchardt Aff. 17-18, ¶ 19.)

Based on the knowledge of Dr. Santos' opinion that Sinisterra had no mental problem, and even with a weak, after-the-fact mental health evaluation, counsel's strategies were objectively reasonable.  Counsel conducted its defense based on information and reports available to counsel at that time.

### 8.    **<u>Alleged Prosecutorial Misconduct in Closing Argument</u>**

Sinisterra next complains that his counsel did not object to the Government's argument during the penalty phase which "constituted an emotional appeal" to persuade the jury to impose the death penalty.  Sinisterra complains of the following remarks:

> Ladies and gentlemen, decent people, decent citizens, fear for their lives because of drug traffickers like German Sinisterra.  We cannot forget that he was a member of a very efficient but unforgiving cocaine distribution organization and American society is a much different place than it was 50 years ago because of the German Sinisterras of the world.
>
> It is time to turn the tables on drug traffickers like this defendant.  Finish the message that you began with your verdict of guilt in this case.  Tell this defendant and those like him that murder will not be tolerated especially murder committed to further drug trafficking schemes.  There is no worse crime.  As you sit there you are not just twelve people.  You are . . . the conscience of the community and you have a unique opportunity to make a difference.  You have a unique opportunity to send a message.  Don't squander that opportunity.  Have the courage to do the right thing.
> . . .
> German Sinisterra believes by his actions that murdering couriers over a drug debt is just part of doing business.  Tell him he's wrong and tell the other drug traffickers of the world if they come to Kansas City they are going to be dealt with in the most severe way, they are going to receive a sentence of death.
> . . .
> The death penalty was enacted for these kinds of killings.  It was enacted for these kinds of killers.  You will never ever see a more calculated or cold excuse.

21

Appellate Case: 08-1925     Page: 21     Date Filed: 04/23/2008 Entry ID: 3426453

The cases cited by Sinisterra in support of his emotional appeal argument were guilt-phase closing arguments which the Eighth Circuit found to be reversible error and, therefore, are not apposite here. The penalty phase is not a matter of guilt or innocence, it is a matter of the jury weighing the aggravating and mitigating factors.

Furthermore, the remarks Sinisterra references do not amount to an impermissible emotional appeal. The remarks were argument by the government to put the facts presented to the jury in context and referred to the actual evidence the jury heard as they undertook consideration of the weight to be given to aggravating and mitigating factors. Counsel's performance was not deficient for failing to object to the Government's penalty phase argument in this regard.

Sinisterra also claims that the government's reference to Adolf Hitler, Charles Manson, and Jeffrey Dahmer during the penalty phase was improper and counsel was ineffective for not objecting. However, the Eighth Circuit has already addressed the issue and found that, "The prosecutor was not directly likening appellants' crimes or character to those of Hitler, Manson, or Dahmer. Instead, the thrust of his argument was that familial love should not outweigh the aggravating circumstances of a crime in deciding on the appropriate punishment." *United States v. Ortiz*, 315 F.3d 873, 903 (8th Cir. 2002). Since the appellate court has already determined that the remarks were not improper, Sinisterra's claim that his counsel was ineffective by not objecting is without merit.

22

**9.**     <u>**Challenge the Indictment**</u>

Sinisterra claims that his trial and appellate counsel were ineffective in not challenging the second superseding indictment, contending that the indictment was "insufficient to charge a capital offense, and failed to argue that Sinisterra's death sentences violated the Fifth Amendment." Basically, Sinisterra is referring to *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

This claim was already addressed under Section A, "Statutory Aggravating Factors." As pointed out, although aggravating factors were not specifically charged in the indictment, the charges in Counts Two and Three were considered as aggravating factors by the grand jury and petit jury. Therefore, the indictment was not defective, but rather set forth and provided Sinisterra with notice of aggravating factors that would be considered by the jury. Furthermore, the Eighth Circuit has resolved this issue in *United States v. Allen*, 406 F.3d 940 (8th Cir. 2006), as discussed previously under Section A. "Statutory Aggravating Factors." Counsel was not ineffective in not challenging the aggravating factors issue at the district court or appellate levels.

**10.**     <u>**Object to Alleged Inflammatory Hearsay in Penalty Phase**</u>

Sinisterra's next issue relates to counsel not arguing the relaxed evidentiary standards applied in the penalty phase of a trial violates the Fifth, Sixth and Eighth Amendments. This issue was addressed above in Section B, "FDPA Evidentiary Standard During Death Penalty Phase." The Eighth Circuit has already found in *United States v. Lee*, 347 F.3d 637, 645 (8th Cir. 2004), that the "FDPA standard provides a level of protection that ensures that defendants receive a fundamentally fair trial and that it is not unconstitutional." In light of current case law,

23

it cannot be said that counsel was ineffective in not objecting to hearsay testimony during the penalty phase.

**11.  Objection to Application of the FDPA**

Sinisterra claims his attorneys were ineffective in not objecting to application of the FDPA.  To the contrary, the FDPA standard provides a level of protection that ensures that defendants receive a fundamentally fair trial that is not unconstitutional.  *Lee*, *id.*, at 648.  Additionally, see discussion under "D.  Constitutionality and Impact of Federal Death Penalty" above.

The FDPA does not violate the Equal Protection Clause and the Eighth Amendment as argued by Sinisterra.  Counsel was not ineffective for failing to object to the application of the FDPA.

**12.  Cumulative Effect of All Previously Stated Grounds**

Sinisterra alleges that the cumulative effect of the claims he raised resulted in an unfair trial and sentence.  However, since none of Sinisterra's claims have merit, this claim also fails.

**13.  Hearing**

A movant is entitled to a hearing on a § 2255 motion "unless the motion, files, and record conclusively show" that he is not entitled to relief.  *United States v. Regenos*, 405 F.3d 691, 694 (8th Cir. 2005).  "A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Regenos, id.* (internal quotations and citations omitted.)

24

Appellate Case: 08-1925     Page: 24     Date Filed: 04/23/2008 Entry ID: 3426453

Movant's allegations are all either contradicted by the record or are inherently incredible. Specifically, the allegations of trial co-counsel Jennifer (Brewer) Herndon are either refuted by the record or inherently incredible efforts at second guessing co-counsel's, as well as her own performance upon the jury failing to accept her position. The strategic decisions of Mr. Duchardt were well reasoned as reflected by the record as well as the oversight of the court. Accordingly, an evidentiary hearing is not warranted.

WHEREFORE, based on the above-cited reasons and authorities cited herein, Movant's § 2255 Motion is denied without an evidentiary hearing.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED:  December 14, 2007

25

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

## JUDGMENT IN A CIVIL CASE

GERMAN C. SINISTERRA,            )
                                 )
    Petitioner,          )
                                 )   **Case No. 04-8003-CV-W-GAF**
  v.                           )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
    Respondent.          )

  **Jury Verdict**.  This action came before the Court for a trial by    jury.  The issues have been tried and the jury has rendered its
   verdict.

 **X Decision by Court.**  This action came before the Court.  The    issues have been determined and a decision has been rendered.

       **IT IS ORDERED AND ADJUDGED** that

    Movant's § 2255 Motion is denied without an evidentiary hearing.


December 14, 2007               Patricia L. Brune
Date                            Clerk

                              /s/ Tracy L. Diefenbach
                              (by) Deputy Clerk

Appellate Case: 08-1925    Page: 26    Date Filed: 04/23/2008 Entry ID: 3426453

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

GERMAN C. SINISTERRA, )
                                       )

           Movant, )

                                         )

vs. )          **Case No. 04-8003-CV-W-GAF**

                                         )

UNITED STATES OF AMERICA, )

                                         )

           Respondent. )

## <u>ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT</u>

Now pending before the Court is Movant's Motion to Alter or Amend Judgment. The

Court having considered said motion, it is

ORDERED that Movant's Motion to Alter or Amend Judgment is denied as without

merit.

s/ Gary A. Fenner                 
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED:   February 20, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GERMAN C. SINISTERRA,

Movant,                                   No. 04-CV-8003-W-GAF

v.

UNITED STATES OF AMERICA,

Defendant.

## **<u>NOTICE OF APPEAL</u>**

Comes now movant German Sinisterra, by and through counsel, and appeals to the United

States Court of Appeals for the Eighth Circuit from this Court's final judgment and order

denying movant habeas relief pursuant to 28 U.S.C. § 2255, filed December 14, 2007, and this

Court's order filed February 20, 2008 denying petitioner's motion to alter or amend the judgment

pursuant to Fed. R. Civ. P. 59(e).

Respectfully submitted,

/s/John Jenab
John Jenab   MO # 47452
110 S. Cherry, Suite 200
Olathe, KS 66061
913-390-5023
Fax 913-764-5539

/s/William E. Shull
William E. Shull MO # 22544
104 W. Kansas
Liberty, MO 64068
816-792-4242
Fax 816-792-0888

ATTORNEYS FOR MOVANT GERMAN
C. SINISTERRA

Appellate Case: 08-1925    Page: 28    Date Filed: 04/23/2008 Entry ID: 3426453

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/John Jenab

2

Appellate Case: 08-1925     Page: 29     Date Filed: 04/23/2008 Entry ID: 3426453

**GERMAN C. SINISTERRA,**

       **Movant,**

                                           **Case No. 04-8003-CV-W-GAF**

**v.**

**UNITED STATED OF AMERICA,**

       **Respondent.**

## MOVANT'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

COMES NOW movant, German C. Sinisterra, by counsel, and moves this Court, pursuant to 28 U.S.C. § 2253 and Fed. R. App. Pro. 22(b)(1), to grant a Certificate of Appealability ("COA") to permit Mr. Sinisterra to appeal its Memorandum and Order denying Mr. Sinisterra's Motion to Vacate, Set Aside or Correct Convictions and Sentences Pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure, without authorizing funds for a mitigation investigation and without conducting a hearing. In support of this application, Mr. Sinisterra states as follows:

## I.    LEGAL STANDARD

The standard for the issuance of a COA is set out in 28 U.S.C. § 2255, which provides, in pertinent part, that the movant make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2255 (c)(2). Under this standard, a movant need only "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal citations and quotation marks omitted).

*Barefoot's* standard was reaffirmed by the United States Supreme Court in *Slack v.*

Appellate Case: 08-1925   Page: 30   Date Filed: 04/23/2008 Entry ID: 3426453

*McDaniel*, 529 U.S. 473, 484 (2000) and again, more recently, in *Miller-El v. Cockrell,* 537 U.S. 322 (2003). In *Miller-El*, the Supreme Court reaffirmed that a COA should be allowed when the movant's case is "debatable," or the issues could be "resolved in a different manner," or when the case "deserve[s] encouragement to proceed further." *See id*. at 336. A claim or argument could be debatable **"*even though every jurist of reason might agree, after the certificate of appealability has been granted and the case has received full consideration, that petitioner will not prevail.*"** *Id.* at 338 (emphasis added).

The *Miller-El* Court also indicated that "a COA does not require a showing that the appeal will succeed," and neither should the Court deny "the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner 'has already failed in that endeavor.' *Barefoot*, *supra*, at 893 n. 4, 103 S.Ct. 3383." *Miller-El* at 336-37 (internal quotation marks omitted). *Miller-El* summarized:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Id.* at 337-38.

In capital cases, "the nature of the penalty is a proper consideration in determining whether to issue a certificate of appealability." *Barefoot*, 463 U.S. at 893. Because this case involves the

2

Appellate Case: 08-1925     Page: 31     Date Filed: 04/23/2008 Entry ID: 3426453

death penalty, "any doubts as to whether a certificate of appealability should issue must be resolved in [Movant's] favor." *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. Tex. 2004), citing *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

## II.      A COA SHOULD ISSUE IN THIS CASE

Mr. Sinisterra seeks a COA on the claims enumerated herein.  As the underlying legal and factual bases for these claims have been thoroughly pled in prior pleadings with which the Court is already familiar, Mr. Sinisterra incorporates those prior pleadings by reference and will merely describe the claims in a summary fashion in this pleading for purposes of judicial economy.

### A.      Ineffective Assistance of Counsel

Trial counsel's performance in both the guilt and penalty phases of Mr. Sinisterra's trial, and on appeal, was ineffective.  These deficiencies include, *inter alia*, defense counsel's elicitation of, and failure to object to, evidence of Mr. Sinisterra's alleged violent disposition and prior bad acts; failure to adequately challenge the government's alleged eyewitness identification evidence and misleading arguments thereon, and request a proper instruction on that evidence; incompetent preparation and presentation of Mr. Sinisterra's testimony; failure to communicate with Mr. Sinisterra through an interpreter; failure to challenge the indictment; failure to object to improper remarks by the government in closing argument; failure to object to inflammatory hearsay evidence elicited by the government from FBI Special Agent Dennis Conway; failure to hire and use a mitigation specialist; failure to conduct and present a competent mitigation investigation; failure to investigate and present mental health evidence. *See generally* Amended 2255 Motion and Traverse.

Given the fact that the Eighth Circuit routinely reviews claims of ineffective assistance of counsel on the merits in capital cases, Mr. Sinisterra's ineffective assistance claim is more than

3

adequate to merit issuance of a COA. *See, e.g.*, *Ringo v. Roper*, 472 F.3d 1001 (8th Cir. 2007)(reviewing penalty phase and guilt phase ineffective assistance claims on the merits); *Middleton v. Roper*, 455 F.3d 838 (8th Cir. 2006); *Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002); *Link v. Luebbers*, 469 F.3d 1197 (8th Cir. 2006); *Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006); *Smith v. Bowersox*, 311 F.3d 915 (8th Cir. 2002). Moreover, considering the wealth of mitigation information uncovered as part of a preliminary habeas investigation into Mr. Sinisterra's background[1] – information which trial counsel failed to develop and present to the jury which sentenced Mr. Sinisterra to death – jurists of reason could debate that Mr. Sinisterra has established that his Sixth Amendment right to effective assistance of counsel was violated. Every inference must be drawn in the movant's favor, particularly where, as here, the movant has pled facts that if true would entitle him to relief and yet the district court has not granted an evidentiary hearing. *See* 28 U.S.C. § 2255 ¶ 2; *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) (requiring a hearing in federal habeas proceedings where the petitioner has alleged facts which, if proven, would entitle him to relief and where the district court has not resolved the merits of the factual dispute in a full and fair hearing); *Fontaine v. United States*, 411 U.S. 213, 215 (1973); *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) ("The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*–not prove– reasonably specific, non-conclusory facts that, if true, would entitle him to relief.") (emphasis in original); *See Parkus v. Delo*, 33 F.3d 933 (8th Cir. 1994) (remanding to the district court for evidentiary hearing on IAC claims); *Lawrence v. Armontrout*, 900 F.2d 127 (8th Cir. 1990); *Simmons v. Lockhart*, 856 F.2d 1144 (8th Cir. 1988); *Grigsby v. Mabry*,

---

[1] *See* Movant's Traverse, Doc. No. 68, at 17-23 (summarizing mitigation information which was available at trial, but which trial counsel failed to investigate, develop and present).

4

637 F.2d 525 (8th Cir. 1980) (citing *Townsend v. Sain*). Therefore, Mr. Sinisterra has made the requisite showing under *Barefoot, Slack* and *Miller-El*, and it is respectfully submitted that a COA should be issued on this claim, as well as the related procedural issues, to wit, the denial of Mr. Sinisterra's motions for funding for a mitigation specialist, or the appointment of the Arizona Federal Public Defender's Capital Habeas Unit to provide needed mitigation investigation resources, and for an evidentiary hearing.[2]

### B. Prosecutorial Misconduct and Failure to Object

Throughout closing arguments of the penalty phase of Mr. Sinisterra's trial, the government made a series of improper remarks, in violation of Mr. Sinisterra's rights under the Fifth, Sixth and Eighth Amendments. These remarks included, *inter alia*, entreaties to the jury to "send a message" to other drug dealers by sentencing Mr. Sinisterra to death, improper emotional appeals to the jury, and denigration and improper characterization of the mitigation evidence. Such remarks have consistently been held to constitute reversible error. *See*, *e.g.*, *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992); *United States v. Lee,* 743 F.2d 1240 (8th Cir. 1984); *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991); *United States v. Arrieta-Agressot*, 3 F.3d 525 (1st Cir. 1993).

Moreover, trial counsel's and appellate counsel's failure to object to these remarks constituted ineffective assistance of counsel, in violation of Mr. Sinisterra's Sixth Amendment rights, and but for counsel's deficient performance, there is a reasonable probability that the outcome

---

[2] Although caselaw establishes that a movant need not obtain a COA in order to appeal the denial of resources and an evidentiary hearing pursuant to 18 U.S.C. § 3599 and 28 U.S.C. § 2255 – *see e.g.*, *Smith v. Dretke*, 422 F.3d 269, 287-88 (5th Cir. 2005) (no COA required to appeal denial of request for funds for expert services); *Harbison v. Bell*, 503 F.3d 566, 570 (6th Cir. 2007) (no COA required to appeal denial of counsel motion); *Reyes v. Quarterman*, 195 Fed. Appx. 272, 279 n.2 (5th Cir. 2006) (no COA required to appeal denial of request for evidentiary hearing) – Mr. Sinisterra includes these issues here in an abundance of caution.

Appellate Case: 08-1925     Page: 34     Date Filed: 04/23/2008 Entry ID: 3426453

of the proceedings would have been different. *Copeland v. Washington*, 232 F.3d 969 (8th Cir. 2000).

Given the well-settled precedent establishing the impropriety of the prosecution's remarks and counsel's duty to object to such remarks, Mr. Sinisterra has pled facts and constitutional claims that jurists of reason could debate establish a violation of a constitutional right. Indeed, in light of the number and variety of cases both in and outside the Eighth Circuit in which convictions have been reversed for precisely the kind of improper remarks uttered in closing arguments in Mr. Sinisterra's case, a court could resolve this issue in a different manner and also find that counsel were ineffective for failing to avail themselves of extant favorable precedent to challenge these improper remarks at trial and on appeal. Moreover, given that the Eighth Circuit Court of Appeals routinely reviews this issue on the merits, *see*, *e.g.*, *Weaver v. Bowersox*, 438 F.3d 832 (8th Cir. 2006); *Newlon v. Armantrout*, 885 F.2d 1328 (8th Cir. 1989); *Copeland v. Washington*, 232 F.3d 969 (8th Cir. 2000); *Shurn v. Delo*, 177 F.3d 662 (8th Cir. 1999), this claim warrants appellate review. Therefore, Mr. Sinisterra has made the requisite showing under *Barefoot, Slack* and *Miller-El*, and it is respectfully submitted that a COA should be issued on this claim.

**C.      Failure to Charge Statutory Aggravating Factors in the Indictment**

Mr. Sinisterra was charged, *inter alia*, with aiding and abetting the use of a firearm in relation to a drug trafficking crime and the commission of murder in the perpetration of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), (j)(1) & 18 U.S.C. § 2, and with interstate travel with intent to commit murder for hire, in violation of 18 U.S.C. § 1958 & 18 U.S.C. § 2. The second superceding indictment, however, failed to allege on either of these counts at least one statutory aggravating factor from 18 U.S.C. § 3592(c), an element essential required under the Fifth and Sixth

6

Amendments where imposition of a sentence of death is sought. As a result, the indictment failed to charge a federal capital offense, and Mr. Sinisterra's sentence exceeded the maximum sentence authorized for the crimes with which he was charged. Mr. Sinisterra's trial and appellate counsel were ineffective in failing to preserve this issue at trial and raise it on direct appeal.

As the Eighth Circuit noted in *United States v. Purkey*, 428 F.3d 738, 749 (8th Cir. 2005): "The indictment must charge at least one of the statutory aggravating factors that is ultimately found by the petit jury because that is what is required to elevate the available statutory maximum sentence from life imprisonment to death. In other words, including that factor in the indictment is required to make the defendant *eligible* for the death penalty." (Emphasis in original) (Citations and internal quotation marks omitted). *See also United States v. Allen*, 406 F.3d 960, 940 (8th Cir. 2005) ("[T]he Fifth Amendment requires at least one statutory aggravator and the mens rea requirement to be found by the grand jury and charged in the indictment.") There is no question that the indictment against Mr. Sinisterra "suffers a Fifth Amendment defect." *Allen*, 406 F.3d at 943. Whether this is a structural defect that requires reversal is a question over which reasonable jurists could debate. Indeed, in *Allen*, even though the Eighth Circuit found that similar error in that case was not structural, the Court acknowledged that it could be "wrong" as to whether the list of structural errors enunciated in *Arizona v. Fulminante*, 499 U.S. 279 (1991) and *Neder v. United States*, 527 U.S. 1 (1999), was exhaustive, implicitly conceding that the issue was subject to debate by jurists of reason. *Allen*, 406 F.3d at 944-45.

Even if the question of prejudice from this defect is subject to a harmless error analysis, such a determination requires an inquiry into the evidence presented to the grand jury in order to assess whether sufficient information was presented to it such that it could have found probable cause to

Appellate Case: 08-1925     Page: 36     Date Filed: 04/23/2008 Entry ID: 3426453

charge Mr. Sinisterra with at least one of these aggravating factors. *See Allen*, 406 F.3d at 947-48 (examining testimony presented at grand jury to determine whether there was sufficient probable cause to charge defendant with statutory aggravating factors found by petit jury). Such an analysis has never been performed in Mr. Sinisterra's case, thus this issue "deserve[s] encouragement to proceed further." *Miller-El,* 537 U.S. at 336. Moreover, the three statutory aggravators found by the petit jury (pecuniary gain; substantial planning and premeditation; attempt to kill more than one person in a criminal episode) are sufficiently analytically distinct from the elements of the charged offenses themselves that jurists of reason could debate about whether facts underlying the statutory aggravators were considered by the grand jury. Given all of the above, jurists of reason could also debate whether trial and appellate counsel were ineffective for failing to challenge the defective indictment against Mr. Sinisterra. Thus, it is respectfully submitted that a COA should issue on this claim.

### D. FDPA Unconstitutionally Relaxes Penalty Phase Evidentiary Standards

The Federal Death Penalty Act (FDPA) unconstitutionally permits hearsay evidence to be introduced against a defendant in the penalty phase, in violation of the Fifth, Sixth and Eighth Amendments. An abundance of such inflammatory hearsay evidence, which had nothing to do with Mr. Sinisterra and which could not be confronted or cross-examined, was introduced by the government during the penalty phase through the testimony of Dennis Conway, a Special Agent with the FBI. This testimony included, for example, unsubstantiated hearsay about gangs, violence and drug trafficking at BOP-Leavenworth in an effort to convey to the jury that persons serving life sentences in federal prison remained a threat both inside the institution, as well as to the outside community. The admission of this highly prejudicial hearsay evidence violated Mr. Sinisterra's

8

Fifth, Sixth and Eighth Amendment rights. Moreover, trial and appellate counsel's failure to preserve this issue at trial and raise it on direct appeal constituted ineffective assistance, in violation of Mr. Sinisterra's Sixth Amendment rights.

Mr. Sinisterra has pled facts and constitutional claims that jurists of reason could debate establish the denial of a constitutional right. This is a significant legal issue that other circuits have sought fit to address on the merits. *See*, *e.g.*, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007); *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006); *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004). Indeed, in *United States v. Lee*, 374 F.3d 637, 645 (8th Cir. 2005), the Eighth Circuit saw fit to examine each of the hearsay statements made in that case in order to reach a determination as to whether the statements were prejudicial. Such an analysis has never been conducted with respect to the highly inflammatory hearsay statements introduced at Mr. Sinisterra's penalty phase proceedings, therefore, this issue is adequate to deserve further encouragement to proceed further so that the Eighth Circuit can address this weighty issue. Additionally, as demonstrated by the extensive dissent on this very claim in the Fifth Circuit's recent opinion in *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007), the issue of the constitutionality of the FDPA's relaxed evidentiary standard in the penalty phase is one over which jurists could debate.[3] Therefore, a COA should issue on this claim.

---

[3] It should be noted that the Eighth Circuit did not address in *Lee* the issue of whether the admission of hearsay in the penalty phase violates the Fifth Amendment's Confrontation Clause. This is a significant issue that is being examined in federal capital cases in other Courts of Appeals and has not yet been addressed in the Eighth Circuit. Mr. Sinisterra's Fifth Amendment claim in this regard, therefore, deserves further encouragement to proceed. *See* First Amended 2255 Motion, Doc. No. 41 at 4-6; Motion to Alter or Amend Judgment, Doc. No. 71 at 1-2.

Appellate Case: 08-1925    Page: 38    Date Filed: 04/23/2008 Entry ID: 3426453

### E.     Organic Brain Damage and Mental Retardation

Mr. Sinisterra has presented an expert opinion concluding that he suffers from organic brain damage and has exhibited some impairments consistent with mental retardation, evidence which was never presented to the jury at Mr. Sinisterra's trial. Such mental health information is "inherently mitigating," *Tennard v. Dretke*, 542 U.S. 274, 287-88 (2004), and evidence of mental retardation would preclude imposition of the death penalty. *Atkins v. Virginia*, 536 U.S. 304, 316 (2002).

Jurists of reason could debate whether Mr. Sinisterra is ineligible for death because he is mentally retarded or otherwise mentally impaired. A COA should issue particularly because this claim was denied without an evidentiary hearing. Every inference must be draw in favor of the movant when he has pled facts that would entitle him to relief, and the court has denied relief without an evidentiary hearing. *See* 28 U.S.C. § 2255 ¶ 2; *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) (requiring a hearing in federal habeas proceedings where the petitioner has alleged facts which, if proven, would entitle him to relief and where the district court has not resolved the merits of the factual dispute in a full and fair hearing); *Fontaine v. United States*, 411 U.S. 213, 215 (1973) ("It is . . . clear that s. 2255 calls for a hearing . . . unless the motion and the files and the records of the case conclusively show that the petitioner is entitled to no relief.") (internal quotation marks omitted); *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) ("The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*–not prove– reasonably specific, non-conclusory facts that, if true, would entitle him to relief.") (emphasis in original); *Simpson v. Norris*, 490 F.3d 1029 (8th Cir. 2007)(remanding *Atkins* claim and ordering the district court to hold an evidentiary hearing). Moreover, given that Courts of Appeals routinely review claims of mental retardation on the merits – *see Williams v. Norris*, 461 F.3d 999 (8th Cir. 2006);

10

Appellate Case: 08-1925     Page: 39     Date Filed: 04/23/2008 Entry ID: 3426453

*Woods v. Quarterman*, 493 F.3d 580 (5th Cir. 2007); *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004) – this issue is adequate to deserve encouragement to proceed further.

**F.      Violation of the Vienna Convention**

The Eighth Circuit held on direct appeal that Mr. Sinisterra's rights under the Vienna Convention were violated, but held that he was not prejudiced.  In light of 2255 evidence that Mr. Sinisterra suffers from a brain impairment and possibly mental retardation, jurists of reason could debate that the failure to provide Mr. Sinisterra with his rights to consular consultation did prejudice him, in that his mental deficiencies made him particularly vulnerable and in need of the legal protections afforded to foreign nationals under the Vienna Convention.  The interaction between Mr. Sinisterra's cognitive deficiencies and his consular rights was not previously explored by the Eighth Circuit, and in light of the fact that the legal issues related to the Vienna Convention continue to evolve, *see Medellin v. Texas*, ___ U.S. ___, 170 L. Ed. 2 190 (2008), this issue is adequate to deserve encouragement to proceed further.

**G.      Mr. Sinisterra's Death Sentence Constitutes Cruel and Unusual Punishment**

The disparity in sentences between Mr. Sinisterra's more culpable co-defendants who received life sentences (Hinestroza and Tello) and the less culpable defendants who received death sentences (Sinisterra and Ortiz) is grossly disproportionate, arbitrary, capricious and indefensible. Although the Eighth Circuit has not accepted the position that the Eighth Amendment requires proportionality between co-defendants' sentences, *see United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007), Mr. Sinisterra believes that the panel decision in Johnson was incorrectly decided and will be overruled either by the Eighth Circuit sitting en banc or by the Supreme Court.  The fact that reasonable jurists can debate whether the disparity in sentences in Mr. Sinisterra's case violates the

11

Appellate Case: 08-1925      Page: 40      Date Filed: 04/23/2008 Entry ID: 3426453

constitution is ably demonstrated by the multiple, strenuous dissents in the Sixth Circuit's *en banc* consideration of this issue. *Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007). Thus, a COA should issue on this claim.

## CONCLUSION

WHEREFORE for all the foregoing reasons, the Movant respectfully requests that this Court grant him a certificate of appealability on each of the foregoing issues.

Respectfully submitted,
/s/John Jenab
John Jenab, #47452
JENAB & MCCAULEY LLP
110 S. Cherry Street, Suite 200
Olathe, KS 66061
(913) 390-5023
(913) 764-5539 Fax

/s/William E. Shull
William E. Shull, #22544
104 W. Kansas
Liberty, MO 64068
(816) 792-4242
(816) 792-0888 Fax

ATTORNEYS FOR MOVANT
GERMAN C. SINISTERRA

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/John Jenab

12

Appellate Case: 08-1925    Page: 41    Date Filed: 04/23/2008 Entry ID: 3426453

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **GERMAN C. SINISTERRA,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-8003-CV-W-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER GRANTING MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

Now pending before the Court is Movant's Motion for Leave to Appeal In Forma

Pauperis. The Court having considered said motion, it is

ORDERED that Movant's Motion for Leave to Appeal In Forma Pauperis is granted.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 18, 2008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| GERMAN C. SINISTERRA, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 04-8003-CV-W-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING MOVANT'S APPLICATION FOR CERTIFICATE OF APPEALABILITY

Now pending before the Court is Movant's Application for Certificate of Appealability.

The Court having considered said application, it is

ORDERED that Movant's Application for Certificate of Appealability is denied.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED:   April 18, 2008

Appellate Case: 08-1925    Page: 43    Date Filed: 04/23/2008 Entry ID: 3426453

# MISSOURI WESTERN DISTRICT - **KANSAS CITY**

Please note any additions or deletions to the style of the case from the style listed on the docket sheet (or attach an amended docket sheet with the final style of the case).

---

Case Caption: Sinisterra v. USA

Case No. 04-cv-08003-GAF

Appellant: German C Sinisterra

Appellee: USA

Appellant's Attorney(s):

**John Jenab**
**110 S. Cherry**
**Ste. 200**
**Olathe, KS 66061**
**913-390-5023**
**Fax: 913-764-5539**
**Email: jjenab@mindspring.com**

Appellee's Attorney(s):

Jeffrey E. Valenti
United States Attorney's Office
400 E. 9th Street
5th Floor
Kansas City, MO 64106
(816)426-4262
Fax: (816)426-4328
Email: jeff.valenti@usdoj.gov

Court Reporter(s):

Libby Shinn

Please return files and documents to:
**United States District Court**
**400 East 9th Street, Room 1510**
**Kansas City, MO   64106**

Contact Person for Appeal:
**Willie Crespo**  816-512-5068

---

| Length of Trial: 0 | Fee: Not paid | IFP: Yes | Pending IFP Motion: No |
|---|---|---|---|
| Counsel: Retained | Pending Motions? No | Local Interest? **No** | Simultaneous Release? **No** |

---

**Special Comments:**