No. 08-1925

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

GERMAN C. SINISTERRA,

Petitioner - Appellant,

v.

UNITED STATES,

Respondents - Appellees.

---

On Appeal from the United States District Court
Western District of Missouri, No. 04-8003-CV-W-GAF

# OPENING BRIEF OF PETITIONER - APPELLANT

---

JON M. SANDS
Federal Public Defender
TIMOTHY M. GABRIELSEN (NV Bar No. 8076)
LETICIA MARQUEZ (AZ Bar No. 017357)
Assistant Federal Public Defenders
Office of the Federal Public Defender
District of Arizona
407 West Congress Street, Suite 501
Tucson, Arizona 85701-1310
(520) 879-7614 / (520) 622-6844 (fax)

JOHN JENAB (MO Bar No. 47452)
Jenab & McCauley LLP
110 S. Cherry Street, Suite 200
Olathe, KS 66061
(913) 390-5023 / (913) 764-5539 (fax)

COUNSEL FOR PETITIONER-APPELLANT
GERMAN C. SINISTERRA

## SUMMARY OF THE CASE AND REQUEST FOR ARGUMENT

A federal jury found German Sinisterra guilty of conspiracy to distribute cocaine, murder in the first degree in relation to a drug trafficking crime, and murder during a murder for hire scheme, and sentenced him to death on the murder counts.

In the § 2255 proceedings, Sinisterra raised claims of ineffective assistance of counsel at the capital sentencing hearing based on the failure of counsel to investigate and present mitigating evidence, and to object to the Government's closing argument that the jury was the "conscience of the community," and a death verdict was needed to send a message to drug dealers. Evidence unearthed in the § 2255 proceedings, which the jury never heard, showed Sinisterra was beaten by both parents, was the victim of a homosexual gang-rape at the age of six; suffered psychological trauma; ran away from his home in Buenaventura, Colombia; lived on the streets in Cali for six years; and, upon his return home, was sexually abuse by a male family member. A neuropsychologist diagnosed Sinisterra with borderline intellectual functioning and organic brain damage but no mental health evidence was presented at sentencing.

The district court denied relief and an evidentiary hearing, relying on a controverted affidavit submitted by lead guilt phase counsel to find that his and lead sentencing counsel's sentencing omissions were "strategic" and that relief was conclusively foreclosed so as to preclude an evidentiary hearing under § 2255(b).

Oral argument 90 minutes in length is requested required so that the parties may argue the merits of the ineffective assistance claims and the propriety of the district court's denial of an evidentiary hearing.



Appellate Case: 08-1925 Page: 2 Date Filed: 04/10/2009 Entry ID: 3536000

## TABLE OF CONTENTS

Summary of the Case and Request for Oral Argument . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I. The District Court Erred in Denying, Without an Evidentiary Hearing, German Sinisterra's Claim that he was Denied his Right to Effective Assistance of Counsel Under the Sixth Amendment Where Counsel Failed to Perform a Reasonable Investigation of Available Mitigating Evidence, Including Evidence of his Dysfunctional Family and Abuse, Organic Brain Damage, and Impaired Mental Functioning, Failed to Retain a Mitigation Specialist to Develop that Information, and Failed to Present that Compelling Mitigating Evidence to the Jury at the Capital Sentencing Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

B. The Law with Respect to Evidentiary Hearings in § 2255 Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31



Appellate Case: 08-1925 Page: 3 Date Filed: 04/10/2009 Entry ID: 3536000

C. Sinisterra Alleged a Valid Claim of Ineffective Assistance of Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

1. Available evidence of low intellectual functioning. . . . . . . 34

2. Evidence that Sinisterra was victimized by homosexual sexual assault and violence as a child, that he suffered head injuries, and suffered from organic brain damage and impaired intellectual functioning that would have been discovered with reasonable investigation. . . . . . . . . . 36

3. Supreme Court and Eighth Circuit precedents recognize the ineffective assistance claim raised in the § 2255 motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

D. The District Court Failed to Comply with § 2255(b)'s Clear Command to Conduct an Evidentiary Hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." . . . . . . . . . . . . . . . . . . . . 42

1. The district court abused its discretion when it ignored controlling circuit and Supreme Court precedent and summarily denied an evidentiary hearing based on the controverted and untested affidavit of Sinisterra's lead trial counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

a. Ruling violated the rule of *Lindhorst.* . . . . . . . . . . . 44

b. Record required evidentiary hearing. . . . . . . . . . . . 46

2. The district court abused its discretion in denying an evidentiary hearing on counsel's failure to investigate and present mitigating evidence that Sinisterra was the victim of childhood violence, where the court's reasons were unsupported by the record or relied on factual determinations that were clearly erroneous. . . . . . . . . . . . . 49

a. The district court mistook the special verdict



Appellate Case: 08-1925 Page: 4 Date Filed: 04/10/2009 Entry ID: 3536000

returned in *Hinestroza* for the special verdict in *Sinisterra*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

b. The district court erroneously found that the benign information contained on the Colombia videotapes sufficiently conveyed to the jury Sinisterra's mitigating evidence. . . . . . . . . . . . . . . . . 50

c. The record does not support the district court's finding that the effort to secure Columbian witnesses was "timely." . . . . . . . . . . . . . . . . . . . . . . . 55

3. The district court abused its discretion in denying an evidentiary hearing on the claim that counsel unreasonably failed to retain a mitigation specialist. . . . . . . . . . . . . . . . . 57

4. The district court abused its discretion in denying an evidentiary hearing on the reasonableness of defense counsel's failure to present evidence of impaired intellectual functioning where the court erroneously believed such evidence *was* presented to the jury. . . . . . . . . . . . . . . . . . . . 60

5. The district court abused its discretion in denying an evidentiary hearing where the record was undeveloped as to the purpose of Dr. Dos Santos' evaluation and whether counsel submitted adequate records of Sinisterra's social, medical and family history sufficient to permit a thorough mitigation evaluation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

E. Relief Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

/ /

/ /



Appellate Case: 08-1925 Page: 5 Date Filed: 04/10/2009 Entry ID: 3536000

II. German Sinisterra was Denied his Right to Effective Assistance of Counsel Under the Sixth Amendment Where Trial Counsel Failed to Object to Prosecutorial Misconduct in Closing Argument at the Capital Sentencing Hearing, and the same Counsel Failed to Raise the Claim of Prosecutorial Misconduct on Direct Appeal. . . . . . . . . . . . . . . . . . . . . . . . 66

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

B. The Government's Prosecutorial Misconduct . . . . . . . . . . . . . . . . 69

C. Trial Counsel Was Ineffective For Failure to Object to Prosecutorial Comments at Trial; and Appellate Counsel Was Ineffective for Failure to Raise the Claim on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

D. The District Court Erred in Denying this Claim Appeal . . . . . . . . 79

E. Relief Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83



Appellate Case: 08-1925 Page: 6 Date Filed: 04/10/2009 Entry ID: 3536000

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdul-Kabir v. Quarterman*, __ U.S. __, 127 S.Ct. 1654 (2007) . . . . . . 29, 73, 74

*Antwine v. Delo*, 54 F.3d 1357 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 76

*Atkins v. Virginia*, 536 U.S. 304 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 35, 36, 62

*Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . 78

*Belmontes v. Ayers*, 529 F.3d 834 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 52

*Berger v. United States*, 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

*Blankenship v. United States*, 159 F.3d 336 (8th Cir. 1999) . . . . . . . . . . . . . . . . 31

*Boyde v. California*, 494 U.S. 370 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

*Brown v. United States*, 656 F.2d 361 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 31

*Burns v. Gammon*, 260 F.3d 892 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 75

*Caldwell v. Mississippi*, 472 U.S. 340 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 80

*Cargle v. Mullins*, 317 F.3d 1196 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 75

*Copeland v. Washington*, 232 F.3d 969 (8th Cir. 2000) . . . . . . . . . . . . . . . 78, 80

*Caro v. Woodford*, 280 F.3d 1247 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 65

*Dickerson v. Bagley*, 453 F.3d 690 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 36, 62

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . . . . . . . 63, 73

*Enmund v. Florida*, 458 U.S. 782 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Evitts v. Lucy*, 469 U.S. 396 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 77

*Frierson v. Woodford*, 463 F.3d 982 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 63

*Garrett v. United States*, 78 F.3d 1296 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . 68

*Goodwin v. Balkcom*, 684 F.2d 794 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . 75



Appellate Case: 08-1925 Page: 7 Date Filed: 04/10/2009 Entry ID: 3536000

*Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33, 40, 47, 51, 63, 64, 65

*Kimmelman v. Morris*, 477 U.S. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Lambright v. Schriro*, 490 F.3d 1103 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 65

*Laws v. Armontrout*, 863 F.2d 1377 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 31

*Leonard v. United States*, 277 F.2d 834 (9th Cir. 1960) . . . . . . . . . . . . . . . . . . 79

*Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 27, 32, 44, 45, 46, 49, 62

*Link v. Luebbers*, 469 F.3d 1197 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 78

*Lockett v. Ohio*, 438 U.S. 586 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 29, 69

*Mapes v. Tate*, 388 F.3d 187 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

*Marchibroda v. United States*, 368 U.S. 487 (1962) . . . . . . . . . . . . . . . 27, 45, 46

*Marshall v. Hendricks*, 307 F.3d 36 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 33

*Martin v. Grosshans*, 424 F.3d 588 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 75

*Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . 78

*Nelson v. United States*, 297 Fed.Appx. 563 (8th Cir. 2008) . . . . . . . . . . . . 32, 50

*Newlon v. Armantrout*, 885 F.2d 1328 (8th Cir. 1989) . . . . . . . . . . . . . . . . 78, 81

*Nooner v. Norris*, 402 F.3d 801 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 56

*Peltier v. Henman*, 997 F.2d 461 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 17

*Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116 (1956) . . . . . . . . . . . . . . 45

*Penry v. Lynaugh*, 492 U.S. 302 (1989) . . . . . . . . . . . . . . . . . . . . . . . 2, 29, 69, 74

*Reagan v. Norris*, 365 F.3d 616 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 75

*Roe v. Delo*, 160 F.3d 416 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

*Romano v. Oklahoma*, 512 U.S. 1 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

*Rompilla v. Beard*, 545 U.S. 374 (2005) . . . . . . . . . . . . . . . 25, 28, 32, 56, 57, 64

*Saunders v. United States*, 236 F.3d 950 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . 31

*Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002) . . . . . 2, 24, 28, 33, 34, 39, 51

*Smith v. Robbins*, 528 U.S. 259 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

*Sochor v. Florida*, 504 U.S. 527 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . 23, 28, 29, 33, 39, 75, 77, 78

*Taylor v. United States*, 487 F.2d 307 (2nd Cir. 1973) . . . . . . . . . . . . . . . . . . . . 45

*Tennard v. Dretke*, 542 U.S. 274 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Tison v. Arizona*, 481 U.S. 137 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Totten v. Merkle*, 137 F.3d 1172 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Arrieta-Agressot*, 3 F.3d 525 (1st Cir. 1993) . . . . . . . . . . . . . 72

*United States v. Dubray*, 727 F.2d 771 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . 32

*United States v. Hernandez*, 436 F.3d 851 (8th Cir. 2006) . . . . . . . . . . . . . . . . . 32

*United States v. Hinestroza*, U.S. Dist. Ct.
(W.D.Mo.) No. 98-00311-01-CR-W-GAF,
Judgment in a Criminal Case, April 17, 2006, Dkt. No. 1276 . . . . . . . . . . . . . . 4

*United States v. Johnson*, 707 F.2d 317 (8th Cir. 1983) . . . . . . . . . . . . . . . . . . 32

*United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992) . . . . 2, 29, 69, 70, 78, 80

*United States v. Jones*, 132 F.3d 232 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 41

*United States v. Lee*, 743 F.2d 1240 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . 70, 79

*United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002) . . . . . . . . . . . . 1, 4, 12, 55, 77

*United States v. Pearson*, 746 F.2d 787 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . 79



Appellate Case: 08-1925 Page: 9 Date Filed: 04/10/2009 Entry ID: 3536000

*United States v. Peltier*, 312 F.3d 938 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 16

*United States v. Peltier*, 446 F.3d 911 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 16

*United States v. Peltier*, 585 F.2d 314 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . 16

*United States v. Peltier*, 731 F.2d 550 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 17

*United States v. Peltier*, 800 F.2d 772 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 17

*United States v. Regenos*, 405 F.3d 691 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . 43

*United States v. Reinhart*, 357 F.3d 521 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . 78

*United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991) . . . . . . . . . . . . . . . 70, 72

*United States v. Stahl*, 616 F.2d 30 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 79

*United States v. White*, 341 F.3d 673 (8th Cir. 2003) . . . . . . . . . . . . . . . . . 31, 32

*Van Hook v. Anderson*, No. 03-4207, 2009 WL 605332 (6th Cir. March 6, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . 75

*Weaver v. Bowersox*, 438 F.3d 822 (8th Cir. 2003) . . . . . . . . 2, 29, 71, 72, 79, 80

*Wiggins v. Smith*, 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24, 28, 32, 33, 39, 46, 47, 51, 56, 57, 75

*Williams (Terry) v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . 2, 25, 33

*Wilson v. Sirmons*, 536 F.3d 1064 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 55

*Winfield v. Roper*, 430 F.3d 1026 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 77

*Yarborough v. Gentry*, 540 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74



Appellate Case: 08-1925 Page: 10 Date Filed: 04/10/2009 Entry ID: 3536000

## FEDERAL STATUTES

8 C.F.R. § 212.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53

18 U.S.C. § 3592(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 24, 30, 31, 58, 72

## FEDERAL RULES

Eighth Cir. Rule 10(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Crim.P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3



Appellate Case: 08-1925 Page: 11 Date Filed: 04/10/2009 Entry ID: 3536000

## JURISDICTIONAL STATEMENT

German Sinisterra was convicted by a federal jury of murder, drug trafficking, and traveling in interstate commerce with intent to commit a murder for hire, and sentenced to death. Tr. 2550. The convictions and sentence were affirmed on direct appeal. *United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2003).

On December 7, 2004, Sinisterra filed a timely motion for post-conviction relief pursuant to 28 U.S.C. § 2255. Dist. Ct. Doc. No. 11. On February 28, 2006, Sinisterra filed a First Amended Motion pursuant to 28 U.S.C. § 2255. App. 122. On December 14, 2007, the court denied the § 2255 Motion. Addendum ("Add.") 1. That final order is appealable to this Court pursuant to jurisdiction conferred under 28 U.S.C. §§ 1291, 1651, 2253, and 2255(d). The district court denied a certificate of appealability as to all claims. Dist. Ct. Doc. No. 80.

On December 31, 2007, Sinisterra filed a Motion to Alter or Amend Judgment. App. 338. The district court summarily denied the Motion on February 20, 2008. Add. 2. On April 18, 2008, Sinisterra filed a Notice of Appeal, App. 342, which was timely under 28 U.S.C. § 2107(b) and FRAP 4(a)(1)(B), 4(a)(4)(A)(iv), and 4(a)(4)(B)(i). On April 18, 2008, Sinisterra also filed Movant's Application for Certificate of Appealability ("COA"), which was denied on the same date. Dist. Ct. Doc. Nos. 78, 80.

On July 24, 2008, this Court granted a COA as to four claims. Eighth Cir. Doc. No. 14. Under 28 U.S.C. § 2253(c)(1)(B) and FRAP 22(b), the Court has jurisdiction to consider all four claims certified for review.



Appellate Case: 08-1925 Page: 12 Date Filed: 04/10/2009 Entry ID: 3536000

## STATEMENT OF ISSUES

I. Whether the district court erred in denying, without an evidentiary hearing, German Sinisterra's claim that he was denied his right to effective assistance of counsel under the Sixth Amendment where counsel failed to perform a reasonable investigation of available mitigating evidence, including evidence of his dysfunctional family and abuse, organic brain damage, and impaired mental functioning, failed to retain a mitigation specialist to develop that information, and failed to present that compelling mitigating evidence to the jury at the capital sentencing hearing?

*Wiggins v. Smith*, 539 U.S. 510 (2003)

*Williams (Terry) v. Taylor*, 529 U.S. 362 (2000)

*Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002)

*United States v. Lindhorst*, 585 F.2d 361 (8th Cir. 1978)

United States Constitution, Amendment VI

United States Constitution, Amendment VIII

28 U.S.C. § 2255

II. Whether German Sinisterra was denied his right to effective assistance of counsel under the Sixth Amendment where trial counsel failed to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and the same counsel failed to raise the prosecutorial misconduct claim on direct appeal?

*Lockett v. Ohio*, 438 U.S. 586 (1978)

*Penry v. Lynaugh*, 492 U.S. 302 (1989)

*Weaver v. Bowersox*, 438 F.3d 822 (8th Cir. 2003)

*United States v. Johnson*, 968 F2d 768 (8th Cir. 1992)

United States Constitution, Amendment VI

United States Constitution, Amendment VIII



Appellate Case: 08-1925 Page: 13 Date Filed: 04/10/2009 Entry ID: 3536000

## STATEMENT OF THE CASE

German Sinisterra was convicted by a jury of murder, drug trafficking, and traveling in interstate commerce with the intent of committing a murder for hire, and sentenced to death. The convictions and sentence were affirmed on direct appeal.

Through appointed counsel, Sinisterra filed a motion to vacate, set aside, or correct convictions and sentences pursuant to 28 U.S.C. § 2255 and Fed. R. Crim. P. 33. On February 28, 2006, counsel filed a First Amended Motion of German C. Sinisterra to Vacate, Set Aside, or Correct Convictions and Sentence pursuant to 28 U.S.C. § 2255and Rule 33 of the Federal Rules of Criminal Procedure. On December 14, 2007, the district court filed an Order in which it denied the § 2255 Motion, an evidentiary hearing, and a COA as to all claims.

On December 31, 2007, Sinisterra filed a Motion to Alter or Amend Judgment. The district court summarily denied that motion on February 20, 2008. On April 18, 2008, Sinisterra filed the Notice of Appeal and an application for COA, which was denied on the same date.

On July 24, 2008, this Court filed an Order in which it granted a COA as to four claims of ineffective assistance of counsel at the capital sentencing hearing: 1) the failure to retain and utilize a qualified mitigation expert to investigate and present mitigating evidence at the capital sentencing hearing; 2) failure to conduct a thorough mitigation investigation and present available mitigation evidence to the jury at the capital sentencing hearing; 3) failure to investigate and present mental health evidence at the capital sentencing hearing; and, 4) failure to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and appellate counsel's failure to raise that claim on direct appeal.

## STATEMENT OF FACTS

On April 27, 2000, a federal jury in Kansas City, Missouri, found German Sinisterra, Arboleda Ortiz and Plutarco Tello guilty of conspiracy to distribute cocaine, murder in the first degree in relation to a drug trafficking crime, and murder during a murder for hire scheme. Tr. 2550. On May 3, 2000, the same jury sentenced Sinisterra to death on the murder counts. Tr. 2917-2921. The jury later sentenced Ortiz to death and Tello to life in prison. Tr. 3016, 3239. Edwin Hinestroza, a charged co-defendant, remained a fugitive at the time of trial. *United States v. Ortiz*, 315 F.3d 873, 879 (8th Cir. 2003). He was later tried and convicted of the same charges and sentenced to 400 months in prison on the cocaine distribution count and to consecutive life sentences on the two murder counts. *United States v. Hinestroza*, U.S. Dist. Ct. (W.D.Mo.) No. 98-00311-01-CR-W-GAF, Judgment in a Criminal Case, April 17, 2006, Dkt. No. 1276 at 2.

### A. Guilt phase of trial.

#### 1. Hinestroza, Borja-Molina, and the Colombian cartel.

Nineteen-year-old Heberth Andres Borja-Molina ("Borja-Molina"), a Colombian drug distributor who was granted full immunity from prosecution for anything to which he would testify at trial, testified that he met Edwin Hinestroza in Houston through his aunt, Monica Osma, who dated Hinestroza. Tr. 1171, 1173, 1368-69. Hinestroza and Jaime Hurtado, also Colombians, were partners in a business in which cocaine flowed from Colombia to Mexico to Houston and then to Kansas City. Tr. 1181. Hinestroza and Hurtado were more than one million dollars in debt due to having sold bad cocaine and Hurtado having lost money in Houston. Tr. 1205-



Appellate Case: 08-1925 Page: 15 Date Filed: 04/10/2009 Entry ID: 3536000

06. FBI Agent Ben McIntosh testified that he checked with the DEA and Customs and ascertained that Sinisterra was not connected to Hinestroza or Hurtado in Texas. Tr. 2201.

While Borja-Molina first delivered drugs and money for Hinestroza, he later acquired familiarity with the drug business, packaged drugs, accompanied drivers, and had knowledge of Hinestroza's drug accounts. Tr. 1177-89; 1282-85. He moved to Overland Park with Hinestroza in 1997 and enlisted the decedent, Julian Colon, his uncle, to run drugs with him in the Kansas City area. Tr. 1194.

**2. Theft from Hinestroza, the "muracco," and his orders to kill.**

On November 19, 1998, after spending the night with Colon and Hinestroza at strip clubs, Borja-Molina was called to Hinestroza's apartment, where a bruised Monica Osma was in the parking lot. Tr. 1197. He learned that $250,000 was missing and that the apartment had been turned upside down. Tr. 1200. They photographed the apartment to show La Oficina, a Colombian drug cartel, what had occurred with respect to the theft and decided to send Osma to Houston for medical care so that police would not be called. Tr. 1205. Hinestroza told Borja-Molina that he also was also going to Houston because people from La Oficina wanted to interview Osma. Tr. 1207.

Amparo Molina, who is Borja-Molina's mother and sister of Julian Colon and Osma, picked up Osma at the Houston Airport. Tr. 1687. She was accompanied by Hurtado. Tr. 1688. She took Osma to a hospital, but lied to police and hospital staff as to what happened to Osma. Tr. 1691, 1708.

According to Molina, on Thanksgiving, Hinestroza brought Tello and Ortiz to



Appellate Case: 08-1925 Page: 16 Date Filed: 04/10/2009 Entry ID: 3536000

Molina's apartment to interrogate Osma. Tr. 1693-94, 1700-01. The men said they were from La Oficina. Tr. 1697. One of the men said that unless there was a "muracco," or a dead body, i.e., that someone was killed as retribution, La Oficina would not believe that the money was stolen. Tr. 1695. Her fourteen-year-old son, Edward Ortiz, testified that he was present that day, and that when the men left the Thanksgiving meeting, he saw Sinisterra staring at him from outside the window. Tr. 1761. Ortiz accompanied Borja-Molina on many trips to deliver drugs or money and handled cocaine at least once. Tr. 1746-49, 1764-67.

The following day, Hinestroza called Borja-Molina to say that he and Osma were flying into Kansas City that evening and needed a ride from the airport. Tr. 1210. Hinestroza planned on taking Osma to various drug dealers to see whether she could recognize the person who invaded her residence and took the money. *Id*. Hinestroza said someone was coming from La Oficina that Saturday to kill someone for the robbery, so Hinestroza needed to identify the perpetrator. Tr. 1211. Hinestroza said that Y.C. Smith, one of his buyers, acted the most paranoid and nervous. A plan was devised to tie him up in advance of the arrival of the men from La Oficina. Tr. 1212.

After 5 p.m., Borja-Molina, Colon and Hinestroza met to make fake kilos of cocaine to be used to lure Smith from his residence. Tr. 1213. Borja-Molina and Colon purchased gray duct tape and surgical gloves, pursuant to Hinestroza's orders, and Borja-Molina thought they would kill Smith. Tr. 1214, 1347, 1367.

At 8 p.m., Borja-Molina, Colon and Hinestroza left, while armed with a shotgun and .357 and 9 mm. handguns, respectively, to pick up Sinisterra, Ortiz and Tello at



Appellate Case: 08-1925 Page: 17 Date Filed: 04/10/2009 Entry ID: 3536000

the Drury Inn in Overland Park, Kansas. Tr. 1215-16. Borja-Molina drove his gold Acura, accompanied by Colon, while Hinestroza drove his white Lexus. At the motel, Borja-Molina saw Sinisterra's Mazda pick-up truck. Over a defense objection, Borja-Molina testified that he and Colon were fearful because Sinisterra had a reputation for violence. Borja-Molina took down Sinisterra's license plate number, and Colon called his wife with the number and make of pick-up. He instructed her "to call the cops" if he did not come home that night. Tr. 1221. The three men at the Drury Inn got into the vehicles of Borja-Molina and Hinestroza. Borja-Molina saw no weapons on them. Tr. 1222.

All of the men entered a house to pick up Smith, but the house was crowded so the men followed Smith in the two vehicles to a second house. There, the men exited the vehicles and entered the house, but Borja-Molina was suspicious because Smith did not enter. Borja-Molina left his shotgun in his car. Tr. 1224. Once inside, Ortiz ordered him to get down to the floor. Ortiz held a gun to Borja-Molina's head, and Tello hit him with a gun. Tr. 1225. Hinestroza and Sinisterra made Colon get down. While Borja-Molina saw Hinestroza, Ortiz and Tello with guns, he did not see Sinisterra with a gun. Tr. 1226. The men wrapped duct tape around Borja-Molina's hands, legs, and eyes, and they gagged him. Tr. 1227. Ortiz and Tello threatened to kill Borja-Molina if he did not tell them where the stolen $300,000 was.

Borja-Molina was dragged down the stairs. Tr. 1228. While downstairs with Borja-Molina, Sinisterra asked Borja-Molina for the money and threatened him. Borja-Molina heard his uncle screaming and Hinestroza say, "[Y]ou know what, fuck it, just shoot him in the head. Shoot the other one, too." Tr. 1229. He heard a shot

fired and no longer heard his uncle scream. Borja-Molina heard someone come down the stairs and heard a gunshot near his head, but he was not shot. He heard a voice say something like "he's dead." Tr. 1230. He remained breathless for 30 or 40 seconds, heard the cars start, and was placed in the trunk of his car, with his uncle's body on top of him. They drove five minutes and stopped. He heard another car pull up and Hinestroza say to hurry up. Tr. 1231. He waited for the men to leave, freed himself, and flagged down a motorist. Tr. 1235.

**3. Post-shooting events.**

Borja-Molina called Savannah Colon, Julian's wife, to say that her husband had been killed and to ask for a ride. Tr. 1235. He also called his mother in Houston and Osma to warn them that Hinestroza might try to kill them. Mrs. Colon picked up Borja-Molina, took him back to his car to retrieve his uncle's body and the shotgun left under the seat. Tr. 1237. Mrs. Colon drove to Menorah Hospital in Overland Park, where law enforcement was notified. Tr. 1238.

Medical personnel and police observed duct tape that bound Colon's hands and feet. Tr. 919, 943. Mrs. Colon passed on to law enforcement the note she wrote concerning Sinisterra's license plate and that the men stayed at the Drury Inn. Tr. 937. Borja-Molina also told police that the men stayed at the Drury Inn. Tr. 946. Borja-Molina was taken to the Overland Park Police Department, where he made a statement consistent with the events to which he testified at trial and identified his assailants. Tr. 1071, 1080, 1239. Borja-Molina and Kansas City Police Detective Kevin Kilkenny testified that Borja-Molina had not yet made a deal for immunity at the time he first spoke to police. Tr. 1073, 1171. Borja-Molina told Kilkenny that



Appellate Case: 08-1925 Page: 19 Date Filed: 04/10/2009 Entry ID: 3536000

Hinestroza was "in charge" during events at the house where Colon was shot. Tr. 1106. Police located Borja-Molina's vehicle. Tr. 981. Sinisterra, Ortiz, and Tello were arrested at the Drury Inn. Tr. 1480, 1486.

**4. Sinisterra's police statements.**

At 10 a.m. on November 29, 1998, Kansas City Police Detective Richard Sharp interrogated Sinisterra at the Overland Park Police Department. Tr. 2068. Sharp ascertained that Sinisterra could not read English, so the officer read Sinisterra *Miranda* warnings off an English-language card. Tr. 2070. After signing the English-language rights waiver form, Sinisterra explained that he had come from Houston at Hinestroza's request in order to recover money taken from Hinestroza, that he was not sure how the money would be recovered and that Hinestroza was to pay him $1,000 for his assistance. Tr. 2073. Hinestroza contacted him after Sinisterra arrived in Kansas City. At the house where the homicide occurred, Colon's hands and feet were taped with duct tape, and he was brought into a bathroom where Sinisterra struck him in the head and stomach as he denied knowing where the stolen money was. Tr. 2074-75.

Sharp testified that Sinisterra said that Hinestroza "asked him to shoot Julian Colon," which Sinisterra did. Tr. 2076. Sinisterra testified at trial that Hinestroza shot Colon when Sinisterra refused to do so. Tr. 2301. Sinisterra said he had a 9 mm. handgun, which he threw away that night. Tr. 2074, 2078. Sinisterra said the bodies were placed in the trunk of a car and left in a Kansas City park. Tr. 2077.

Prior to trial, a suppression hearing was held on the admissibility of Sinisterra's statement. Sinisterra's counsel introduced the testimony of Dr. Warren Wheelock,



Appellate Case: 08-1925 Page: 20 Date Filed: 04/10/2009 Entry ID: 3536000

Ph.D., a professor of education. Tr. 11/3/99 at 707.[1] Dr. Wheelock testified that he gave Sinisterra the performance part of the English-language Wechsler Adult Intelligence Scale (WAIS) III and Sinisterra scored a 75, which placed him in the "slow learner category." Tr. 11/3/99 at 712. Dr. Wheelock concluded that Sinisterra did not understand the *Miranda* warnings. Tr. 11/3/99 at 726. Ultimately, the statements were ruled admissible. Tr. 500.

At trial, Dr. Wheelock testified to Sinisterra's poor reading skills, but the court sustained an objection to Wheelock testifying to the WAIS III results because the IQ test went to "his mental capacity." Tr. 2257. The court ruled that Wheelock's testimony concerning low IQ would be admissible at sentencing, but the defense failed to call Wheelock or introduce the test result at sentencing. *Id*.

The jury returned a verdict of guilty on all counts as to all three co-defendants on April 27, 2000. Tr. 2550.

## B. Capital sentencing hearing of Sinisterra.

### 1. Prosecution's case in aggravation.

The Government introduced evidence to show that Sinisterra was 36 years old (Tr. 2593) and victim impact evidence. Savannah Colon testified to being pregnant at the time of her husband's death and that her daughter would only know her father through photographs and stories. Tr. 2596. Although she testified he was loving, caring, and lively, she testified that she did not know he was a drug dealer. *Id*., Tr.

[1] The transcripts on appeal were paginated consecutively from 1 to 3242 and reflect the trial through capital sentencing hearings for all three co-defendants. Citations in this brief to the pretrial hearings include reference to the date of the proceeding followed by the page number.



Appellate Case: 08-1925 Page: 21 Date Filed: 04/10/2009 Entry ID: 3536000

2602.

Amparo Molina testified that the decedent, her brother, came to the United States from Colombia at the age of 16 in 1989. Tr. 2607. She further testified that Colon supported her financially and emotionally when she arrived in 1991, assisted her in caring for Borja-Molina and Ortiz, and took her to cancer therapy sessions. Tr. 2608-09. She testified that she and her parents are suffering from the loss of Colon. *Id*. She admitted on cross-examination that Colon, Borja-Molina, and Ortiz were drug traffickers, and that Colon was to have killed on the night he was killed. Tr. 2610, 2612.

Ortiz, 14 years old at the time of trial, testified that he emigrated in 1991 at the age of five, that he and his mother lived with Colon in Houston, then Virginia, where Colon often took him to school. Tr. 2613-14. He had a close relationship with Colon, who talked with him about school and girls, took him to movies, played soccer with him, and was a father figure to him. Tr. 2616. Colon counseled him to stay in school, but Ortiz did not do so. Tr. 2616.

**2. Defense case in mitigation.**

**a. Defense counsel's failure to secure live witnesses from Colombia.**

At a pretrial conference on April 3, 2000, Mr. Frederick Duchardt, lead trial counsel, apprised the court that the defense possessed videotapes it intended to use if the matter proceeded to a capital sentencing hearing. Tr. 4/3/00 at 167. Tello's lawyer indicated that he would be filing a motion to dismiss the death notice due to the United States' refusal to issue visas for the Colombian witnesses to enter the country to testify at the penalty hearing. *Id*. at 182. Duchardt stated that Sinisterra



Appellate Case: 08-1925 Page: 22 Date Filed: 04/10/2009 Entry ID: 3536000

would be joining Tello's motion. *Id*. Tello later moved to dismiss the death penalty notice (App. 13), but Duchardt did not join that motion, and the motion was not heard until May 8, 2000, five days after Sinisterra was sentenced to death. Tr. 3110-25.

At the sentencing hearing of May 1, 2000, Ms. Jennifer Brewer[2], Duchardt's co-counsel and Sinisterra's lead sentencing counsel, defended the failure of Sinisterra's defense to disclose the Colombia videotapes shot in March 2000 on the basis that the defense expected to produce the witnesses. Tr. 2669. The late disclosure resulted in the court giving a jury instruction that indicated that the defense shot the videotapes in Colombia between March 17 and 19, 2000, that the presence of the witnesses could not be secured, that the defense did not provide the tapes to the Government until April 28, 2000, that the Government cannot cross-examine the Colombian witnesses, and the jury is free to determine what weight, if any, to give the tapes. Tr. 2713.

On direct appeal, this Court denied relief on the claim that the court erred in giving the instruction. *Ortiz*, 315 F.3d at 904. The Court also ruled that, "while perhaps not so effective in some ways as live testimony," the videotaped evidence "was sufficient to allow Mr. Sinisterra to inform the jury of his family background" and Sinisterra was not prejudiced by his counsel's failure to present live testimony of the Colombian witnesses because the poverty of his village and his background were demonstrated. *Id*.[3]

---

[2]By the time the matter proceeded to post-conviction, Ms. Brewer's name had changed to Herndon. The brief refers to her by the name "Brewer".

[3]The Court's assertion that the videos visually depicted the poverty of his village was in error, as those portions of the videos were ordered redacted after the Government objected that it was defense counsel who provided the narration. Tr. 2656-57. No evidence of family dysfunction or abuse was presented in the videos.



Appellate Case: 08-1925 Page: 23 Date Filed: 04/10/2009 Entry ID: 3536000

At the hearing on Tello's motion, Tello's lawyer, Amy Engel, testified to steps taken to secure both visas and humanitarian parole for Tello's Colombian mitigation witnesses. Tr. 3109-3125. Visas purportedly were denied due to insufficient contacts between Tello's two brothers and Colombia. Tr. 3112. Parole was denied on the basis that "parole is only granted for reasons of public interest and [the Mexico City INS office] did not think this was such a case." Tr. 3121. Engel was told that reconsideration would take 30 to 90 days. Successful application was made by the U.S. Attorney's Office in August 1999 to the District Director of the INS to secure its witnesses. Tr. 3114. By contrast, Sinisterra's counsel failed to show what efforts were made to secure the Colombian witnesses or when.

**b. Colombia videotape evidence.**

Without live witnesses from Colombia, Sinisterra's counsel introduced the videotapes. Brewer later averred in her Second Affidavit, which was attached to the Traverse (under the name "Herndon"), that the interviews she filed were "get acquainted" interviews used to establish "rapport and trust with the family" and, although she intended to delve into the more sensitive topics of abuse, discord, and the family's "secrets," that investigation never occurred. App. 308, ¶11. The court ordered the tapes redacted to remove voice-over provided by Brewer and the witnesses' preferences for a life sentence. Tr. 2656-59, 2662.

Prior to the playing of the final two tapes (Sinisterra's sister and brother-in-law), the court characterized the tapes played earlier as "incomprehensible" and stated, "I think I have allowed too much videotape testimony that nobody can understand." Tr. 2793. Exhibits 64, 65, 68, and 69 were videos of acquaintances who knew



Appellate Case: 08-1925 Page: 24 Date Filed: 04/10/2009 Entry ID: 3536000

Sinisterra before he left Buenaventura for the United States twelve years earlier: Profilia Gonzalez, Julio (last name inaudible on tape), Jose (last name inaudible), and Juan Carlo (last name inaudible):[4]

- Profilia said he had known Sinisterra since age 12, that Sinisterra was a good person, that he washed cars and pulled a wood cart, that he was not prone to violence, and that he was respectful of friends and family. Ex. 64 (March 18, 2000) at 1:05, 1:07, 1:10, 1:13 p.m.

- Julio stated that he met Sinisterra while working in the Sinisterra family's wood business 17 years earlier, that Sinisterra was a good person and a good worker. Ex. 65 (March 17, 2000) at 1:09, 1:11, 1:13 p.m.

- Jose said that he knew Sinisterra for 15 years, that they worked in construction and carpentry together, that Sinisterra was a good kid, that he was not violent, and he treated people fairly. Ex. 68 (March 18, 2000) at 9:21, 9:23, 9:27 a.m.

- Juan Carlos stated that he had known Sinisterra since they were kids, that Sinisterra was helpful because he taught others how to swim, that Sinisterra was a good worker with whom Juan Carlos worked at a car wash, and that Sinisterra was good with his son. Ex. 69 (March 18, 2000) at 1:18, 1:19, 1:24, 1:27 p.m.

Exhibits 66, 67, 71, and 72 depicted Sinisterra's brother Pablo Candelo, sister Rosa Valencia Candelo, Sinisterra's son Eduardo Sinisterra, and brother-in-law Luis Angel Caicedo. Although the tape of Rosa contains portions of interviews on March 17 and 19, 2000, the five minutes of the tape of March 17, 2000, includes the voice-over by defense counsel and would have been excluded pursuant to the court's order that the tape that included Brewer's voice not be shown. The tape of March 19, 2000,

---

[4] The videotapes of the Colombian witnesses, with the exception of the tape of Sinisterra's mother, Ex. 70, have been filed in the Appendix of Physical Exhibits, as required by Eighth Cir. Rule 10(A)(b). Ex. 70 cannot be located. The district court indicated that all exhibits were released to the parties, but the court has no receipt of the tape's release. Despite undersigned counsel's request, neither Sinisterra's prior counsel nor the Government can locate the tape.



Appellate Case: 08-1925 Page: 25 Date Filed: 04/10/2009 Entry ID: 3536000

includes redactions from 8:47 a.m. through 8:52 a.m. (Tr. 2749), which Duchardt agreed could be bypassed by fast-forwarding, and Duchardt stopped the tape entirely with approximately 30 minutes left of the roughly sixty-eight minute tape. Tr. 2795. The tape of Rosa was also redacted to remove references to her mother and father's health as reasons for not telling them about Sinisterra's court case and her opinion as to sentence. Tr. 2743-52. The following was contained in Exs. 66, 67, 71, and 72:

- Pablo, Sinisterra's older brother, stated that he was Sinisterra's oldest brother, that they swam and played ball as children, that Sinisterra washed cars at age seven and did carpentry work at age 14, and that Sinisterra did not go to school because the family could not afford it. Ex. 66 (March 18, 2000) at 11:13, 11:14, 11:17 a.m. Pablo described Sinisterra as a good person and an excellent, respectful family member and friend, and did not think Sinisterra did well financially in the United States because Pablo did not see money come from Sinisterra. *Id*. at 11:15, 11:23, 11:27 a.m.

- Rosa, Sinisterra's younger sister, also stated that Sinisterra did not send much money from the United States, perhaps $150 per month. Ex. 67 (March 19, 200) at 8:05, 9:04 a.m. She stated that there were four boys and four girls in the family, that her mother sold wood, fish, and plantains, that the boys started working at an early age to support the family, that two of the boys died violent deaths and that Sinisterra succeeded one of his deceased brothers in working in the family wood shop to support the family. *Id*. at 8:05, 8:07-11, 8:20, 8:57 a.m. She said that the boys did not go to school due to cost because the family was poor. *Id*. at 8:14 a.m.

- Eduardo Sinisterra, Sinisterra's son, stated that he was 13 years old, that his father lived with him until he was six years old, and that he last saw him when Sinisterra spent 20 days with him when Sinisterra returned to Colombia in 1998. Ex. 71 (March 17, 2000) at 2:21, 2:23-24 p.m. He said his father tells him that he loves him and he sends money for clothes, sneakers and games. *Id*. at 2:25-27 p.m.

- Luis Caecido, Rosa's husband, described the economic conditions for him in Colombia. Ex. 72 (March 19, 2000) at 9:49 to 10:21 a.m. Approximately 30 minutes into the 44-minute interview, defense counsel began to ask about German Sinisterra, whom Luis says he met when he and Rosa went to a cemetery in approximately 1990 to see the grave of one of the deceased brothers. *Id*. at 1021 a.m. Sinisterra was humble, and was an excellent family member and friend. *Id*. at 10:26 a.m.

### c. Other mitigation evidence.

The defense did not call Dr. Wheelock as a mitigation witness or introduce the results of the WAIS III. No mental health expert testified at sentencing.

Of the ten mitigation witnesses introduced at sentencing, two were correctional officers and one was a probation officer for the district court. Warden Bruno Stolc, of the Leavenworth Correctional Detention Center (a jail facility that contracts to hold pretrial detainees for the United States Marshals Service), testified that Sinisterra had been well-behaved while detained there prior to trial. Tr. 2676. Correctional Officer Elaine Garza testified that Sinisterra was a model prisoner while housed there. Tr. 2679. Retired Probation Officer Joseph Brandenburg testified to having met Sinisterra and his wife, but offered no opinion as to Sinisterra. Tr. 2681-2709. Brandenburg testified to security measures at high security federal prisons where Sinisterra could be detained. Tr. 2689-2699.

The Government later called FBI Agent Dennis Conway, an investigator at Leavenworth. Tr. 2797-98. He testified to violent incidents, including violence committed by Hispanic gang members, and the prevalence of drugs and weapons there. Tr. 2798-2800. Without defense objection, the U.S. Attorney asked Conway whether he was familiar with Leonard Peltier.[5] Tr. 2801. Conway testified "[h]e killed two FBI agents in Wounded Knee, South Dakota. One was my classmate." Tr.

---

[5]Mr. Peltier was convicted in the killing of two FBI agents at Wounded Knee, South Dakota, in 1975. *United States v. Peltier*, 585 F.2d 314, 318 (8th Cir. 1978). The Court is aware of Mr. Peltier's repeated efforts to obtain post-conviction relief, the denials of which have been appealed to this Court. *See United States v. Peltier*, 446 F.3d 911 (8th Cir. 2006); *United States v. Peltier*, 312 F.3d 938 (8th Cir. 2002); *Peltier v. Henman*, 997 F.2d 461 (8th Cir. 1993); *United States v. Peltier*, 800 F.2d 772 (8th Cir. 1986); and, *United States v. Peltier*, 731 F.2d 550 (8th Cir. 1984).



Appellate Case: 08-1925 Page: 27 Date Filed: 04/10/2009 Entry ID: 3536000

2802.

The defense called Sinisterra's wife Michelle, a nurse, who had been married to Sinisterra for more than six years. Tr. 2619. She characterized her relationship with her husband as loving and caring. Tr. 2632. She testified to Sinisterra's language difficulties and resultant trouble in finding employment. Tr. 2623. Sinisterra assisted a cousin in hanging Sheetrock but only earned $50 to $60 per week and could not understand how such hard work could garner such meager pay. Tr. 2625. Sinisterra became a "house husband," staying home, cooking for the family, doing laundry, cleaning, and caring for his and Michelle's children Kala, age 6, and a younger child, Kristopher, and Kaniesha, German's daughter from a prior relationship. Tr. 2625-30. A tape of Kala at age 5, wherein she described her loving relationship with her father, and bits of tapes of Michelle's family were played for the jury. Tr. 2634, 2638, 2643.

Michelle further testified that Sinisterra would call home when they could afford it, and they sent both money and used clothing to Colombia. Tr. 2635. Sinisterra sent money to Colombia for the education of his son there, and had obtained INS approval for his son to emigrate to the United States just prior to his arrest on the present charges. Tr. 2637. Michelle's mother, Delores Rankin, testified that her family loved Sinisterra, that he treated her well and he assisted her when her husband died. Tr. 2717. She testified that Sinisterra and Michelle loved each other and that Sinisterra cared well for his children. Tr. 2718-19.

Kaniesha, then nine years old, testified that her father played games with her, took her to school, bought school supplies, clothes, cards and a Bible story book for



Appellate Case: 08-1925 Page: 28 Date Filed: 04/10/2009 Entry ID: 3536000

her. Tr. 2765-67. Kaniesha's mother, Tawana Lynn, testified that Kaniesha loves her father, that she performs better in school when Kaniesha is in contact with her father, and that Sinisterra paid her child support and bought clothes and food for Kaniesha and Lynn's other child, Kindred. Tr. 2782.

Kristie Barrs, another Houston nurse and acquaintance of Michelle Sinisterra who had known German Sinisterra for seven years, testified to how Sinisterra cared for the children and provided a place to stay for Colombians who were new arrivals in the United States. Tr. 2826-31. Barbara Dillingham, a long-time friend of Michelle Sinisterra, described Sinisterra as respectful and kind, and that he served as "Mr. Mom" to his children. Tr. 2835, 2843. She and her children spent a lot of time with the Sinisterras, and Sinisterra has stayed in contact with her children even since he has been in jail. Tr. 2846.

Vivian Dumas, a Houston mortician, testified to Sinisterra's having worked for her at the funeral home and serving as a liaison between her and members of the Colombian community. Tr. 2723-2729. She further testified to his generosity in providing a place to stay for displaced Colombians. Tr. 2731.

On May 3, 2000, the jury returned a verdict of death. Tr. 2917. The jury found the presence of three statutory aggravating factors: 1) the murder was committed with the expectation of pecuniary gain; 2) the murder included substantial planning and premeditation; and, 3) that Sinisterra, in concert with others, intentionally attempted to kill more than one person. Tr. 2917; App. 25-38, 39-51 (verdict forms). The jury found no statutory mitigating factor, but unanimously found the following non-statutory mitigating factors: Sinisterra loved and nurtured his wife and children; he



Appellate Case: 08-1925 Page: 29 Date Filed: 04/10/2009 Entry ID: 3536000

helped persons other than family with time and money; his death would have an impact on his friends and family; Colon planned on killing and prepared to kill another person on the night he was killed; and that he placed his own life in danger by his occupation and lifestyle. App. 32, 34, 45, 47.

**3. The § 2255 proceedings.**

On September 7, 2004, Mr. John Jenab moved for funds with which to hire a Spanish-speaking mitigation specialist, who would perform the investigation required to prove claims to be included in the § 2255 motion. App. 98. The motion alleged that the prejudice prong of a claim of ineffective assistance of counsel required a comparison of the evidence presented at the capital sentencing hearing with that which a reasonable investigation would have uncovered. App. 99-101. The district court denied the motion, ruling that counsel failed "to show that appointment of a mitigation specialist in this collateral attack on movant's sentence is necessary or appropriate." App. 105.

On December 7, 2004, Sinisterra filed his first § 2255 motion. Dist. Ct. Doc. No. 11. The motion included claims of ineffective assistance of counsel for failing to investigate and present mitigating evidence at the capital sentencing hearing and for failing to object to prosecutorial misconduct, including the U.S. Attorney's references in closing argument to the jury's role as conscience of the community and the disparagement of Sinisterra's mitigation by comparing the love of his family members for him to the love the families of mass-murderers Hitler, Manson and Dahmer had for them. *Id*. at 22-41; Tr. 2891-92. The motion included a section entitled "Brief Background Information on German Sinisterra," which allegedly was not investigated



Appellate Case: 08-1925 Page: 30 Date Filed: 04/10/2009 Entry ID: 3536000

or known by trial counsel. *Id*. at 30-34. The new facts included evidence of family dysfunction, Sinisterra's parents' illiteracy, his father's possible mental retardation, Sinisterra's brutal gang rape in an abandoned house, his being beaten and whipped by his mother, his exposure to family violence that included his father chasing his mother with a machete, his prolonged period of homelessness in Cali when he ran away from home a few months after the gang rape, and the later sexual assault of him by a brother who had been released from prison. *Id*. at 30-31. The motion also alleged Sinisterra is mentally retarded, that a mitigation specialist was necessary to gather information in support of deficits in adaptive functioning, and that a mental health expert was needed to perform an evaluation. *Id*. at 44-45.

On December 9, 2004, counsel filed a renewed motion for leave to hire the mitigation specialist. App. 106. The district court again denied the request, ruling that Ms. Brewer was allowed funds to go to Colombia at trial and no explanation was given for her failure to develop the required information then. App. 120.

On February 28, 2006, Sinisterra filed his amended § 2255 motion. App. 122. The amended motion included the four claims of ineffective assistance of counsel raised in the original motion and later certified for appeal and relied for support on the new factual matters disclosed in the original § 2255 motion. App. 147-171. Sinisterra further relied for support on the report and diagnoses of Dr. Antolin Llorente, Ph.D., a Spanish-speaking neuropsychologist. App. 198-208. Also attached in support were the affidavits of Ms. Brewer and Mitigation Specialist Caryn Platt-Tatelli. App. 179, 189.

Dr. Llorente's report included some facts of Sinisterra's background that he

obtained through the clinical evaluation of Sinisterra and interviews with his mother and sister Rosa in Colombia. App. 198-200. On a Spanish-language IQ test, Sinisterra scored a 68 which, even when adjusted for low educational achievement, placed him in the impaired to average range. App. 202. The variability of his test scores, the number of scores falling within the impaired range even when adjusted for low educational achievement, his history (which included significant head injuries), his lisp, and his ingestion of controlled substances, all supported the diagnosis of organic brain damage. App. 206.

Testing also demonstrated poor executive functioning and dampened cognition. *Id.* Dr. Llorente found that Sinisterra's deficits in executive functioning give rise to poor judgment and impulsivity, especially "when under the effects of powerful undue influences." App. 207. Sinisterra was placed at greater risk to undue influences due to his background that included exposure to abuse, violence, and neglect (including malnutrition) at a tender age, limited education, and absence of psychological or societal resources that would have provided structure, especially after he left Colombia. *Id*.

At the request of the Government and pursuant to a court order, Duchardt filed an affidavit ("Statement") on November 26, 2006, which the Government later appended to its Opposition to the § 2255 motion. App. 233. Duchardt acknowledged that the additional background information discovered by § 2255 counsel "was only partially addressed in our penalty phase presentation," that the mitigation presentation was "incomplete" and "disjointed," that responsibility for the deficiencies were attributed to Ms. Herndon's actions, and that he has not delegated in any subsequent

case the responsibility of preparing the mitigation phase of a capital trial. App. 218, 221.

On September 19, 2007, Jenab moved to substitute in the Federal Public Defender for the District of Arizona as his co-counsel. App. 286. The motion alleged that the FPD's Spanish-speaking attorneys and staff could perform the social history in Colombia necessary to prosecute Sinisterra's ineffective assistance claims. App. 289. The motion stated that the FPD's involvement would come at no cost to the district court.[6] App. 289. *Id*. The court denied the motion on the basis that undersigned FPD counsel are not members of the Western District bar and that "trial counsel was afforded an opportunity to travel to Colombia to conduct a background investigation," that "post-conviction counsel can evaluate the reasonableness of trial counsel's efforts without a separate government funded investigation requiring travel to Colombia," and that present counsel could address "the effectiveness and reasonableness of trial counsel's efforts." App. 303.

Sinisterra's Traverse was filed on October 31, 2007. Dist. Ct. Doc. No. 68. Attached to the Traverse were: 1) the Second Affidavit of Counsel Jennifer Herndon; 2) the Declaration of trial investigator Daniel J. Grothaus; and, 3) the Declaration of Russell Stetler, the National Director of Mitigation Investigation for the Federal Public Defender Program. App. 305, 312, 316.

On December 14, 2007, the court denied Sinisterra's § 2255 motion and a COA as to all claims. Add. 16-22. In the motion to alter or amend the judgment, Sinisterra

[6] The potential involvement of the Arizona FPD was approved by the Office of Defender Services ("ODS") of the Administrative Office of the U.S. Courts. FPD offices cannot agree to out-of-district representation without ODS approval.



Appellate Case: 08-1925 Page: 33 Date Filed: 04/10/2009 Entry ID: 3536000

claimed that he had, on three occasions, been denied funds with which to conduct the mitigation investigation necessary to prove his claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). App. 339. Sinisterra asked that the judgment be vacated, that the FPD be appointed to do the mitigation investigation, and that Sinisterra be permitted to file a second amended § 2255 motion. The court summarily denied the motion on February 20, 2008. Dist. Ct. Doc. No. 75. On April 18, 2008, Sinisterra filed a notice of appeal and a motion for COA. Dist. Ct. Doc. Nos. 76, 78. Also on April 18, 2008, the court summarily denied the COA request. Dist. Ct. Doc. No. 80.

On July 24, 2008, the Court granted the COA as to the following four claims:

1. Whether trial counsel rendered ineffective assistance of counsel by failing to retain and utilize a qualified mitigation expert;

2. Whether trial counsel rendered ineffective assistance of counsel by failing to conduct a thorough mitigation investigation and present available mitigation evidence to the jury;

3. Whether trial counsel rendered ineffective assistance of counsel by failing to investigate and present mental health evidence; and,

4. Whether trial and appellate counsel were ineffective by failing to object to prosecutorial misconduct during closing argument.

Eighth Cir. Doc. No. 14. In the same order, the Court appointed Jenab and the FPD as counsel on appeal. *Id*.



Appellate Case: 08-1925 Page: 34 Date Filed: 04/10/2009 Entry ID: 3536000

## SUMMARY OF ARGUMENTS

I.

German Sinisterra demonstrated in his § 2255 motion that his counsel failed to investigate and present to the capital sentencing jury evidence of the same physical abuse and attendant psychological trauma that the Supreme Court and this Court have identified as so significant that the failure of counsel to investigate and present such evidence at capital sentencing constitutes ineffective assistance of counsel. Sinisterra's counsel failed to investigate and present evidence that Sinisterra was the victim of a brutal homosexual gang-rape by a group of older boys at age six, suffered psychological trauma and ran away from home to live on the streets of a foreign city as a result, and that he was sexually molested by a male family member upon his return home six years later.

Incidents of homosexual gang-rape by the sons of a foster mother and rape by a foster father, which were not unearthed or presented at capital sentencing, were identified by the Supreme Court as "powerful" mitigating evidence and led it to hold that counsel rendered ineffective assistance of counsel in *Wiggins v. Smith*, 539 U.S. 510, 517, 534-35 (2003). In *Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002), where trial counsel failed to investigate or present similar evidence of homosexual rape and expert testimony concerning the psychological trauma attendant to it, this Court granted habeas corpus relief on a claim of ineffective assistance of counsel.

Sinisterra has also stated a valid claim to Sixth Amendment relief because he has demonstrated the failure of his counsel to investigate and present compelling evidence of a "nightmarish childhood," which included abuse and privation, and



Appellate Case: 08-1925 Page: 35 Date Filed: 04/10/2009 Entry ID: 3536000

borderline mental retardation, which were cited by the Supreme Court as mitigation sufficient to require the grant of relief on a claim of ineffective assistance of capital sentencing counsel in *Williams (Terry) v. Taylor*, 529 U.S. 362, 370, 395-96 (2000). Sinisterra's Sixth Amendment claim would also entitle him to relief because it includes as support proof that he suffers from organic brain damage. *See Rompilla v. Beard*, 545 U.S. 374, 392 (2005).

The defense case in mitigation showed only that Sinisterra was a good person, family member, and friend, and that he eventually fled the poverty of his native Colombia for the United States. Sinisterra's jury never heard that he was beaten by his parents, horse-whipped by his mother, gang-raped at the age of six in an abandoned building by a group of young men, suffered psychological trauma, ran away from home, and lived on the streets of Cali for six years before returning home only to be sexually abused by a male family member at the age of 12. He never received any mental health treatment or counseling to assist him in dealing with these childhood traumas. The jury never heard evidence that Sinisterra had dampened intellectual functioning and organic brain damage that bore a direct relationship to, and should have served to mitigate, his participation in the offense for which he was sentenced to death.

At a minimum, Sinisterra is entitled to an evidentiary hearing on this claim because "the motions and the files and records of the case" did not "conclusively show that [Sinisterra was] entitled to no relief" under 28 U.S.C. § 2255(b).

In the § 2255 proceedings, the Government failed to challenge the veracity or accuracy of the evidence proffered by Sinisterra's counsel in support of his ineffective

assistance claim. Instead, the Government challenged on the basis that Sinisterra's trial counsel, Duchardt, *had* presented evidence of Sinisterra's borderline IQ to the jury and that the defense presentation of mitigating evidence was effective, as evidenced by the jury's return of a special verdict in which it handwrote that "Sinisterra's 'lack of guidance and support as an adolescent made him an easy target of the violent drug culture.'"

Both assertions were false. The low IQ testimony was presented at the pretrial suppression hearing outside the presence of the jury, and the court sustained a Government objection at trial when Duchardt attempted to elicit the IQ testimony to challenge the effectiveness of *Miranda* warnings given to Sinisterra. The court ruled that the evidence of low IQ, which went to Sinisterra's "mental capacity," could be presented at a potential capital sentencing hearing, but defense counsel failed to call the witness or introduce the test result at sentencing and failed to call a mental health expert to explain the mitigating implications of Sinisterra's dampened intellectual functioning at the time of the offense. Similarly, the Government actually quoted the special verdict returned in *Hinestroza*, not *Sinisterra*, in arguing that defense counsel sufficiently conveyed Sinisterra's mitigating evidence to the jury.

Rather than making its own independent judgment based on an accurate assessment of the record, the court quoted nearly *verbatim* as its order denying relief eleven paragraphs of the Government's argument, including the erroneous assertions that the low IQ evidence was presented to the jury and that Sinisterra's jury found mitigating his early exposure to the violent drug culture. The court's factual determinations were clearly erroneous.



Appellate Case: 08-1925 Page: 37 Date Filed: 04/10/2009 Entry ID: 3536000

In addition, the court erred in denying Sinisterra an evidentiary hearing based on the affidavit of Duchardt that the Government solicited for its opposition to the § 2255 motion and the court ordered filed. While much of that affidavit supported Sinisterra's claims that mitigating evidence went uninvestigated, the Government quoted Duchardt's affidavit to argue that counsel had sound strategic reasons for the various omissions identified in Sinisterra's § 2255 motion. Again, the court adopted *verbatim* virtually all of the Government's reasoning, and quoted heavily Duchardt's affidavit, in finding that the "strategic decisions of Mr. Duchardt were well-reasoned as reflected by the record as well as the oversight of the court."

The court violated clear Eighth Circuit precedent in denying Sinisterra an evidentiary hearing under § 2255(b) based on the so-called strategy outlined by Duchardt in his affidavit, without affording Sinisterra an opportunity to challenge on cross-examination or with other evidence, Duchardt's veracity or the reasonableness of his decisions with respect to the investigation and presentation of mitigating evidence. *See Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1978) (district court may not deny an evidentiary hearing based on statements contained in affidavits obtained by Government to support opposition to § 2255 motion). In *Lindhorst*, the Court ruled that such an affidavit merely serves to trigger an evidentiary hearing. *Id*. at 365. The court also ignored Supreme Court precedent that requires with respect to the typical claim of ineffective assistance of counsel brought in § 2255 motion that dueling affidavits be submitted to adversarial testing before the court pronounces the author of one to be credible and the author of the other to be not credible. *See Marchibroda v. United States*, 368 U.S 487, 514 (1962).



Appellate Case: 08-1925 Page: 38 Date Filed: 04/10/2009 Entry ID: 3536000

Supreme Court precedent and the decisions of this Court clearly contemplate a post-conviction evidentiary hearing in such cases so that the court will have a developed record with which to assess defense counsel's acts, omissions, and deliberative process, and to determine prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Rompilla v. Beard*, 545 U.S. 374, 384 (2005); *Wiggins*, 539 U.S. at 517; *Williams*, 529 U.S. at 396; *Simmons v. Luebbers*, 299 F.3d 929, 931 (8th Cir. 2002); *Kenley v. Armontrout*, 937 F.2d 1298, 1299 (8th Cir. 1991). In *Wiggins*, an evidentiary hearing was used by the petitioner's counsel to prove that the self-serving assertions of defense counsel "resemble[d] more a *post hoc* rationalization of counsel's conduct than an accurate description of [his] deliberations prior to sentencing." 539 U.S. at 526-27. As a matter of law, Sinisterra deserves the right to challenge Duchardt's deliberative process and self-serving assertions of strategy.

**II.**

In closing argument at the capital sentencing hearing, an Assistant U.S. Attorney stated that the jury served as the "conscience of the community" and that it should sentence Sinisterra to death in order to "send a message to all other drug dealers" that the community will not tolerate drug dealing. The prosecutor also told the jury that the mitigation offered in this case was "a smoke screen," that the individual characteristics of Sinisterra were irrelevant to the sentencing determination the jury was to make, and that it would be "wrong" for the jury to consider, for example, how Sinisterra's execution would affect his family members.

This Court has held that "conscience of the community" arguments are violative of the rights of the accused because they ask a jury to assign blame to the accused not



Appellate Case: 08-1925 Page: 39 Date Filed: 04/10/2009 Entry ID: 3536000

solely for his own misdeeds, but also for a "larger societal problem." *United States v. Johnson*, 968 F.2d 768, 771 (8th Cir. 1992). This is highly problematic in a capital prosecution because it vitiates an accused's Eighth Amendment right to an individualized sentencing determination. *See Lockett v. Ohio*, 438 U.S. 586, 605 (1978) (plurality). In *Weaver v. Bowersox*, 438 F.3d 932 (8th Cir. 2003), this Court ordered that the writ of habeas corpus issue based on prosecutorial argument that a life sentence was a "wrong message" to send to drug dealers and that a death sentence was the "right message" that drug dealing would not be tolerated.

In addition, it is not enough, for Eighth Amendment purposes, that mitigating evidence be presented if there is no vehicle with which a sentencing jury may give effect to that mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 320 (1989). In *Abdul-Kabir v. Quarterman*, the Court held that a capital accused may be denied his Eighth Amendment right not only through instructional error, but also where the prosecutor argues that consideration of mitigating evidence is prohibited. 127 S.Ct. 1654, 1672 n. 21 (2007).

Mr. Sinisterra's trial counsel failed to object to the Government's improper closing argument at the capital sentencing hearing. That failure constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Sinisterra's direct appellate counsel, who were also his non-objecting trial counsel, also violated his right to effective assistance of counsel by failing to raise the claim on direct appeal. *See Evitts v. Lucy*, 469 U.S. 396, 397 (1985).

The Government defended against the claim in its Response in Opposition on the basis that the Eighth Circuit cases cited by Sinisterra in the § 2255 motion were

guilt phase closing argument cases, not sentencing phase cases. The district court, without independent review or analysis, adopted the Government's argument as its ruling, finding the Eighth Circuit guilt phase cases upon which Sinisterra's counsel to have relied to be "not apposite here." Add. 22. The court failed to even acknowledge the Supreme Court cases to which Sinisterra cited for support in his Traverse.

Given the jury's unanimous finding of six non-statutory mitigating factors and non-unanimous finding of the existence of several others, and given that two co-defendants were given life sentences, there is a reasonable probability that, absent the Government's improper closing argument, the jury would have imposed a life term. Similarly, there is a reasonable probability that the appeal would have been meritorious had counsel raised the ineffective assistance claim there.

This Court should reverse the judgment of the district court and order a new capital sentencing hearing.

## ARGUMENTS

I.

**The district court erred in denying, without an evidentiary hearing, German Sinisterra's claim that he was denied his right to effective assistance of counsel under the Sixth Amendment where counsel failed to perform a reasonable investigation of available mitigating evidence, including evidence of his dysfunctional family and abuse, organic brain damage, and impaired mental functioning, failed to retain a mitigation specialist to develop that information, and failed to present that compelling mitigating evidence to the jury at the capital sentencing hearing.**

### A. Standard of Review.

A district court's decision with respect to a claim of ineffective assistance of



Appellate Case: 08-1925 Page: 41 Date Filed: 04/10/2009 Entry ID: 3536000

counsel presents a mixed question of fact and law. *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003), citing *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir. 1988). The ineffective assistance claim is reviewed de novo, "but findings of underlying predicate facts are reviewed under the clearly erroneous standard." *Id*.

With respect to whether a petitioner is entitled to an evidentiary hearing, the Court has ruled:

> An evidentiary hearing on a § 2255 petition may be denied only "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. We review the decision to deny such a hearing for abuse of discretion. That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo . . . Accordingly, we must evaluate [the petitioner's] submission to the court and "consider the validity of his allegation of ineffective assistance of counsel" in order to decide if he is entitled to remand for an evidentiary hearing in the District Court.

*Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2000), citing *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1999).

**B. The Law with Respect to Evidentiary Hearings in § 2255 Cases.**

In determining whether Sinisterra is entitled to relief from the denial of an evidentiary hearing, the Court must determine first whether he has stated a valid claim of ineffective assistance of counsel. *Saunders*, 236 F.3d at 952, citing *Blankenship*, 159 F.3d at 337. To be a valid claim, a § 2255 petitioner must allege facts which, if true, would entitle him to relief, rather than conclusory allegations. *Brown v. United States*, 656 F.2d 361, 363 (8th Cir. 1981). If a valid claim has been stated, the district court must conduct an evidentiary hearing on the claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief." 28 U.S.C. § 2255(b). This Court has held that "the files and records of the case" that are to be reviewed to determine whether relief is conclusively foreclosed under § 2255(b) and whether a petitioner is entitled to an evidentiary hearing *do not* include affidavits filed by the Government in its opposition. *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

The Court's cases "teach that issues regarding the ineffective assistance of counsel often require a hearing to consider evidence not disclosed on the face of the trial record." *Nelson v. United States*, 297 Fed. Appx. 563, 565 (8th Cir. 2008). The significance the Court attaches to the need for an evidentiary hearing on ineffective assistance claims is demonstrated by the fact that, in *Nelson*, the Court remanded for an evidentiary hearing in response to the petitioner's COA application. *Id*. *See United States v. Dubray*, 727 F.2d 771, 772 (8th Cir. 1984) (whether counsel is ineffective for not interviewing and calling witnesses requires development of the record). The district courts in this circuit typically order an evidentiary hearing on a § 2255 motion before adjudicating a claim of ineffectiveness assistance of counsel. *See United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) (failure to require evidentiary foundation ); *United States v. White*, 341 F.3d 673, 675 (8th Cir. 2003) (failure to investigate and present evidence); *United States v. Johnson*, 707 F.2d 317, 319 (8th Cir. 1983) (failure to file suppression motion).

With respect to a Sixth Amendment claim of ineffective assistance of counsel for failure to investigate and present available mitigating evidence, judgment is rendered only after a record is developed at an evidentiary hearing in the post-conviction proceedings. *See Rompilla v. Beard*, 545 U.S. 374, 385 (2005); *Wiggins*



Appellate Case: 08-1925 Page: 43 Date Filed: 04/10/2009 Entry ID: 3536000

*v. Smith*, 539 U.S. 510, 517 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 370 (2000); *Simmons v. Luebbers*, 299 F.3d 929, 931 (8th Cir. 2002); *Kenley v. Armontrout*, 937 F.2d 1298, 1299 (8th Cir. 1991). Not only must the petitioner be granted the opportunity to present the mitigating evidence alleged not to have been investigated in order to prove deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), counsel must be permitted to delve into trial counsel's deliberative process so that the court may determine the reasonableness of any decisions trial counsel or the Government deems to be "strategic" and insulated from a claim of ineffective assistance of counsel. *Wiggins*, 539 U.S. at 526-27. *See Marshall v. Hendricks*, 307 F.3d 36, 115 (3d Cir. 2003); *Totten v. Merkle*, 137 F.3d 1172, 1175-76 (9th Cir. 1998).

**C. Sinisterra Alleged a Valid Claim of Ineffective Assistance of Counsel.**

Consistent with the test set forth in *Strickland*, Sinisterra claimed in his § 2255 motion that his counsel's performance was deficient at sentencing and that, but for counsel's omissions at the capital sentencing hearing, there was a reasonable probability that the outcome of the sentencing hearing would have been different. App. 132. Specifically, Sinisterra alleged that his counsel: 1) failed to retain and utilize a mitigation specialist with the skills necessary to probe sensitive personal matters and develop a psycho-social history necessary to an adequate mitigation presentation; 2) failed to conduct a thorough mitigation investigation; and, 3) failed to investigate mitigating mental health evidence and present that evidence at the capital sentencing hearing. App. 147-168.

The motion was supported with facts known to counsel that were not presented



Appellate Case: 08-1925 Page: 44 Date Filed: 04/10/2009 Entry ID: 3536000

at the capital sentencing hearing and new facts describing Sinisterra's life in Colombia that would have been discovered by trial counsel with reasonable investigation. The motion was supported by the report of Dr. Antolin Llorente, a Spanish-speaking neuropsychologist, whose report described cognitive impairment and organic brain damage that would have mitigated Sinisterra's moral responsibility for the offense had it been presented to the jury at sentencing.

**1. Available evidence of low intellectual functioning.**

The motion alleged that despite trial counsel knowing that Sinisterra had a performance IQ of 75, which placed him in the range for mental retardation, "counsel failed to retain a qualified mental health expert to determine whether Sinisterra is mentally retarded or suffers from other significant mental or psychological impairment or dysfunction." App. 166. The motion also alleged that trial counsel failed to call Dr. Wheelock at sentencing to testify to Sinisterra's low IQ. *Id*.

While the evidence was presented at a pretrial suppression hearing, the Government objected to Wheelock's testimony concerning Sinisterra's low IQ at the guilt phase. Tr. 2257. The court barred Dr. Wheelock from testifying to Sinisterra's low IQ because the IQ result went to "mental capacity," but stated "if we get to the penalty phase . . . I will let you put it in." *Id*. Trial counsel failed to call Wheelock at sentencing or present evidence of the low IQ test to the jury and, thus, the jury never heard the evidence concerning Sinisterra's borderline IQ.[7]

[7]The court denied relief on this claim in the false belief that Dr. Wheelock's testimony concerning borderline IQ *was* presented at trial and, therefore, consider it at sentencing. In *Simmons*, 299 F.3d at 937, the Court ordered that the writ of habeas corpus issue, finding an unreasonable determination of facts by the state supreme court under 28 U.S.C. § 2254(d), where it denied relief in the false belief that



Appellate Case: 08-1925 Page: 45 Date Filed: 04/10/2009 Entry ID: 3536000

Dr. Wheelock was a professor of education and, while not qualified to report on, or testify to, the mental health implications for the low IQ score, his test result should have caused reasonably competent counsel to investigate Sinisterra's mental health, especially whether he may be mentally retarded. In *Atkins v. Virginia*, 536 U.S. 304, 317 (2002), the Court announced a categorical ban on executing the mentally retarded, recognizing a consensus that "unquestionably reflects widespread judgment about the relative culpability of mentally retarded offenders, and the relationship between mental retardation and the penological purposes served by the death penalty." The deficiencies of the mentally retarded "diminish their personal culpability" for the offenses they commit. *Id*. The Court found that an IQ score of 75 was "the cutoff IQ score for the intellectual function prong of the mental retardation definition." *Id*. at 309 n. 5 (citation omitted).[8]

The IQ score of 75 placed Sinisterra squarely in the range of mental retardation, and reasonably competent counsel would have pursued additional testing for mental retardation. Even if testing and evaluation did not yield a diagnosis of mental retardation, "impaired intellectual functioning," which was demonstrated in Sinisterra's low IQ score, was "inherently mitigating" under *Tennard v. Dretke*, 542 U.S. 274, 287 (2004), citing *Atkins*, 536 U.S. at 316. It should have been presented

---

mitigating evidence of abuse and neglect *had* been presented to the jury in both of the petitioner's capital trials.

[8]Mental retardation, under the definition approved by the American Association on Mental Retardation (AAMR), which was cited by Dr. Llorente and in *Atkins*, includes significantly subaverage intellectual functioning, with adaptive deficits in two of the following areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work, with onset before age 18. 536 U.S. at 309 n.3.



Appellate Case: 08-1925 Page: 46 Date Filed: 04/10/2009 Entry ID: 3536000

to the jury. *See Dickerson v. Bagley*, 453 F.3d 690, 698 (6th Cir. 2006) (ineffective assistance proven with failure to introduce IQ of 77, where "[i]t surely would have made a significant difference for Dickerson if counsel had done the investigative work necessary to discover and then prove that he functioned at an intellectual level little above the retarded level.").

**2. Evidence that Sinisterra was victimized by homosexual sexual assault and violence as a child, that he suffered head injuries, and suffered from organic brain damage and impaired intellectual functioning that would have been discovered with reasonable investigation.**

As is appropriate to a post-conviction claim that counsel rendered ineffective assistance at the penalty phase of a capital trial, Sinisterra's counsel marshaled compelling new facts trial counsel should have uncovered and presented to the jury had counsel performed a reasonable investigation. Those facts came from lay witnesses that included Sinisterra and his family in Colombia, and compelling mental health evidence from the report of Dr. Llorente, who tested Sinisterra after the § 2255 investigation revealed a history of head trauma.

While evidence at sentencing showed that Sinisterra grew up in poverty in Colombia and lacked education, and that family members and acquaintances believed him to be a good person and hard worker, the jury never heard evidence of Sinisterra's dysfunctional family and the abuse he suffered, sometimes violently, as a child. The § 2255 petition alleged that, as a youngster in Buenaventura, Colombia, Sinisterra was horsewhipped and beaten by his mother, and, at age five or six, watched his father chase his mother with a machete when his father suffered an apparent psychotic episode. App. 155-156. Sinisterra and a friend were brutally gang-raped by a group



Appellate Case: 08-1925 Page: 47 Date Filed: 04/10/2009 Entry ID: 3536000

of older boys in an abandoned house, with the consequence that he became fearful and isolated. App. 156-157. Shortly thereafter, he ran away from home and lived on the streets of Cali for six years with a group of boys who protected each other from, among other things, sexual predators. App. 157. He returned to his family at the age of 12 or 13. A brother who was recently released from prison would get high on narcotics and sexually abuse him and a younger sibling. App. 158. Two brothers died violent deaths in Buenaventura. App. 160.

Evidence not presented to the jury also showed that Sinisterra suffered three major head injuries, one occurring when he nearly drowned when he lost consciousness after striking his head while diving into a pool. App. 161. At age seven in Cali, he struck his head against a lamppost so hard during a fight that he was knocked unconscious for two days and cared for by a local housewife. App. 161. At age 17, he was struck in the head with a metal stick. *Id*. He received no medical attention for any of the head injuries, and he continues to suffer from intense headaches. *Id*.

This history led § 2255 counsel to obtain authorization to have Sinisterra tested by Dr. Llorente. Dr. Llorente gathered some background on Sinisterra and his family through the clinical evaluation of Sinisterra and interviews with his mother and sister Rosa. App. 198-200. Dr. Llorente noted that members of Sinisterra's family suffered from alcoholism and psychiatric disorders, that Sinisterra suffered from abuse, child neglect and malnutrition, and he was physically abuse by his father although the family did not consider it to be abuse. App. 198. Sinisterra's mother and sister corroborated that Sinisterra was exposed to "a significant amount of violence as he

grew up in his home as a result of extensive and severe marital conflicts between his parents," which led to their divorce. App. 200.

Dr. Llorente evaluated Sinisterra with numerous test instruments, including a Spanish-language IQ test, and determined Sinisterra to have an IQ of 68. App. 201-203. Dr. Llorente concluded that the IQ score was not an accurate estimate of intellectual functioning due to Sinisterra's low educational attainment, which included a first grade education in Colombia, but determined Sinisterra to be functioning in the range between impaired and average. App. 206. While Dr. Llorente was ambivalent with respect to whether Sinisterra is mentally retarded, he concluded that Sinisterra did not possess the mental capacity to have planned the offense. App. 207. Dr. Llorente based that conclusion on a "lower-than-average intellectual index" and poor executive functioning scores, which cause individuals to be at greater risk to use poor judgment and to be impulsive, especially when under the effects of powerful undue influences. *Id*.

Dr. Llorente also diagnosed Sinisterra as suffering from organic brain damage based on his "pattern of neuropsychological performance." App. 206. That diagnosis was supported by the number of scores falling within the impaired range even when controlled for low educational attainment, his history that included three significant head injuries, his lisp, and his ingestion of controlled substances. *Id*. Sinisterra was placed at greater risk to undue influences due to his background that included exposure to abuse, violence, and neglect at a tender age, limited education, and absence of psychological or societal resources that would have provided structure, especially after he left Colombia and arrived in the United States. *Id*.



Appellate Case: 08-1925 Page: 49 Date Filed: 04/10/2009 Entry ID: 3536000

### 3. Supreme Court and Eighth Circuit precedents recognize the ineffective assistance claim raised in the § 2255 motion.

The evidence of abuse and mental deficits uncovered by § 2255 counsel is similar to the mitigating evidence not investigated or presented at capital sentencing by trial counsel in *Wiggins* and *Williams*, which served as the Supreme Court's basis for finding deficient performance and prejudice under *Strickland*. In *Wiggins*, the evidence developed in the post-conviction proceedings showed that the petitioner suffered from neglect and abuse. 539 U.S. at 516. His mother, an alcoholic, left the petitioner and his siblings alone for days, causing them to beg for food or to eat paint chips and garbage. *Id*. The petitioner's mother beat him for breaking into the kitchen, and the petitioner was beaten by several foster mothers. *Id*. The petitioner was sexually assaulted by a foster father and repeatedly gang-raped by the sons of one of his foster mothers. *Id*. In *Williams*, the Court noted that post-conviction counsel uncovered and presented at an evidentiary hearing a history of abuse that included a "nightmarish childhood" in which both parents went to prison for criminal neglect of the petitioner, evidence that the petitioner's father beat him, and evidence that the petitioner was borderline mentally retarded. 529 U.S. at 395-96.

Similar evidence also led this Court to grant the writ of habeas corpus on claims of ineffective assistance of counsel at sentencing. In *Simmons*, the evidence not investigated or presented included physical and verbal fights between Simmons' parents, Simmons being beaten by his mother with rulers, straps and belts that left welts and bruises on his body, Simmons urinating on himself out of fear of being beaten, and the homosexual rape of Simmons in a bathroom at a Chicago bus station after he ran away from home. 299 F.3d at 935. A mental health expert reported that



Appellate Case: 08-1925 Page: 50 Date Filed: 04/10/2009 Entry ID: 3536000

"the homosexual rape of a young teenager, when untreated and unrecognized, may cause strong psychological problems in adult life and may have a strong impact on determining psychological defensive structures and configurations." *Id*.

The evidence not presented in *Kenley* included a social worker's report that documented the divorce of the petitioner's parents, a father with psychiatric problems who threatened the petitioner, the petitioner's use of prescription medications, alcoholism, and military service. 937 F.2d at 1305. Psychiatrists would have testified to the father's chronic mental illness, that Kenley suffered from unsocialized behavior disorder that improved with anti-depressant medication, an abnormal EEG, two suicide attempts, antisocial personality disorder, and organic brain damage. *Id*. Family members would have corroborated a disadvantaged history and drinking problems. *Id*. at 1307.

Sinisterra was brutally gang-raped in an abandoned building as a six-year-old. His family was poor, and the trauma associated with that incident, which included fear and isolation, went untreated. He ran away from home and had to fend off sexual predators while living on the streets of a city foreign to him from ages six to twelve. When he returned home, he was again sexually abused, this time by a male family member who was recently released from prison and using narcotics. Rather than being nurtured at home, Sinisterra was beaten by both parents, horse-whipped by his mother, watched his father try to kill his mother with a machete, and was made to work rather than go to school as a small child. *See Van Hook v. Anderson*, No. 03-4207, 2009 WL 605332 at *4 (6th Cir. March 6, 2009) (ineffective assistance found based on counsel's failure to discover evidence the petitioner was beaten by his



Appellate Case: 08-1925 Page: 51 Date Filed: 04/10/2009 Entry ID: 3536000

parents, he witnessed his father attempt to kill his mother, and his mother was committed to mental institution). As Dr. Llorente noted, Sinisterra "lacked significant parental controls that would have protected him as a youth." App. 207.

While Dr. Llorente's report is ambivalent with respect to whether Sinisterra is mentally retarded, testing and evaluation revealed dampened intellectual functioning, poor executive reasoning, and organic brain damage, which would have mitigated the offense because those conditions led Sinisterra to suffer from poor judgment and impulsivity, generally. Dr. Llorente concluded that Sinisterra lacked the "mental capacity" to have planned the offense. App. 207.

With that evidence, the jury likely would not have found that Sinisterra engaged in "substantial planning and premeditation" to cause Colon's death and, therefore, would not have returned that statutory aggravating factor in its special verdict. App. 28-29, 41-42. *See* 18 U.S.C. § 3592(c)(9). The removal of an invalid statutory aggravating factor alone would have changed the calculus employed by the jury to sentence him to death. *See Sochor v. Florida*, 504 U.S. 527, 534 (1992) ("Eighth Amendment error when the sentencer weighs an "invalid" statutory aggravating circumstance in reaching the ultimate decision to impose a death sentence"); *United States v. Jones*, 132 F.3d 232, 251 (5th Cir. 1998) (Eighth Amendment error where federal capital jury considers invalid non-statutory aggravating factors).

/ /

/ /



Appellate Case: 08-1925 Page: 52 Date Filed: 04/10/2009 Entry ID: 3536000

## D. The District Court Failed to Comply with § 2255(b)'s Clear Command to Conduct an Evidentiary Hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

### 1. The district court abused its discretion when it ignored controlling circuit and Supreme Court precedent and summarily denied an evidentiary hearing based on the controverted and untested affidavit of Sinisterra's lead trial counsel.

To rebut the allegations of ineffective assistance of counsel contained in the motion and attached affidavits, including that of trial co-counsel Brewer, the Government sought and obtained an order from the district court to compel the production of an affidavit from Duchardt, Sinisterra's lead trial counsel. Dist. Ct. Doc. Nos. 47, 49. Duchardt produced an affidavit, which was filed in the district court as a freestanding document and attached to the Government's opposition to the § 2255 motion. App. 209, 233.

Much of Duchardt's affidavit actually supported the claims that counsel were ineffective for failing to investigate compelling mitigating evidence from Colombia and present that evidence to the jury. Duchardt claimed in his affidavit to have ceded control over the investigation of the Colombian mitigating evidence to his co-counsel, Brewer. App. 215. Duchardt did not go to Colombia, did not commission fact investigator Dan Grothaus to go to Colombia, and did not contract with a Spanish-speaking mitigation specialist or forensic social worker to perform mitigation investigation in Colombia. Duchardt found that the criticisms in the § 2255 motion that the presentation of mitigation from Colombia was "incomplete" and "disjoint" was "more than fair." App. 221.

Yet, the Government took several of Duchardt's assertions out of context to



Appellate Case: 08-1925 Page: 53 Date Filed: 04/10/2009 Entry ID: 3536000

support its opposition to the motion. The Government cited Duchardt's affidavit liberally (17 times) in arguing that the defense had sound strategic reasons for failing to retain a qualified mitigation specialist, failing to perform a thorough mitigation investigation and failing to investigate and present mental health mitigation. App. 273-279.

In denying relief, the district court quoted nearly *verbatim* the Government's opposition to Sinisterra's § 2255 motion, including the Government's repeated citations to Duchardt's affidavit. Add. 16-21. In fact, the district court's order quoted *verbatim* 11 paragraphs of the Government's opposition. *Compare* Order Denying Movant's § 2255 Motion at 16-21, Add. 16-21, *with* Government's Response at 41-47, App. 273-279.

With respect to its argument that no evidentiary hearing was required, the Government argued:

> Sinisterra's allegations cannot be accepted as true because all are either contradicted by the record or are inherently incredible. Accordingly, this Court should deny Ortiz's (sic) claims without an evidentiary hearing.

App. 283.

In denying the request for an evidentiary hearing, the district court noted that a hearing is not required under § 2255(b) where the allegations, if true, would not entitle the petitioner to relief or where they are refuted by the record or are inherently incredible. Add. 24 (citing *United States v. Regenos*, 405 F.3d 691 (8th Cir. 2005)). The court denied the hearing, finding that "the allegations of trial co-counsel Jennifer (Brewer) Herndon are either refuted by the record or inherently incredible efforts at second guessing co-counsel's, as well as her own performance upon the jury failing



Appellate Case: 08-1925 Page: 54 Date Filed: 04/10/2009 Entry ID: 3536000

to accept her position." Add. 25. The court denied the hearing, finding Sinisterra's allegations to be refuted by the record or inherently incredible and that "the strategic decisions of Mr. Duchardt were well-reasoned as reflected by the record as well as the oversight of the court." *Id*.

**a. The district court's ruling violated the rule of *Lindhorst*.**

The court relied heavily on the "strategic" decisions of Duchardt to deny relief and an evidentiary hearing. The finding of defense "strategy" derived almost entirely from Duchardt's affidavit, which the court explicitly credited over those of Brewer and implicitly over than of defense investigator Dan Grothaus. App. 179 (Brewer), 209 (Duchardt), 305 (Brewer), 312 (Grothaus). As noted above, this Court has held that an affidavit solicited by the Government does not constitute part of "the files and records of the case" upon which the district court may rely in denying a movant relief on his claim in the absence of an evidentiary hearing. *See Lindhorst*, 585 U.S. at 363.

In *Lindhorst*, the evidence of guilt of bank robbery consisted primarily of the testimony of the petitioner's two brothers-in-law ("the DeSherlias"), who testified they perpetrated the robbery with the petitioner. *Id.* at 363. The petitioner moved under § 2255 to set aside the conviction on grounds that the DeSherlias testified falsely, the Government knew of the falsehoods, and defense counsel was ineffective in not performing sufficient pretrial investigation to uncover evidence of the falsity. *Id*. at 364. The § 2255 motion was supported with sworn affidavits of the DeSherlias, who averred that threats and promises were made in exchange for their testimony. *Id.* The Government obtained counter-affidavits from the prosecutors and the lawyers appointed for the DeSherlias in Lindhorst's § 2255 proceedings. *Id*. The district court



Appellate Case: 08-1925 Page: 55 Date Filed: 04/10/2009 Entry ID: 3536000

based its grant of the Government's motion for summary judgment on its finding that the affidavits of the Government's witnesses were credible and upon its earlier observations of the demeanor of the recanting DeSherlias. *Id*.

This Court reversed, holding that "[t]he district court erred in concluding, without the benefit of an evidentiary hearing, that the Government did not knowingly use perjured testimony." *Id*. The Court acknowledged the "general rule" that "a hearing is necessary prior to the disposition of all § 2255 motions presenting factual issues." *Id*. The Court noted, consistent with the statute, that the files and records of the case may be sufficient to dispose of the motion where they conclusively show that the petitioner is entitled to no relief. *Id*. The Court ruled, however, that:

> [t]he district court erroneously treated the affidavits submitted by the government as part of the "files and records of the case." In effect, the court credited the governments's affidavits denying knowing use of perjured testimony and discredited the appellant's affidavits alleging the same. As the Second Circuit has declared: "[A]n opposing affidavit by the Government is not part of 'the files and records of the case' which can be taken to 'conclusively show that the prisoner is entitled to no relief,' within § 2255. The principle was established by the Supreme Court as long ago as *Walker v. Johnston*, 312 U.S. 275 (1941), and *Waley v. Johnston*, 316 U.S. 101 (1942)." *Taylor v. United States*, 487 F.2d 307, 308 (2nd Cir. 1973). Accord *Pennsylvania ex rel. Herman v. Claudy*, 350 U.S. 116 (1956); *Marchibroda v. United States*, 368 U.S. 487 (1962). The Supreme Court observed in a similar case: "It is true that they (appellant's allegations) are denied in the (government) affidavits filed with the return to the rule, but the denials only serve to make the issues which must be resolved by the evidence taken in the usual way. They can have no other office. The witnesses who made them must be subjected to examination Ore tenus or by deposition as are all other witnesses." *Walker v. Johnston,* 312 U.S. at 286-87.

*Lindhorst*, 585 F.2d at 365 (footnote omitted).

Thus, the Government's solicitation and production of Duchardt's affidavit should have served only to trigger an evidentiary hearing. Because the district court

relied extensively upon Duchardt's affidavit both in denying relief on the merits of the ineffective assistance claim and an evidentiary hearing, the "record" upon which the district court relied was the one proscribed by *Lindhorst*.

In *Marchibroda v. United States*, the Supreme Court held that a § 2255 claim that alleged the involuntariness of a guilty plea, which was based on the prosecutor telling the petitioner that he would receive no more than 20 years and not to tell his lawyer of the offer, could not be decided on the affidavit of the prosecutor without an evidentiary hearing because it depended on facts outside the record and was not so vague or conclusory as to permit summary disposition. 368 U.S. 487, 513-14 (1962). *Marchibroda* supports Sinisterra's argument for an evidentiary hearing because the ineffective assistance claim depends on facts *dehors* the record and does not simply rest on a conclusory statement that the constitutional right was denied.

**b. The record required an evidentiary hearing.**

The motion and the files and records of Sinisterra's case do not conclusively show that he is entitled to no relief. *See* 28 U.S.C. § 2255(b). To the contrary, the allegations about the evidence missed with respect to the Colombia part of the mitigation investigation are not only completely credible, but highly probable. Brewer stated that she was not even aware of the homosexual gang rape and evidence of other trauma suffered by Sinisterra until she saw the § 2255 motion. App. 307-08 ¶ 10. Duchardt claimed to have been aware of it, but acknowledged that the information was "only partially addressed in our penalty phase investigation." App. 218 ¶ 13. The failure to investigate mitigating evidence *and* present it to the jury constitutes deficient performance. *See Williams*, 529 U.S. at 395; *Wiggins*, 539 U.S. at 523; *Kenley*, 937

F.2d at 1303.

An evidentiary hearing is required to enable Sinisterra to prove his claim of ineffective assistance of counsel. Once permitted by the district court to travel to Colombia to develop mitigation, there was no reason for Brewer to refrain from raising with Sinisterra's family members and acquaintances the delicate topics related to family abuse and dysfunction, and the extreme violence Sinisterra suffered as a child. Reasonably competent counsel would have known that she may have had only one chance to gain mitigating evidence deemed "powerful" in *Wiggins*. 539 U.S. at 517. In addition, time was of the essence, as the trial date was only one month away at the time of Brewer's trip in March 2000. Given that defense counsel had not yet gained assurances that the mitigating witnesses would be permitted to enter the country to testify at sentencing, reasonably competent counsel could not afford to pass on the opportunity to gather potentially powerful mitigating evidence.

An evidentiary hearing is also required to determine the truthfulness of Duchardt's averment that he knew the full extent of the abuse of Sinisterra. App. 218 ¶ 13 ("I was aware of all of this information prior to the start of trial"). That statement is almost certainly not true. He ceded to the role of lead sentencing counsel and the duty to investigate the Colombia evidence to Brewer. App. 215 ¶ 8 ("Herndon took the lead on developing mitigation evidence from Colombia"). Brewer averred that she did not share the fruits of her mitigation investigation in Colombia with Duchardt. App. 307 ¶ 9. The record simply fails to demonstrate how Duchardt would have obtained this information, given that he conceded that it was not his to investigate.



Appellate Case: 08-1925 Page: 58 Date Filed: 04/10/2009 Entry ID: 3536000

If Duchardt did know of the evidence of homosexual gang-rape and other violence and failed to share it with Brewer or failed otherwise to present it to the jury, he rendered ineffective assistance of counsel. Duchardt assigned Brewer the role of lead counsel for mitigation development in Colombia. It would be unconscionable for Duchardt to become aware of powerful evidence of abuse in Colombia and not share it with co-counsel. Timely sharing of such information would have enabled Brewer to inquire about it in the videotaped interviews admitted at sentencing or secure it through a mitigation specialist or investigator who could have revealed it at the capital sentencing hearing.

Duchardt acknowledged in his affidavit that there were other ways to obtain the social history evidence from Colombia and present it at sentencing, including through depositions of the Colombia witnesses pursuant to Fed.R.Civ.P. 15(a)(1) or a forensic social worker who could synthesize information obtained from witnesses in Colombia and testify to it at sentencing. App. 221 ¶¶ 14 & 15. Duchardt averred that he and Brewer attempted to secure "a forensic social worker who had a background in the Spanish culture, and particularly a familiarity with Colombia and its culture," but were unable to find one. App. 222 ¶ 15. In the § 2255 proceedings, Mr. Jenab located one of Colombian background who had experience in mitigation development (App. 101), although the court denied Jenab the funds with which to retain him. App. 104.

An evidentiary hearing is necessary to test the veracity of the averment that no mitigation specialist capable of an investigation in Colombia was available. The hearing is necessary as well to inquire as to the extent of experience of Duchardt and Brewer in securing witnesses from Colombia and why, despite various alternatives,



Appellate Case: 08-1925 Page: 59 Date Filed: 04/10/2009 Entry ID: 3536000

all eggs were placed in a basket that depended on the United States permitting entry to Colombians who, on the whole, were likely considered *non grata* due to Colombian drug production and U.S. efforts to combat it. There was a reasonable likelihood that the Colombian defense witnesses were never going to be allowed entry. Reasonably competent counsel would have investigated other avenues to secure their testimony.

**2. The district court abused its discretion in denying an evidentiary hearing on counsel's failure to investigate and present mitigating evidence that Sinisterra was the victim of childhood violence, where the court's reasons were unsupported by the record or relied on factual determinations that were clearly erroneous.**

Even in the absence of controlling precedent that prohibits the district court from relying on untested extra-record affidavits to deny an evidentiary hearing, *see Lindhorst*, 585 F.2d 361, an evidentiary hearing was required because the district court's reasons for denying relief unsupported by the record or relied on factual determinations that were clearly at odds with record facts.

**a. The district court mistook the special verdict returned in *Hinestroza* for the special verdict in *Sinisterra*.**

As noted above, the district court merely quoted *verbatim* virtually all of the Government's argument why relief and an evidentiary hearing should be denied on the claim of ineffective assistance for failing to investigate and present mitigating evidence. The damage to the judgment from the district court's careless repetition of the Government's erroneous argument could not be more stark than the court's finding that the mitigation presented by defense counsel was compelling, even if ultimately rejected by the jury, where the jury returned a special verdict in which it found as a non-statutory mitigating factor that Sinisterra's "lack of guidance and support as an adolescent made him an easy target of the violent drug culture." Add. 19, quoting the

Government's response at 45 (App. 277).

Sinisterra's jury never returned a special verdict on that non-statutory mitigating factor. App. 25-38, 39-51. That special verdict was actually returned in the sentencing hearing of Sinisterra's co-defendant, Edwin Hinestroza. App. 77. Hinestroza was tried before the same judge, but he was tried separately from his co-defendants because he was a fugitive at the time of their trial.

A side-by-side comparison of the special verdicts from *Sinisterra* and *Hinestroza* serves to illustrate the overzealousness of the Government in seeking to defeat, at all costs, Sinisterra's effort at relief and an evidentiary hearing. Those efforts must be contrasted with those of lawyers from the same U.S. Attorney's Office in *Nelson*, 297 Fed.Appx. at 564, where this Court noted that the Government conceded in its response to the § 2255 motion that the petitioner was entitled to an evidentiary hearing on an ineffective assistance claim.

**b. The district court erroneously found that the benign information contained on the Colombia videotapes sufficiently conveyed to the jury Sinisterra's mitigating evidence.**

The district court failed to address anywhere in its order the qualitative difference between the benign evidence contained in the Colombia videotapes presented to the sentencing jury, which largely described Sinisterra as a good person and worker and that he grew up in poverty and with little education, and the evidence of extreme violence, abuse, neglect, family dysfunction, and psychological trauma suffered by Sinisterra as a child. The evidence of his being gang-raped with the attendant psychological trauma that he became fearful and isolated, which went untreated, was reasonably available to defense counsel but not contained in the



Appellate Case: 08-1925 Page: 61 Date Filed: 04/10/2009 Entry ID: 3536000

videotapes nor was it produced through the testimony of Sinisterra, a mitigation specialist or a forensic social worker. The jury also heard no evidence that Sinisterra was beaten by both parents, horse-whipped by his mother, and sexually molested by another male family member.

The district court glossed over the distinctions by finding that "[t]he videotapes of Sinisterra's upbringing in Colombia sufficiently conveyed to the jury information deemed as mitigating factors," and the court made the unfortunate reference to the *Hinestroza* special verdict. Add. 19. The court also found that the presentation of that evidence satisfied the standard set forth in *Wiggins*, 539 U.S. at 524. Add. 19. The investigation and presentation of mitigation did not satisfy *Wiggins* because, in that case, it was the evidence of gang-rape and sexual molestation that the Supreme Court termed "powerful." 539 U.S. at 534. Although available, no such "powerful" mitigating evidence was presented by defense counsel here.

The record suggests that the district court, apart from being repeatedly misled by the Government's opposition, may not have understood the analysis in which it was to engage with respect to adjudicating the ineffective assistance claim. That claim contemplates a comparison of the evidence presented to the sentencer with the evidence that would have been presented with reasonable investigation. That comparison is part and parcel of the analyses performed by the Supreme Court in *Wiggins*, 539 U.S. 510, and *Williams*, 529 U.S. 362, and this Court in *Simmons*, 299 F.3d 929, and *Kenley*, 937 F.2d 1298. A sister circuit has noted explicitly the comparison that must be made in the collateral proceeding. *See Belmontes v. Ayers*, 529 F.3d 834, 863 (9th Cir. 2008) ("we must 'compare the evidence that actually was



Appellate Case: 08-1925 Page: 62 Date Filed: 04/10/2009 Entry ID: 3536000

presented with the evidence that might have been presented had counsel acted differently,' *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995), and evaluate whether the difference between what was presented and what could have been presented is sufficient to 'undermine confidence in the outcome' of the proceeding."). No such comparison was performed by the district court here.

That the district court employed an incorrect analysis is also supported by its orders denying appointed § 2255 counsel's requests for funds and for the appointment of the Federal Public Defender, with its Spanish-speaking attorneys and investigator. Jenab moved for funds on September 7, 2004, prior to filing the Amended § 2255 motion, for a specific Spanish-speaking mitigation specialist to interview Sinisterra to determine what mitigating evidence was not investigated or presented by trial counsel. App. 98. The court denied that request on the basis that "this is not an issue requiring the services of a mitigation specialist," that "evidence of movant's social history and culture was presented by trial counsel," and Jenab failed to show that "appointment of a mitigation specialist in this collateral attack on movant's sentence is necessary or appropriate." App. 104-105.

Jenab renewed that motion for funds in December, 2004. App. 106. Jenab acknowledged that despite his lack of training in mitigation development, even he, through the aid of an interpreter, was able to glean some additional mitigation evidence from his client that should have been investigated and presented at sentencing. App. 112. That additional mitigation, which included the history of Sinisterra's being the victim of violence in Colombia, was described by Jenab in the Amended Motion. App. 112-115. In its order denying the renewed motion, the court



Appellate Case: 08-1925 Page: 63 Date Filed: 04/10/2009 Entry ID: 3536000

indicated that Jenab apparently obtained the additional mitigation without authorization of a mitigation specialist, and the court again denied the funds as unnecessary and inappropriate. App. 121.

Jenab moved on September 19, 2007, for the substitution of the FPD for the District of Arizona as co-counsel in order to secure the assistance of Spanish speaking co-counsel and investigator. App. 286. Those resources, Jenab alleged, were needed to investigate Sinisterra's early years in Colombia which, apart from what was presented on the videotapes, was not investigated or presented to the jury. App. 287. The FPD's appointment, which was approved by the Office of Defender Services at the Administrative Office of the U.S. Courts, would have come out of the FPD's budget. App. 289.

On September 25, 2007, the court denied the substitution on the basis that counsel are not members of the Western District bar and do not practice in this jurisdiction.[9] App. 303. The court further stated that

> [t]rial counsel was afforded an opportunity to travel to Colombia to conduct a background investigation. Post-conviction counsel can evaluate the reasonableness of trial counsel's efforts without a separate government funded investigation requiring travel to Colombia.

*Id*.

---

[9] To the extent the court questioned counsel's qualifications, counsel note that this Court appointed the FPD in this appeal. Marquez and Gabrielsen are members of the bar of the Supreme Court of the United States, the Ninth Circuit, and the District of Arizona. Marquez is licensed to practice in the State of Arizona. Gabrielsen is licensed in Illinois and Nevada, and is a member of the bar of the Seventh Circuit and the Central and Southern Districts of Illinois. Undersigned counsel are fluent in Spanish, as is the FPD investigator assigned to the case, John Castro.



Appellate Case: 08-1925 Page: 64 Date Filed: 04/10/2009 Entry ID: 3536000

It matters not that Brewer went to Colombia, performed a perfunctory investigation, and presented something in mitigation. She acknowledged in the affidavit attached to the Traverse that her trip was to become acquainted with Sinisterra's family and to gather background information, and that she required follow-up interviews in order to flesh out the sensitive topics, including abuse and dysfunction, that are at the heart of a mitigation case. App. 308. If she were not sure that follow-up interviews would occur prior to trial, she should have delved into the sensitive topics on her only trip to Colombia or retained a Spanish-speaking mitigation specialist, forensic social worker, or investigator with a background in mitigation development to interview the Colombian family members and acquaintances about the extreme violence Sinisterra suffered as a child and the family abuse and dysfunction. The allegation that she and Duchardt rendered ineffective assistance required that an investigation be performed to determine whether significant mitigation evidence existed *in Colombia* that would have been unearthed with reasonable investigation.

It was bad enough that the United States barred the entry to this country of all of the Colombian mitigation witnesses whose entry was sought by Sinisterra and his co-defendants while allowing entry to four Colombian prosecution witnesses, including the one witness upon which the Government's entire case rested (drug trafficker and presumed tax evader Borja-Molina). The district court should not have hamstrung § 2255 counsel with rulings that resulted in his inability to produce all of the mitigation evidence needed for the district court to determine whether trial counsel performed incompetently and whether Sinisterra was entitled to an evidentiary

hearing. Should the Court order an evidentiary hearing, the FPD will undertake a full investigation of mitigation in Colombia necessary to support Sinisterra's claim of ineffective assistance of capital sentencing counsel. which should have occurred prior to the district court's denial of the § 2255 motion.

**c. The record does not support the district court's finding that the effort to secure Colombian witnesses was "timely."**

In its direct appeal opinion, this Court stated that "[n]o party to this lawsuit explains why permission [for the Colombian mitigation witnesses] to enter the country was denied." *United States v. Ortiz*, 315 F.3d 873, 904 (8th Cir. 2003). Yet, on an undeveloped record, the district court found defense counsel not to be at fault in failing to present mitigating evidence from Colombia because counsel "timely applied for entry visas, but the visas were rejected." Add. 17. An evidentiary hearing is required because the record simply does not demonstrate the timeliness, extent, or appropriateness of counsel's efforts to secure the witnesses from Colombia nor the reasonableness of counsel's presumption that the witnesses would be admitted.

Attorneys Duchardt and Brewer were appointed on December 2 and 16, 1998, respectively. App. 9, 10. There is no showing of record as to when they actually acted with respect to the investigation of witnesses in Colombia.

"[P]reparation for the sentencing phase, in the form of investigation, should begin immediately upon counsel's entry into the case." *Wilson v. Sirmons*, 536 F.3d 1064, 1085 (10th Cir. 2008), citing the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (hereinafter "ABA Guidelines"), Guideline 11.8.3 (1989). The Supreme Court has treated the ABA Guidelines as a standard against which to measure the performance of defense counsel



Appellate Case: 08-1925 Page: 66 Date Filed: 04/10/2009 Entry ID: 3536000

in a capital case. *See Rompilla*, 545 U.S at 387 n.7; *Wiggins*, 539 U.S. at 524. *Accord Nooner v. Norris*, 402 F.3d 801, 812 (8th Cir. 2005) (Lay, J., concurring in part, dissenting in part). The reason for the ABA's requirement of early mitigation phase investigation "is obvious - there must be sufficient time for interviews, research, and adequate testing before strategic planning can even begin." *Sirmons*, 536 F.3d at 1085.

Here, counsel's investigation into mitigation in Colombia, and preparation to have witnesses admitted to the United States for trial should have begun immediately or soon after counsel's appointment. The court's determination that counsel acted "timely" in attempting to make immigration arrangements is not supported by the record.

The record demonstrates that the Government acted as early as August 2, 1999, to secure its Colombian witnesses by writing to the District Director of the INS with a request to admit the Government's Colombian witnesses for this prosecution. Tr. 3114; App. 24 (letter from U.S. Attorney to INS District Director, August 2, 1999). The Government's approach was the correct one, as it was the Justice Department, of which the INS was a part, not the State Department, that was responsible for admitting aliens for a "significant public benefit" such as to testify at a judicial, administrative or legislative proceeding. 8 C.F.R. § 212.5(a)(4)(1998). The U.S. Attorney's letter was attached to Tello's motion to dismiss the death notice. App. 13, 24. Borja-Molina, Amparo Molina, Monica Osma and Edward Ortiz were allowed entry, and convictions could not have been obtained without Borja-Molina's testimony.

On the other hand, at a hearing on Tello's motion to dismiss the death notice,



Appellate Case: 08-1925 Page: 67 Date Filed: 04/10/2009 Entry ID: 3536000

Tello's counsel testified that she began immigration arrangements for Tello's mitigation witnesses in December 1999. Tr. 3110. While Tello's witnesses were not allowed entry by the time of Tello's sentencing, his counsel was aware that a decision on reconsideration of the original denial of the request for entry could be obtained in 30 to 90 days. Tr. 3121. It may simply have been that counsel for Tello waited too long to seek entry for Colombian witnesses for a trial beginning four months later.

On this record, it is unclear when Sinisterra's counsel began the process of gaining entry for his mitigation witnesses. The district court's characterization that the effort was "timely" simply has no support. Unlike Tello's counsel, Sinisterra's lawyers made no offer of proof on that question.

**3. The district court abused its discretion in denying an evidentiary hearing on the claim that counsel unreasonably failed to retain a mitigation specialist.**

Defense counsel's failure to present available mitigating evidence from Colombia could have been obviated by an early request for, and appointment of, a qualified mitigation expert. As is noted above, the Supreme Court has identified the ABA Guidelines, including the Revised Edition published in 2003, as a guide with which to measure the performance of counsel in capital cases. *See Rompilla*, 545 U.S at 387 n.7; *Wiggins*, 539 U.S. at 524. The Guidelines are a codification of norms of defense practice that have developed over time. *Wiggins*, 539 U.S. at 524. Revised Guideline 4.1 prescribes the appointment in a capital case of two lawyers, an investigator and a mitigation specialist. The Commentary to Revised Guideline 4.1(A)(1) states:

> A mitigation specialist is also an indispensable member of the defense team throughout all capital proceedings. Mitigation specialists possess



Appellate Case: 08-1925 Page: 68 Date Filed: 04/10/2009 Entry ID: 3536000

> clinical and information-gathering skills and training that most lawyers simply do not have. They have the time and the ability to elicit sensitive, embarrassing, and often humiliating evidence (e.g. family sexual abuse) that the defendant may have never disclosed.
>
> They have the clinical skills to recognize such things as congenital, mental or neurological conditions, to understand how these conditions may have affected the defendant's development and behavior, and to identify the most appropriate experts to examine the defendant or testify on his behalf ....
>
> Perhaps most critically, having a qualified mitigation specialist assigned to every capital case as an integral part of the defense team insures that the presentation to be made at the penalty phase is integrated into the overall preparation of the case rather than being hurriedly thrown together by defense counsel still in shock at the guilty verdict.

Russell Stetler is the National Mitigation Coordinator for the Federal Public Defender Program. App. 291. He executed affidavits (App. 291, 316) that were attached as exhibits to Sinisterra's motion to substitute as counsel the Federal Public Defender for the District of Arizona and to the Traverse. App. 286, 304. Similar to what is contained in the ABA Guidelines, Stetler identified the qualities that make a mitigation specialist as vital defense team member. In particular, Stetler described the hundreds of hours it requires to perform an adequate mitigation investigation because time is required to build rapport with a client's family in developing a social history prior to making inquiries that invade "the darkest, and most shameful secrets of a client's family, expose raw nerves, and re-traumatize those being interviewed." App. 324 ¶ 19, 20.

Investigation by a trained mitigation investigator is particularly necessary where the client "does not share the attorney's cultural background" because language and cultural differences lead to misunderstandings "about the nature of legal proceedings and the purpose of the investigation." *Id*. at ¶ 21. Stetler, a veteran of mitigation

investigations in numerous countries, described the difficulty in performing an in investigation in a foreign country, even for a seasoned mitigation investigator, due to the problems in gaining the trust and cooperation of witnesses. App. 324-25 ¶ 21. In Stetler's opinion, the mitigation investigation here was compromised by the absence from Sinnisterra's defense team of a "qualified and experienced bilingual mitigation specialist" who could complete "a detailed, multi-generational social history to highlight the complexity of the client's life and identify multiple risk factors and mitigation themes." App. 328 ¶ 28.

The district court ruled that the defense team possessed the clinical skills required to develop a case in mitigation in part because Duchardt retained as a mitigation specialist investigator Dan Grothaus. Add. 17. Again simply lifting language from the Government's opposition, the court cited Duchardt's affidavit for the proposition that Grothaus possessed the skills and experience necessary to perform as both a guilt phase and mitigation investigator. *Id.* The court found that "Mr. Grothaus was employed as a mitigation specialist by the defense." App. 18 (citing Duchardt's Affidavit at 13 ¶ 14.).

An evidentiary hearing is required because the assertions from Duchardt's affidavit to which the court cited were undercut by the affidavits of Grothaus and Brewer that were attached to Sinisterra's Traverse. Lead sentencing counsel, Brewer, averred that Grothaus "was consumed with work on the guilt phase of the case," and she did she did not ask him to do "any mitigation work in the case." App. 306 ¶ 7. Grothaus stated in his affidavit that he had no training in Latin American culture, had never performed a "capital defense investigation defense of any kind in a foreign



Appellate Case: 08-1925 Page: 70 Date Filed: 04/10/2009 Entry ID: 3536000

country, and spent the vast majority of his time investigating guilt phase issues in this case. App. 312-13 ¶ 3. Grothaus stated he had no knowledge of Sinisterra's background in Colombia, that he did not perform a social history, and that he did not know of the family and sexual violence experienced by Sinisterra until he read the § 2255 motion. App. 314 ¶¶ 7, 8. The only task he performed was interviewing Sinisterra's wife, children, and acquaintances , who provided him with "information related to Mr. Sinisterra's guilt-innocence phase." App. 313 ¶ 4.

**4. The district court abused its discretion in denying an evidentiary hearing on the reasonableness of defense counsel's failure to present evidence of impaired intellectual functioning where the court erroneously believed such evidence *was* presented to the jury.**

Sinisterra alleged in the § 2255 motion that counsel performed ineffectively by failing to produce Dr. Wheelock or another mental health expert to testify to his low IQ, which placed him "at least in a borderline deficient intellectual capacity category, and falls within the IQ range for mental retardation pursuant to the diagnostic standards of DSM-IV and the American Association on Mental Retardation." App. 165. In the affidavit solicited by the Government, Duchardt stated that:

> criticism is made about the presentation made before the jury with respect to the findings of Dr. Warren Wheelock. I have reviewed the testimony offered from Dr. Wheelock during the trial, and I believe that the testimony accurately sets forth Dr. Wheelock's conclusions.

App. 225.

Dr. Wheelock's trial testimony did not set forth his conclusions as to Sinisterra's performance on the WAIS III. Wheelock testified to the WAIS III results at a pretrial suppression hearing. Tr. 11/3/99 at 712. At trial, the district court sustained a Government objection to testimony concerning the WAIS III results on the



Appellate Case: 08-1925 Page: 71 Date Filed: 04/10/2009 Entry ID: 3536000

basis that the low IQ went to Sinisterra's "mental capacity," which was not at issue there, but the court invited defense counsel to present the low IQ evidence at sentencing. Tr. 2257. Duchardt and his co-counsel failed to present Wheelock or the low IQ evidence at the capital sentencing hearing.

In its opposition, the Government did not actually quote or cite the trial transcript. Instead, the Government quoted, inaccurately, Duchardt's affidavit:

> However, as Mr. Duchardt states in his affidavit, Dr. Wheelock's conclusions were pursued and Dr. Wheelock testified about his finding that Sinisterra had a low IQ during the trial. (Duchardt Aff. 17, ¶ 18.) The jury had an opportunity to hear this testimony and consider it during the trial and penalty phase (although the testimony was not presented during the penalty phase).

App. 278.

Unfortunately, in its order, the district court quoted *verbatim* the Government's erroneous argument, except to omit the Government's concession that the jury did not hear the evidence at sentencing:

> However, as Mr. Duchardt states in his affidavit, Dr. Wheelock's conclusions were pursued and Dr. Wheelock testified about his finding that Sinisterra had a low IQ during the trial. (Duchardt Aff. 17, ¶ 18.) The jury had an opportunity to hear his testimony and consider it during the trial and penalty phase.

Add. 20.

The Government misconstrued Duchardt's affidavit, and the district court compounded that error by blindly reproducing the Government's erroneous argument why relief should be denied on the ineffective assistance claim. An evidentiary hearing is required because the record is silent as to why Dr. Wheelock, or a mental health expert steeped in experience as to IQ testing and the implications for low intellectual functioning, was not called as a mitigation witness at sentencing. The IQ



Appellate Case: 08-1925 Page: 72 Date Filed: 04/10/2009 Entry ID: 3536000

score of 75 placed Sinisterra in the significantly subaverage range of intellectual functioning for purposes of determining whether a person is mentally retarded. *See Atkins*, 536 U.S. at 309 n. 5. As noted above, the Sixth Circuit recently granted the writ on an ineffective assistance claim where evidence of low IQ was not presented at sentencing. *See Dickerson*, 453 F.3d at 698.

**5. The district court abused its discretion in denying an evidentiary hearing where the record was undeveloped as to the purpose of Dr. Dos Santos' evaluation and whether counsel submitted adequate records of Sinisterra's social, medical and family history sufficient to permit a thorough mitigation evaluation.**

With respect to the claim that defense counsel should have retained a qualified mental health expert to evaluate Sinisterra and present such evidence to the jury at sentencing, the district court again quoted *verbatim* the Government's response:

> Contrary to Sinisterra's claim that a mental health expert was not utilized, Mr. Duchardt, in his affidavit, states that in light of Dr. Wheelock's report, counsel had Sinisterra evaluated by a mental health expert, Dr. Enrique dos Santos, M.D., whose oral report indicated that Sinisterra had no problems. (Duchardt Aff. 17, ¶ 19.) Dr. Santos is a Spanish-speaking psychiatrist who was the Clinical Director of the Fulton State Hospital. In light of Dr. Santos' evaluation, counsel rightly did not pursue a mental health issue.

Add. 20.

Even assuming that the Court's decision in *Lindhorst* somehow does not control here, Duchardt's assertion that he retained a psychiatrist to evaluate Sinisterra required that the district court conduct an evidentiary hearing. The record is silent as to the nature, purpose, and length of any evaluation Dr. Dos Santos conducted. It is not clear on this record whether Duchardt or co-counsel supplied Dos Santos with the records the Supreme Court and this Court have identified as necessary to be produced for the mental health expert to perform a reasonable evaluation of a capital accused's mental



Appellate Case: 08-1925 Page: 73 Date Filed: 04/10/2009 Entry ID: 3536000

functioning and history. The record does not reflect whether Duchardt produced the evidence of low IQ or asked that Dos Santos evaluate Sinisterra for mental retardation. The record does not reflect whether the videotapes shot in Colombia in March 2000, which bore some family and social history, were even shared with Dos Santos.

It may be that the pretrial evaluation concerned only competency to stand trial and insanity, evaluations not coextensive with an evaluation geared toward uncovering reasons for a jury to impose a sentence less than death. In *Kenley*, the Court noted that counsel's approach to the pretrial evaluation at Fulton State Hospital, with the modest exchange of mental health records, resembled an evaluation of legal insanity or incompetence rather than a search for "evidence of conditions, disorders and disturbances . . . which may be considered by a jury as mitigating evidence." *Kenley*, 937 F.2d at 1307, citing *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982). *See Frierson v. Woodford*, 463 F.3d 982, 993-94 (9th Cir. 2006) (because evidence presented at each phase of trial serves a markedly different purpose, and because the reasonableness of counsel's investigation and preparation for capital sentencing is examined in a more exacting manner, the reasonableness of counsel's efforts to prepare for trial and sentencing is analyzed differently).

The record does not demonstrate whether defense counsel outlined for Dos Santos the mental states relevant to sentencing, including the mental states required to be proved under the Eighth Amendment and the federal statute for a sentence of death to be imposed as reflected in the special verdict form. *See Enmund v. Florida*, 458 U.S. 782 (1982); and *Tison v. Arizona*, 481 U.S. 137 (1987); App. 27, 40. More importantly, the record does not reflect whether defense counsel requested that Dos

Santos evaluate Sinisterra with an eye toward developing mitigation or undermining the "substantial planning and premeditation" statutory aggravating factor later returned by the jury in the special verdict. App. 28-29, 41-42.

The Supreme Court has stated that counsel may render ineffective assistance even where a mental health expert is retained if defense counsel's failure adequately to prepare the expert for the evaluation results in a benign diagnosis that would change dramatically with the production of additional records. In *Rompilla*, the evidence showed that defense counsel failed to uncover prior school, medical and prison records that would have led three mental health experts, who tested Rompilla prior to trial and found "nothing helpful," to require additional testing and to later diagnose Rompilla as suffering from organic brain damage, extreme mental disturbance significantly impairing several of his cognitive functions, fetal alcohol syndrome, and an inability to appreciate the criminality of his acts or to conform his conduct to the requirements of law. 545 U.S. at 392-93.

In *Kenley*, the psychiatrist interviewed Kenley, reviewed "limited background information," and performed several tests before concluding that Kenley suffered from anti-social personality disorder but not "from an exculpatory disease or defect." *Id*. at 1305-06. After the state courts and district court denied relief on the ineffective assistance claim, this Court granted the writ.

One of the deficiencies of counsel was the failure of counsel to arm the psychiatrist with the reports of two other psychiatrists who tested and evaluated Kenley, including one who diagnosed Kenley with an unsocialized behavior disorder and as having an abnormal EEG. The Court also found that defense counsel failed to



Appellate Case: 08-1925 Page: 75 Date Filed: 04/10/2009 Entry ID: 3536000

provide the Fulton psychiatrist with information from roughly a dozen of Kenley's family members, who could have testified to his disadvantaged background and drinking problems, including his intoxication at the time of the arrest, as well as his trustworthiness and work ethic. *Id*. at 1307. *See Lambright v. Schriro*, 490 F.3d 1103, 1117 (9th Cir. 2007), *quoting Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002) (counsel have "an affirmative duty to provide mental health experts with information needed to develop an accurate profile of the defendant's mental health.").

**E. Relief requested.**

Sinisterra has stated a valid claim for relief under the Sixth Amendment and the case law of the Supreme Court and the Eighth Circuit. Because "the motion and the files and records of the case" do not conclusively demonstrate that Sinisterra is entitled to no relief, the district court erred in denying Sinisterra an evidentiary hearing under 28 U.S.C. § 2255(b). This Court must reverse and remand for an evidentiary hearing.

/ /

/ /

/ /



Appellate Case: 08-1925 Page: 76 Date Filed: 04/10/2009 Entry ID: 3536000

## II.

**German Sinisterra was denied his right to effective assistance of counsel under the Sixth Amendment where trial counsel failed to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and the same appellate counsel failed to raise the claim of prosecutorial misconduct on direct appeal.**

***The Remarks***

The line of improper argument began when the Government explained the trial and sentencing process to the jury:

> [Sinisterra's] actions necessitated a reaction and that reaction is a court of law having a trial where issues are talked about and argued about and *where you twelve people, the conscience of this community come together and make a decision of what is just*.

Tr. 2881 (emphasis added). The Government further argued:

> You can have the courage to act as the conscience of this community, to weigh the fact (sic), to apply the law and to determine no matter how much his family may love him [Sinisterra] what he did on November 28, 1998 shall never be repeated and *send a message to all other drug dealers that this community will not tolerate it.*

Tr. 2892 (emphasis added). This appeal to the jury's fears about drug violence became a recurring theme in the Government's case for death. This same argument was then repeated in the Government's rebuttal closing argument:

> Ladies and gentlemen, decent people, decent citizens, fear for their lives because of drug traffickers like German Sinisterra. We cannot forget he was a member of a very efficient but unforgiving cocaine distribution organization and American society is a much different place than it was 50 years ago because of the German Sinisterras of the world.
>
> It is time to turn the tables on drug traffickers like this defendant. *Finish the message that you began with your verdict of guilt in this case. Tell this defendant and those like him that murder will not be tolerated especially murder committed to further drug trafficking schemes. There is no worse crime.* As you sit there you are not just twelve people. You are, like Mr. Valenti told you, the conscience of the community and you have a unique opportunity to make a difference. *You have a unique*

> *opportunity to send a message. Don't squander that opportunity. Have the courage to do the right thing.*
>
> ...
>
> German Sinisterra believes by his actions that murdering couriers over a drug debt is just a part of doing business. Tell him he's wrong and *tell the other drug traffickers of the world if they come to Kansas City they are going to be dealt with in the most severe way, they are going to receive a sentence of death.*

Tr. 2910-11 (emphasis added).

In addition in its rebuttal closing, the Government explicitly minimized the importance of any of Sinisterra's individual characteristics that weighed against death, and instead asked the jury to look beyond him as a particular defendant and weigh the impact that a death sentence would have on deterring other drug dealers from coming into their community:

> The octopus when in danger shoots out a dark ink into the water so it can escape. If it doesn't get out of that, it shoots, it's fatal, the octopus dies. *And that's what mitigation evidence is in this case. Ladies and gentlemen, it's a smoke screen.* It's that ink. He's the octopus. What he wants is to escape in this case, he wants to escape justice.
>
> *This case, ladies and gentlemen, is not about this. Has nothing to do about that.* What this case has to do is, *this is what this case is about. It's taking a thousand dollars to put a gun to somebody's head to blow their brains out. They don't want you to think about that but that's what it is.*

Tr. 2906-07 (emphasis added).

Furthermore, the Government argued not that the proffered mitigation should be given little weight, but rather that it would be "wrong" for the jury to rely on such evidence in determining the appropriate penalty. The prosecutor made that very argument to the jury with respect to the defense execution impact evidence:

> Counsel talked to you about the children of German Sinisterra. And regardless of what she said she wants sympathy from you. There is no doubt, there is no doubt those children are deserving of sympathy, they



Appellate Case: 08-1925 Page: 78 Date Filed: 04/10/2009 Entry ID: 3536000

> are victims but they are victims of what this defendant has done. *It would be wrong, ladies and gentlemen, it would be wrong to base your verdict on how they feel.* The defendant chose to live the life he did and he has shamed, he has devastated and he has hurt his family.
>
> *You, as jurors, however are not hurting anybody by following the law and rendering a just verdict as Mr. Valenti told you. Don't be manipulated in that way.*

Tr. 2908 (emphasis added).

Trial counsel failed to make a contemporaneous objection to *any* of these comments, nor did trial counsel move for a mistrial based on these comments. Appellate counsel also failed to challenge these remarks on appeal. This argument constituted an emotional appeal calculated to persuade the jury to decide the question of life or death on other than the facts before it. By equating a sentence of death to the delivery of a blow against the drug problem, and falsely magnifying the significance of this crime as opposed to all other capital crimes, the Government substituted emotion for evidence, passion for deliberation, and placed on Sinisterra's shoulders the heavy burden of the amelioration of general societal woes. This, coupled with the misleading arguments giving the jury permission to ignore proffered, appropriate mitigation, it is reasonably likely that this unchallenged misconduct caused the jury to return verdicts of death against Sinisterra.

**A. Standard of Review.**

Whether Sinisterra was denied his right to effective assistance of counsel under the Sixth Amendment where trial counsel failed to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and appellate counsel failed to raise that claim on direct appeal is a legal question subject to de novo review. *See Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir. 1996).



Appellate Case: 08-1925 Page: 79 Date Filed: 04/10/2009 Entry ID: 3536000

## B. The Government's Prosecutorial Misconduct.

The remarks above can be placed in two categories of improper prosecutorial misconduct, either of which precluded fair consideration of Sinisterra's mitigation at sentencing and violated Sinisterra's Eighth Amendment right. One grouping inappropriately linked Sinisterra to the drug ails of the country; and the other set of remarks mislead the jury into disregarding the proffered mitigation.

As the Supreme Court has made clear in *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion), "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (emphasis in original). The Court noted that "an individualized decision is essential in capital cases" because a death sentence is such an extreme penalty without the corrective mechanisms that are available with other forms of punishment. *Id*. at 605. Moreover, the Court has made it clear in subsequent cases that "the jury must be allowed *to consider and give effect to* mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." *Penry v. Lynaugh*, 492 U.S. 302, 327-28 (1989) (emphasis added). In preserving an individualized sentencing, as set forth below, such remarks have repeatedly been held to constitute reversible error.

In *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992), the defendant was convicted of various narcotics offenses. During rebuttal closing argument, the prosecutor stated:

> [The defense attorney] says your decision to uphold the law is very important to his client. Your decision to uphold the law is very important



Appellate Case: 08-1925 Page: 80 Date Filed: 04/10/2009 Entry ID: 3536000

> to society. You're the people that stand as a bulwark against the continuation of what Mr. Johnson is doing on the street, putting this poison on the street.

968 F.2d at 769. Defense counsel objected, but the trial court overruled the objection. The trial court also denied the defense motions for a mistrial, judgment of acquittal and a new trial. This Court reversed the conviction, stating:

> [T]he pressing nature of the [drug] problem does not give prosecutors license to encumber certain defendants with responsibility for the larger societal problem in addition to their own misdeeds. We conclude that by urging the jury to act as a 'bulwark against . . . putting this poison on the streets,' the prosecutor in this case appealed to the jurors to be the conscience of the community in an improper and inflammatory manner.

968 F.2d at 771.

Notably, the misconduct in question in *Johnson* constituted a single remark made in closing. This Court noted that "a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." 968 F.2d at 771 (quoting *United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991)). In analyzing the likely impact of the prosecutor's remarks on the jury, this Court stated: "Given the fear and concern engendered by the national drug epidemic, we conclude it is likely that the prosecutor's comment urging the jury to strike a blow against the problem and the emotion it stirred 'influenced the jury by diverting its attention away from its task to weigh the evidence and submit a reasoned decision.'" 968 F.2d at 772 (quoting *Solivan*, 937 F.2d at 1153).

In *United States v. Lee*, this Court reversed a conviction based on similar improper remarks by the prosecutor in closing:

> Smuggling in 640 pounds of marijuana is definitely wrong. It is a crime and they should be convicted. All the drug smugglers around should be told by your actions that bringing in marijuana is wrong.



Appellate Case: 08-1925 Page: 81 Date Filed: 04/10/2009 Entry ID: 3536000

> ...
> What you do as jurors is going to be watched here. You can better believe that each and every drug smuggler is watching what happens here today.

743 F.2d 1240, 1252-53 (8th Cir. 1984). In reversing, this Court noted that "this argument was an emotional appeal calculated to persuade the jury to decide the case on other than the facts before it." 743 F.2d at 1253.

In *Weaver v. Bowersox*, during the penalty phase, the prosecutor urged the jury to sentence the petitioner to death in order to send a message to other drug dealers:

> And I'm going to beg you for the entire community and for society not to spare his life. I'm going to beg you for the right message instead of the wrong message. The right message is life? For an execution? That's the right message? That's the message you want to send to the drug dealers, the dope peddlers and the hit men they hire to do their dirty deeds: Life in prison is what you get when we catch you and convict you. Life in prison? That's the message you want to send to the scum of the world? That when we catch you and we're convinced you're guilty, we're going to give you life in prison? That's not the right message.
> . . .
> The message has to be death for these types of people. That's the only message they are going to understand. The one thing you've got to get into your head, this is far more important than William Weaver. This case goes far beyond William Weaver. This touches all the dope peddlers and the murderers in the world. That's the message you have to send. It doesn't just pertain to William Weaver. It pertains to all of us, the community. They are our streets, our neighborhoods, our family. The message is death, not life. And you've just got to geer [sic] yourself to that.

438 F.3d 822, 837 (8th Cir. 2003).

Citing to a litany of Supreme Court cases, this Court noted that there is longstanding and well-settled precedent that "the Eighth Amendment requires capital sentencing to be an individualized decision-making process." *Id.* at 841 (citations omitted). Furthermore, the Court held that "[a] prosecutor's argument violate[s] due process if it 'infect[s] the trial with unfairness.'" *Weaver*, 438 F.3d at 840 (citation



Appellate Case: 08-1925 Page: 82 Date Filed: 04/10/2009 Entry ID: 3536000

omitted). There is little doubt that the Government's remarks were unfair, as set forth above. As this Court explained, the "send a message" arguments by the prosecutor violated the petitioner's Eighth Amendment right:

> The argument that a signal must be sent from one case to affect other cases puts a [sic] improper burden on the defendant because it prevents an individual determination of the appropriateness of capital punishment. Further, invoking a jury's general fear of crime to encourage the application of the death penalty in a particular case is unfairly inflammatory. Using the conscience of the community as a guiding principle for punishment puts too significant a burden on a single defendant.

*Id.* (citations omitted). The *Weaver* Court suggested hat such arguments are *per se* prejudicial because they inherently divert the capital jury's attention away from an individual determination of the appropriateness of a death sentence for a given defendant. Thus, in *Weaver,* this Court, upheld the lower court's grant of habeas relief based on prosecutorial misconduct asserting that the prosecutor's arguments in the penalty phase risked creating a mob mentality by preying on a jury's fear of crime. 438 F.3d 832, at 841. (citations omitted).

Like this Court, other circuits are quick to safeguard against this insidious type of prosecutorial misconduct. *See United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) (despite curative instruction by the trial court, the prosecutor's send a message remark "was so destructive to [the] defendant's right to a fair trial that it constitutes reversible error."); *see also United States v. Arrieta-Agressot*, 3 F.3d 525 (1st Cir. 1993).

Here, the second category of the Government's argument was improper because it characterized mitigation evidence as irrelevant to the jury's sentencing deliberation and encouraged the jury to simply *ignore* the proffered mitigation, or mitigating

evidence. *See Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1672 n. 21 (2007) (jury may be precluded from giving meaningful consideration to relevant mitigation"not only as a result of the instructions it is given, but also as a result of prosecutorial argument dictating that such consideration is forbidden"). In this case, as in *Abdul-Kabir*, the thrust of the comments was to denigrate not only the proffered mitigating evidence, but the very concept of mitigation itself. Such disparagement of mitigation is improper, as the Supreme Court has repeatedly held that the sentencer must give due consideration to all relevant mitigating evidence in order to insure that a reliable verdict is imposed. *See e.g.*, *Boyde v. California*, 494 U.S. 370, 377-78 (1990) (once the threshold for relevance has been met, the "Eighth Amendment requires that the jury be able *to consider and give effect to*" a capital defendant's mitigating evidence) (emphasis added); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982) (sentencers "may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration").

It is clear that the prosecutor's argument was not that the proffered mitigation should be given little weight, but rather that it would be "wrong" for the jury to rely on such evidence in determining the appropriate penalty. *See* Tr. 2908. As set forth above, the Government made that very argument to the jury with respect to the defense execution impact evidence. Here, the Government did not contest the existence of the factor itself –it conceded that Sinisterra's execution would negatively impact his children–but rather, it stated that it would be *wrong* for the jury to consider and give effect to that factor.

What is particularly insidious about this argument is that it had the effect of

distorting the jury's sentencing deliberations. The jury unanimously found that Sinisterra's execution would negatively impact his family. *See* App. 34, ¶13, App. 47, ¶13 (verdict forms). The Government's argument gave permission to the jury to find the existence of that factor but not give *consideration and effect* to that factor as is required by the Eighth Amendment. *See Abdul-Kabir*, 127 S. Ct. at 1672 n. 21.

In *Penry v. Lynaugh*, the Supreme Court held that the Eighth Amendment is violated where, although the defense is allowed to present mitigating evidence the sentencing jury is not given the means to consider it in its sentencing decision. 492 U.S. at 320. While the *Penry* Court found instructional error, the Government's closing argument here invited the jury not to consider Sinisterra's mitigating evidence.

The jury, therefore, was being directed by the prosecution to forego its responsibility to make an individualized sentencing determination with respect to Sinisterra, and instead cast its verdict for the purpose of combating the larger societal problem of drug traffickers and to keep Kansas City safe from future unidentified drug traffickers lying in wait.

**C. Trial Counsel Was Ineffective For Failure to Object to Prosecutorial Comments at Trial; and Appellate Counsel Was Ineffective for Failure to Raise the Claim on Appeal.**

"The right to effective assistance of counsel extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citations omitted). "An ineffective assistance of counsel claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins*, 539 U.S. at 521, citing *Strickland*, 466 U.S. at 687. *Cf. Burns v. Gammon*, 260 F.3d 892, 896 (8th Cir. 2001) (trial counsel's failure to object to prosecutor's

argument that the jury should consider that the defendant, by asserting his right to trial, forced the victim to testify, constituted ineffective assistance of counsel). *See also Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005) ("trial counsel's failure to object to any aspect of the prosecutor's egregiously improper closing argument was objectively unreasonable"); *Washington v. Hofbauer*, 228 F.3d 689, 709 (6th Cir. 2000) (trial counsel's failure to object to prosecutor's improper examination and closing arguments amounted to ineffective assistance of counsel; "One of defense counsel's most important roles is to ensure that the prosecutor does not transgress th[e] bounds [of proper conduct]."); *Martin v. Grosshans*, 424 F.3d 588, 591 (7th Cir. 2005)(defense counsel performed deficiently "for failing to move for a mistrial after the prosecutions's [improper and prejudicial] closing argument"); *Cargle v. Mullins*, 317 F.3d 1196, 1217 (10th Cir. 2003) (trial counsel ineffective for, *inter alia*, failing to object to instances of prosecutorial misconduct in closing argument).

*Strickland*'s reference to counsel's "thorough investigation of law," 466 U.S. at 690, indicates that reasonably competent defense counsel must be aware of applicable legal principles.[10] In this case, reasonably competent counsel should have been aware that the above-cited remarks by the Government were improper, objectionable and constituted reversible error.

Herndon, who was lead counsel during Sinisterra's penalty phase, and as such was responsible for making any such objections and motions, did not do so. Her

[10]Since *Strickland*, courts have held in a number of cases that failure to be aware of an applicable legal principle constitutes ineffective assistance. *See, e.g., Williams*, 529 U.S. at 395; *Kimmelman v. Morris*, 477 U.S. 365, 385 (1986); *Reagan v. Norris*, 365 F.3d 616, 621-22 (8th Cir. 2004); *Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989); *Goodwin v. Balkcom*, 684 F.2d 794, 819-20 (11th Cir. 1982).



Appellate Case: 08-1925 Page: 86 Date Filed: 04/10/2009 Entry ID: 3536000

failure to do so was not for any tactical reasons, but because of her ignorance of the law:

> At the time of Mr. Sinisterra's trial, I was not aware of the case law prohibiting "send a message" arguments such as those made by the government. In the appellate work that I have done since Mr. Sinisterra's trial I have discovered several cases, including cases in the Eighth Circuit, that hold such arguments to be reversible error.
>
> At the time of the prosecutor's comments in Mr. Sinisterra's trial, *I did not have any strategic reason for not objecting to the comments; I simply did not know that such argument constituted reversible error*. With the benefit of my substantial experience since Mr. Sinisterra's trial, I recognize that I should have objected to the government's argument. There is no strategic reason for failing to object to an argument that under the law the government is precluded from making.

App. 306 (emphasis added).

The prejudice from trial counsel's failure to object is clear. The jury unanimously found six mitigating factors, App. 32, 34, 45, 47 (verdict forms), and least two or more jurors found seven other mitigating factors. App. 32-33, 45-46 (verdict forms). This was far from a clear case for death – the jury, in various combinations, found a variety of mitigating factors to balance against the aggravating factors found. App. 32-34, 45-47 (verdict forms). Given the variety of mitigating factors found, and the number of which were found unanimously, the jury could have chosen to impose a life sentence had the prosecutor not fed their fears regarding drug violence in their community and improperly directed them to use their verdict as a means to address this enormous societal problem. *See Antwine v. Delo*, 54 F.3d 1357, 1364 (8th Cir. 1995) (prosecutor's misleading penalty phase argument that the defendant would die quickly and that a sentence of death would be more economical, violated the defendant's Fourteenth Amendment right). Thus, but for trial counsel's



Appellate Case: 08-1925 Page: 87 Date Filed: 04/10/2009 Entry ID: 3536000

deficient performance, there is a reasonable probability that the outcome of the penalty phase proceeding would have been favorable to Sinisterra. "A reasonable probability is one sufficient to undermine confidence in the outcome." *Winfield v. Roper*, 430 F.3d 1026, 1033 (8th Cir. 2006), *quoting Strickland*, 466 U.S. at 687.

The right to effective assistance of counsel applies to a criminal defendant on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Attorneys Duchardt and Herndon also represented Sinisterra during his direct appeal to this Court. *United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002). Counsel failed to raise any claim of prosecutorial misconduct. *Id.*[11] Duchardt stated unequivocally in his affidavit filed in the § 2255 proceeding that his failure to raise this claim on appeal was not for any strategic or tactical reason, but rather, he simply was unaware, and it seems, still is unaware of the extensive case law that establishes such remarks constitute reversible error. App. 223. As noted above, Hendron was also ignorant of the case law in this area. App. 306. This is not a situation where counsel "winnowed out" a weaker claim in order to focus more effectively on claims more likely to prevail. Rather, counsel was simply unaware of this Court's extensive case law in this area.

Failure to raise a claim under such circumstances is clearly deficient

[11]On direct appeal, Appellant asked that this Court review one instance of prosecutorial misconduct under its plain error review after defense counsel failed to object to the error at trial. *See* Appellant's Opening Brief at 124; *Ortiz*, 315 F.3d at 903. This Court found that the improper remarks by the Government were "not prejudicial enough." *Id.* (citation omitted). This Court "reached this conclusion after considering that there was only a single reference to [Hitler, Manson and Dahmer]." *Id.* This basis for denial was erroneous. Not only did the Government refer to Hitler one other time during closing argument, Tr. 2882, as set forth in this claim, the improper remarks were numerous.



Appellate Case: 08-1925 Page: 88 Date Filed: 04/10/2009 Entry ID: 3536000

performance, as counsel must research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. *See Roe v. Delo*, 160 F.3d 416, 419-20 (8th Cir. 1998) (appellate counsel ineffective for failing to argue that the trial court erroneously blurred the distinction between first and second degree murder); *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004) (counsel rendered ineffective assistance in failing to brief and argue defendant's accountability as it related to his sentence); *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (ineffective assistance when appellate counsel failed to raise issue of prosecutor's improper use of defendant's post-arrest silence in state's case-in-chief); *Ballard v. United States*, 400 F.3d 404, 408-09 (6th Cir. 2005) (appellate counsel rendered ineffective assistance in failing to raise Apprendi error); *Mapes v. Tate*, 388 F.3d 187, 193 (6th Cir. 2004) (appellate counsel rendered ineffective assistance in failing to argue that the trial court erred in refusing to let the jury consider mitigating factors related to an out-of-state conviction).

*Strickland* prejudice is demonstrated by showing that but for counsel's failure to raise the claim, there is a reasonable probability that the petitioner "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also Link v. Luebbers*, 469 F.3d 1197, 1205-06 (8th Cir. 2006). At the time that Sinisterra's case was on appeal, this Court had already reversed in a number of cases on nearly identical claims. *See Copeland v. Washington*, 232 F.3d 969, 975 (8th Cir. 2000); *United States v. Johnson*, 968 F.2d 768, 771 (8th Cir. 1992); *Newlon v. Armantrout*, 885 F.2d 1328, 1340-42 (8th Cir. 1989); *United States v. Lee*, 743 F.2d 1240, 1252-1253 (8th Cir. 1984).

Moreover, considering the result in *Weaver*, discussed *supra*, it is clear that had appellate counsel raised the prosecutorial misconduct issue on appeal, there is a reasonable probability that this Court would have similarly vacated Sinisterra's death sentence and remanded for a new penalty phase hearing.

The deficient performance of both trial and appellate counsel was demonstrably prejudicial to Sinisterra. Given the strength and the clarity of the law on this issue, there is a reasonable probability that had trial counsel made a timely objection and moved for a mistrial, such motion would have been granted. Had appellate counsel raised a claim alleging the *numerous* instances of prosecutorial misconduct, it is reasonably probable that Sinisterra would have received a new sentencing.[12]

**D. The District Court Erred in Denying this Claim.**

The district court concluded that the prosecutor's remarks did not amount to an impermissible emotional appeal, Add. 22, despite contrary authority from this Court

[12] It is of note that in many of the cases in which a court has found prejudice serious enough to warrant reversal of a conviction, the prosecutor has repeatedly made improper comments. *See, e.g., Berger v. United States*, 295 U.S. 78, 84 (1935) (throughout trial prosecutor bullied witnesses, misstated facts on cross-examination, put words in witnesses' mouths, made undignified and intemperate argument to the jury containing improper insinuations and assertions calculated to mislead jury, and generally conducted himself in a "thoroughly indecorous and improper manner"); *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir.1984) (prosecutor's repeated remarks in closing argument regarding defendant's nervousness in courtroom was improper character evidence and an indirect comment on his failure to testify; this, plus trial court's overruling of defense objections and failure to give curative instruction to jury created cumulative prejudicial effect); *United States v. Stahl*, 616 F.2d 30, 31-32 (2d Cir.1980) (prosecutor continually referred to defendant's great wealth in an obvious attempt to create class prejudice in jurors); *Leonard v. United States*, 277 F.2d 834, 841 (9th Cir.1960) (prosecutor's opening statement was a forty-minute "diatribe" recounting defendant's eighty-three other alleged "crimes," most of which were clearly inadmissible).

which has found virtually identical remarks to constitute reversible error. *See e.g.*, *Weaver*, 438 F3d at 837; *Copeland*, 232 F.3d at 975; *Johnson*, 968 F.2d at 772.

The district court did not address the rationale of any of the aforementioned cases, but rather stated that: "The cases cited by Sinisterra in support of his emotional appeal argument were guilt-phase closing arguments which the Eighth Circuit found to be reversible error, and therefore, are not apposite here." Add. 22. The district court merely lifted a statement verbatim from the Government's reply, App. 279 ("The cases cited by Sinisterra were guilt-phase closing arguments which the Eighth Circuit found to be reversible error and, therefore, are not apposite here,"), rather than independently analyzing the substance of the pleadings and record before it.

As Sinisterra argued to the district court, the Supreme Court has repeatedly recognized that prosecutorial misconduct claims are equally applicable to closing arguments in the penalty phase. *See Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985) (death sentence vacated because prosecutor's improper closing argument during penalty phase made it appear to jury that responsibility for the death penalty would be borne by appellate court rather than by jury itself); *Romano v. Oklahoma*, 512 U.S. 1, 3 (1994) (considering petitioner's assertion that closing argument in penalty phase violated petitioner's due process rights, although concluding on the facts that no rights were violated). In fact, as this Court recognized in *Copeland*, "if there is any distinction between guilt and penalty phase arguments, it would seem that there should be a more searching review of the penalty phase as the Eighth Amendment is implicated." 232 F.3d at 974 n. 2 (citation omitted). *See also Newlon*, 885 F.2d at 1340-42 (affirming grant of habeas petition on the ground that



Appellate Case: 08-1925 Page: 91 Date Filed: 04/10/2009 Entry ID: 3536000

prosecutor's arguments in penalty phase that the petitioner deserved to be sentenced to death not only for what he had done, but in order to send a message to others that if they committed the same crime in that county, they would be executed, too - violated due process).

As this precedent makes plain, the district court's dismissal of the prosecutorial misconduct claims based on the fact that the improper remarks were made in the penalty phase of Sinisterra's trial, rather than the guilt phase, was error. However, even on its own terms, the district court's opinion is not persuasive, as it fails to articulate any reasoned legal basis for why cases dealing with guilt-phase improprieties are "not apposite."

**E. Relief Requested.**

The prosecutorial misconduct in this case and trial and appellate counsel's failures to object at his capital sentencing and raise the claim on appeal, respectively, violated German Sinisterra's rights under the Sixth and Eighth Amendment. There is no doubt that these protections apply at the penalty phase in requiring, as set forth above, the capital sentencing to be an individualized decision-making process. Not once but at least four times, the Government urged the jury to ignore Sinisterra's individual character and record. Given the egregious constitutional violations this Court should reverse the judgment of the district court and order a new capital sentencing hearing. In the alternative this Court must reverse and remand for an evidentiary hearing on this claim.



Appellate Case: 08-1925 Page: 92 Date Filed: 04/10/2009 Entry ID: 3536000

## CONCLUSION

For the reasons stated in Argument I, German Sinisterra respectfully requests that the Court reverse the judgment of the district court and remand this matter to the district court for an evidentiary hearing. For the reasons stated in Argument II, Mr. Sinisterra requests that the Court reverse the denial of post-conviction relief under 28 U.S.C. § 2255 and order a new capital sentencing hearing. Mr. Sinisterra requests any further relief the Court deems appropriate.

Respectfully submitted this 9th day of April, 2009.

Jon M. Sands
Federal Public Defender
Timothy M. Gabrielsen
Leticia Marquez
Assistant Federal Public Defenders
John Jenab, Esq.

By ________________________________
Timothy M. Gabrielsen

ATTORNEYS FOR APPELLANT
GERMAN C. SINISTERRA



Appellate Case: 08-1925 Page: 93 Date Filed: 04/10/2009 Entry ID: 3536000

## CERTIFICATE OF COMPLIANCE

I, Timothy M. Gabrielsen, do hereby certify that this brief was prepared in Corel WordPerfect format. The number of words contained in this brief is ______ and was calculated by the word processing software. I have enclosed a disk upon which this file has been recorded. I have scanned that disk for viruses and found none.

______________________________
Timothy M. Gabrielsen

## CERTIFICATE OF SERVICE

I certify that two copies of the foregoing Appellant's Opening Brief and Addendum, and one copy of Appellant's Appendix were sent via Federal Express to Mr. Mark Miller, Assistant United States Attorney, 400 E. 9th Street, Kansas City, Missouri, 64106, on this 9th day of April, 2009.

______________________________
Tamelyn McNeill
Secretary, Capital Habeas Unit
Federal Public Defender's Office



Appellate Case: 08-1925 Page: 94 Date Filed: 04/10/2009 Entry ID: 3536000