No. 08-1925

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

GERMAN C. SINISTERRA,

Petitioner - Appellant,

v.

UNITED STATES,

Respondents - Appellees.

On Appeal from the United States District Court
Western District of Missouri, No. 04-8003-CV-W-GAF

REPLY BRIEF OF PETITIONER - APPELLANT

JON M. SANDS
Federal Public Defender
TIMOTHY M. GABRIELSEN (NV Bar No. 8076)
LETICIA MARQUEZ (AZ Bar No. 017357)
Assistant Federal Public Defenders
Office of the Federal Public Defender
  District of Arizona
407 West Congress Street, Suite 501
Tucson, Arizona 85701-1310
(520) 879-7614 / (520) 622-6844 (fax)

JOHN JENAB (MO Bar No. 47452)
Jenab & McCauley LLP
110 S. Cherry Street, Suite 200
Olathe, KS 66061
(913) 390-5023 / (913) 764-5539 (fax)

COUNSEL FOR PETITIONER-APPELLANT
GERMAN C. SINISTERRA

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Reply

I.   The district court erred in denying, without an evidentiary hearing, German Sinisterra's claim that he was denied his right to effective assistance of counsel under the Sixth Amendment where counsel failed to perform a reasonable investigation of available mitigating evidence, including evidence of his dysfunctional family and abuse, organic brain damage, and impaired mental functioning, failed to retain a mitigation specialist to develop that information, and failed to present that compelling mitigating evidence to the jury at the capital sentencing hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Ineffective assistance for failure to investigate and present mitigating evidence of a horrific childhood . . . . . . . . . . . . . . . . . 1

        1.   Evidence of sexual and physical abuse . . . . . . . . . . . . . . . . 2

        2.   Evidence of low intellectual functioning . . . . . . . . . . . . . . 7

        3.   An evidentiary hearing is required under § 2255(b) . . . . . . . 9

            a.   Issues of material fact with respect to the failure to investigate and present evidence of Sinisterra's horrific childhood . . . . . . . . . . . . . . . . 9

            b.   The cases upon which the Government relies are inapt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.   Ineffective assistance of counsel for failing to obtain a mental health expert appropriate to the development of mitigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    C.   Ineffective assistance of counsel for failing to retain a mitigation specialist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appellate Case: 08-1925    Page: 2    Date Filed: 11/18/2009 Entry ID: 3607842

II.   German Sinisterra was denied his right to effective assistance of counsel under the Sixth Amendment where trial counsel failed to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and the same appellate counsel failed to raise the claim of prosecutorial misconduct on direct appeal  . . . . . . . . . . . .  23

    A.   The Government's "send a message" and "conscience of the community" arguments are unconstitutional  . . . . . . . . . . . . . . .  25

        1.   Violation of requirement of individualized sentencing  . . .  25

        2.   The Government errs in arguing that reasonably competent counsel would not have known to object at the time of Sinisterra's trial  . . . . . . . . . . . . . . . . . . . . .  28

    B.   The Government's sentencing hearing argument that it would be "wrong" for the jury to base a life verdict on familial love constituted reversible error  . . . . . . . . . . . . . . . . . . .  29

    C.   Sinisterra's ineffective assistance of counsel claim gains support from the claim raised on direct appeal that was based on the failure to object to the Government's Hitler, Manson, Dahmer argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

    D.   Sinisterra has proved *Strickland* prejudice  . . . . . . . . . . . . . . . .  32

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Appellate Case: 08-1925     Page: 3     Date Filed: 11/18/2009 Entry ID: 3607842

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007) ........................ 29

*Abdul-Kabir v. Quarterman*, ___ U.S. ___, 127 S. Ct. 1654 (2007) ......... 24

*Antwine v. Delo*, 54 F.3d 1357 (8th Cir. 1995) ....................... 27, 28

*Caldwell v. Mississippi*, 472 U.S. 320 (1985) ....................... 27, 29

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ......................... 24

*Grady v. United States*, 269 F.3d 913 (8th Cir. 2001) .................... 1

*Jells v. Mitchell*, 538 F.3d 478 (6th Cir. 2008) ...................... 21

*Kenley v. Armontrout*, 937 F.2d 1298 (8th Cir. 1991) ................. 19

*Kingsberry v. United States*, 202 F.3d 1030 (8th Cir. 2000) ......... 13, 14, 15

*Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1978) .......... 2, 9, 13, 16

*Lockett v. Ohio*, 438 U.S. 586 (1978) ............................ 24

*Marchibroda v. United States*, 368 U.S. 487 (1962) .................... 16

*Newlon v. Armontrout*, 693 F. Supp. 799 (W.D.Mo. 1988) ............... 31

*Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir. 1989) ........... 28, 31, 32

*Penry v. Lynaugh*, 492 U.S. 302 (1992) ......................... 4, 24, 29

*Rompilla v. Beard*, 545 U.S. 374 (2005) ........................ 19

*Strickland v. Washington*, 466 U.S. 668 (1984) ..... 2, 3, 4, 7, 9, 23, 31, 32, 34

*Tennard v. Dretke*, 542 U.S. 274 (2004) ......................... 8, 20

*United Sates v. Hawkins*, 548 F.3d 1143 (8th Cir. 2008) ............... 32

*United States v. Arvizu*, 270 F.3d 605 (8th Cir. 2001) ............... 13, 15

Appellate Case: 08-1925    Page: 4    Date Filed: 11/18/2009 Entry ID: 3607842

*United States v. Holmes*, 413 F.3d 770 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002) . . . . . . . . . . . . . . . . . 30, 31

*United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009) . . . . . . . . 24, 29, 30, 33

*Weaver v. Bowersox*, 438 F.3d 832 (8th Cir. 2006) . . . . . . . . . . . . 24, 26, 27, 28

*White v. Roper*, 416 F.3d 728 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wiggins v. Smith*, 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10, 12

*Williams (Terry) v. Taylor*, 529 U.S. 510 (2000) . . . . . . . . . . . . . . . . . . . . . . 19

*Woodson v. North Carolina*, 428 U.S. 233 (1978) . . . . . . . . . . . . . . . . . . . . . 28

## FEDERAL STATUTES

18 U.S.C. § 3592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 12

Appellate Case: 08-1925    Page: 5    Date Filed: 11/18/2009 Entry ID: 3607842

# ARGUMENT

## I.

**The district court erred in denying, without an evidentiary hearing, German Sinisterra's claim that he was denied his right to effective assistance of counsel under the Sixth Amendment where counsel failed to perform a reasonable investigation of available mitigating evidence, including evidence of his dysfunctional family and abuse, organic brain damage, and impaired mental functioning, failed to retain a mitigation specialist to develop that information, and failed to present that compelling mitigating evidence to the jury at the capital sentencing hearing.**

**A.** **Ineffective assistance for failure to investigate and present mitigating evidence of a horrific childhood.**

Relief must be granted because: 1) the Government concedes that lead trial counsel knew that Sinisterra was homosexually gang raped by a group of young men as a six-year-old boy in Colombia, physically and sexually abused by family members, and neglected as a child, but failed to present that evidence at capital sentencing; and, 2) lead trial counsel mistakenly believed he *had* presented evidence of Sinisterra's low intellectual functioning to the jury when he actually only presented it at a pretrial suppression hearing.

This Court ruled in *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001), that relief may not be granted to a § 2255 movant where the Government contests the facts upon which the movant's claims rest. Here, the Government does not dispute the existence of certain powerful facts underlying the ineffective assistance claim. For reasons sets forth in the Opening Brief and in this Reply Brief, trial counsel could have no strategic reason for failing to present that mitigating evidence to Sinisterra's

1

Appellate Case: 08-1925   Page: 6   Date Filed: 11/18/2009 Entry ID: 3607842

capital sentencing jury. The decision not to present the mitigating evidence was "professionally unreasonable," and constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 691 (1984). The Court should reverse the judgment of the district court and order that Sinisterra be re-sentenced.

In the alternative, Sinisterra persists in his argument that he is entitled to an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) and *Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1978), in order to demonstrate fully his counsel's deficient performance and prejudice under *Strickland*. An evidentiary hearing is further compelled because the district court denied the repeated requests of Sinisterra's appointed § 2255 counsel, John Jenab, for the appointment of a Spanish-speaking mitigation specialist (Hector Guevarra) and the Federal Public Defender (with its Spanish-speaking lawyers and investigator) to develop the mitigating evidence required to prove the inadequacy of trial counsel's mitigation investigation and prejudice to Sinisterra under *Strickland* that resulted therefrom, particularly with respect to uninvestigated evidence in Colombia. Appx. 98, 104, 106, 119, 286, 303.

### 1. Evidence of sexual and physical abuse.

To deflect the charge that the brutal gang rape of Sinisterra and the sexual and physical assault, and neglect by family members had not been investigated and presented at the capital sentencing hearing, the Government repeats the identical argument *verbatim* three times in its Brief that Sinisterra's lead trial counsel, Fred Duchardt, "already knew about Sinisterra's childhood background" at the time of trial but chose not to present it. Appellee's Brief (hereinafter "App. Br.") at 39-40, 46-47,

2

Appellate Case: 08-1925     Page: 7     Date Filed: 11/18/2009 Entry ID: 3607842

58-59. The Government defends Duchardt's omission by stating repeatedly:

> In Duchardt's affidavit he states that he knew all of the information about Sinisterra's background contained in the amended [§ 2255] petition. (Appx. 218.) If Duchardt did know this information, he, as lead counsel, made a strategic decision not to present it at trial. Strategic decisions not to present certain evidence are generally entitled to deference.

App. Br. at 40, 47, 61.

In its discussion of prejudice under *Strickland*, the Government argues that "such evidence could have actually harmed [Sinisterra's] case" because it had a "double edge" that may have also indicated to the jury future dangerousness. App. Br. at 62. The Government wanly states only that "it *could have been counsel's strategic decision to not delve into that background information* because it could have harmed the defense argument that Sinisterra could serve a life sentence without incident." App. Br. at 62-63. The Government's *guess* as to Duchardt's strategic purpose runs afoul of the Supreme Court's command in *Wiggins* that respondents and the lower courts not engage in "*post hoc* rationalizations of counsel's conduct." *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003). Instead, the courts must accurately ascertain counsel's "deliberations prior to sentencing" that led to the failure to present evidence. *Id.* As was true in *Wiggins* and as is advocated in the Opening Brief, that is done at an evidentiary hearing. Op. Br. at 42-50.

The Government's rationalization for Duchardt's omission is misplaced because the evidence does not possess the "double edge" the Supreme Court has considered with respect to the introduction of certain mental health evidence. App.

3

Appellate Case: 08-1925    Page: 8    Date Filed: 11/18/2009    Entry ID: 3607842

Br. at 62. *See Wiggins*, 539 U.S. at 535 (citations omitted). The evidence Duchardt and Brewer failed to present here was pure mitigation because it concerned the victimization of Sinisterra, not his victimization of others. The Government has produced no evidence from a mental health expert to show Sinisterra had a greater propensity for violence because of the victimization of him as a child.

> In *Wiggins*, the Court stated:

> Wiggins experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care. The time Wiggins spent homeless, along with his diminished mental capacities, further augment his mitigation case.

*Id.* The Court did not absolve Wiggins' counsel of the duty to present such evidence based on speculation that it *might be* aggravating.

Sinisterra suffered virtually the same sexual and physical abuse as Wiggins. As the *Wiggins* Court noted, such a troubled history is relevant to assessing moral culpability because of the long-held belief that defendants who commit criminal acts that are attributable to a disadvantaged background may be less culpable than those with no such excuse. *Id.* (citing *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989)). "Given both the nature and extent of the abuse petitioner suffered . . . [there is] a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing." *Id.*

In finding *Strickland* prejudice, the *Wiggins* Court found the above evidence to be "powerful." *Id.* at 534. *See Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002)

4

Appellate Case: 08-1925    Page: 9    Date Filed: 11/18/2009 Entry ID: 3607842

(trial counsel rendered ineffective assistance where he failed to investigate and present evidence of homosexual rape and expert testimony concerning the psychological trauma attendant to it).

The Government also argues that Sinisterra cannot prove prejudice because "the statutory aggravating factors were so overwhelming." App. Br. at 63. The Government urges that the mitigation presented at sentencing was not sufficient for the jury to find that it outweighed the aggravating factors and no additional mitigating evidence was likely to have done so. *Id.* The Government relies heavily on the argument that the jury failed to find the statutory mitigating factor of Sinisterra's "background, record or character." *Id. See* App. 31. The Government also classifies as aggravation that Sinisterra entered this country illegally and impregnated two women, one of whom the Government acknowledges he married. App. Br. at 64.

It defies credulity for the Government to suggest that illegal entry into the country for economic purposes,[1] and Sinisterra's having fathered three children - two of whom were with the woman to whom he remains married - constitutes aggravation sufficient to defeat his ineffective assistance claim. The uncontroverted evidence at sentencing demonstrated that Sinisterra loved and supported the two children he had with his wife and the child from the prior relationship. Tr. 2625-30.

That the jury failed to find that Sinisterra's background was mitigating is

---

[1] Rosa, Sinisterra's younger sister, said on a portion of the videotape admitted at sentencing that he sent home $150 per month. Ex. 67 (March 19, 2000) at 8:05, 9:04 a.m.

5

Appellate Case: 08-1925    Page: 10    Date Filed: 11/18/2009 Entry ID: 3607842

understandable because at the penalty phase, trial counsel introduced evidence demonstrating almost solely that Sinisterra was a good husband and friend. The jury never heard the most powerful, compelling mitigation in this case, that Sinisterra was homosexually gang-raped by a group of young men at age six, ran away from home as a result, lived on the streets and fended off sexual predators for six years, only to return home to be sexually assaulted by a male family member, and he was physically abused by his mother. The jury also never heard the evidence from Dr. Wheelock of Sinisterra's poor intellectual functioning and an explanation from a mental health expert like Dr. Llorente as to why that low intellectual functioning was mitigating.

In addition with respect to the Government's suggestion that the offense was so aggravated that no quantum of mitigation could outweigh the aggravation, Sinisterra alleged in his § 2255 motion that the jury failed to impose death on charged co-defendant Edwin Hinetroza, the drug kingpin who, according to the Government's theory and witnesses, ordered Colon and Borja-Molina killed in this case. Appx. 164. As Sinisterra's counsel pleaded in the § 2255 motion, Hinestroza presented mitigating evidence "strikingly similar to what could have been offered on behalf of Sinisterra."[2] Appx. 163-64.

As Sinisterra noted in the Opening Brief (at 49-50), the jury handwrote on its life verdict the non-statutory mitigating factor that Hinestroza "lacked adult guidance

---

[2] Because the sentencing hearing transcript in *Hinestroza* was not filed with the district court, Sinisterra moves on this date to supplement the record on appeal with a certified copy of the transcript.

6

Appellate Case: 08-1925     Page: 11     Date Filed: 11/18/2009 Entry ID: 3607842

in his adolescent years causing him to become a target for the drug culture." Appx. 85. Not only did Sinisterra "lack guidance" in his adolescent years, he was homosexually gang raped, homosexually sexually assaulted by a family member, and physically abused by his mother. As a result, he ran away from home and ran the streets of Cali with other abandoned children until he was 12 years old. Sinisterra's mitigation was even more compelling than that of Hinestroza.

In the § 2255 motion, Sinisterra argued that "[i]t was ineffective for trial counsel . . . not to present the easily available evidence of his tragic upbringing and to request non-statutory mitigators relating thereto, such as lack of guidance, lack of any positive role model, homelessness, and exposure to horrific violence, abuse and violation. Had counsel preformed competently, there is a reasonable probability that the jury would have spared Sinisterra's life." Appx. 164. The Government fails to controvert the detailed factual allegations contained in the § 2255 motion that Duchardt and Brewer failed to present the powerful mitigating evidence. There is a reasonable probability that had the jury heard the omitted mitigating evidence, it would have returned a verdict of life instead of death. *Strickland*, 466 U.S. at 687.

### 2. Evidence of low intellectual functioning.

Relief must also be granted because Duchardt failed to present to the capital sentencing jury evidence of Sinisterra's low intellectual functioning. Op. Br. at 34-35. Evidence of Sinisterra's low IQ (75) and poor intellectual functioning was presented to the district court at a pretrial hearing on whether Sinisterra understood *Miranda* warnings given him after his arrest. Tr. 11/3/99 at 707. The Government

7

objected when the defense tried to admit the evidence at trial, and the district court sustained the objection but ruled the defense could present the evidence at a capital sentencing hearing if Sinisterra were to be convicted. Tr. 2257. The evidence was not presented.

In his affidavit attached to the Government's opposition to the § 2255 motion, Duchardt averred, erroneously, that Dr. Wheelock had, in fact, testified accurately *at trial* as to Sinisterra's poor intellectual functioning. *See* Op. Br. at 60-62. In its opposition to the § 2255 motion, the Government misstated that the Wheelock evidence *was* presented to the jury. Appx. 278. The district court denied this aspect of the claim, ruling that "[t]he jury had an opportunity to hear this testimony and consider it during the trial and penalty phase." Addendum 20. The district court's finding of fact was clearly erroneous and must be rejected by this Court.

The IQ score of 75 placed Sinisterra squarely in the range of mental retardation. Even if Sinisterra were found not to be mentally retarded, Sinisterra's "impaired intellectual functioning [was] inherently mitigating" under *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). Reasonably competent counsel would have presented it to the jury. *See Dickerson v. Bagley*, 453 F.3d 690, 698 (6th Cir. 2006) (IQ of 77 "surely would have made a significant difference for Dickerson if counsel had done the investigative work necessary to discover and then prove that he functioned at an intellectual level little above the retarded level.")

Reasonably competent counsel also would have presented the evidence of low intellectual functioning to a mental health expert such as the one retained by

8

Sinisterra here, Dr. Antolin Llorente, Ph.D., who would have testified to the mitigation implications of such evidence. Dr. Llorente found that dampened intellectual functioning, poor executive reasoning, and organic brain damage, caused Sinisterra to suffer from poor judgment and impulsivity. Dr. Llorente concluded that Sinisterra lacked the "mental capacity" to have planned the offense. Appx. 207. Had trial counsel presented that evidence, the jury likely would not have found that Sinisterra engaged in "substantial planning and premeditation" to cause Colon's death and, therefore, would not have returned that statutory aggravating factor in its special verdict. Appx. 28-29, 41-42. *See* 18 U.S.C. § 3592(c)(9).

Sinisterra has demonstrated both deficient performance and a reasonable probability of a different outcome at sentencing had the jury actually heard and considered the omitted evidence. Sinisterra has proved a violation of *Strickland*.

### 3. An evidentiary hearing is required under § 2255(b).

In the alternative, should the Court find that Sinisterra's proof is deficient on either prong of *Strickland*, 28 U.S.C. § 2255(b) requires an evidentiary hearing because the "motion and files and the records of the case" fail to demonstrate conclusively that he "is entitled to no relief." The "general rule is that a hearing is necessary prior to disposition of *all* § 2255 motions presenting factual issues." *Lindhorst*, 585 F.2d at 364) (emphasis supplied).

### a. Issues of material fact with respect to the failure to investigate and present evidence of Sinisterra's horrific childhood.

Sinisterra is entitled to an evidentiary hearing to expand his proof as to

9

Appellate Case: 08-1925     Page: 14     Date Filed: 11/18/2009 Entry ID: 3607842

Duchardt and Brewer's deficient performance. As was true with respect to defense counsel's so-called strategic decisions in *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005), "the presumption of sound strategy founders in this case on the rocks of ignorance, as in *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003)."

Duchardt's affidavit fails to describe what he actually knew of Sinisterra's childhood, whether he interviewed Sinisterra or other witnesses about the homosexual gang rape and familial sexual and physical abuse, whether he attempted to corroborate that evidence, whether he produced that significant evidence to a mental health expert for inclusion in any mitigation evaluation, or where he would have obtained any such information - especially since he ceded full control over the development of the Colombia mitigation to co-counsel Jennifer Brewer. Appx. 215. Brewer averred that despite her being responsible for developing mitigation, she never learned of the evidence of a horrific childhood until she read Sinisterra's § 2255 motion. Appx. 308.

In addition, Sinisterra is entitled to an evidentiary hearing because the affidavit of Duchardt (Appx. 209) was solicited by the Government in order to controvert factual assertions contained in the affidavit of co-counsel Jennifer Brewer that was attached to the Amended § 2255Motion (Appx. 179), and Duchardt's factual assertions were contradicted in turn by the assertions contained in Brewer's Second Affidavit, which was attached to the Traverse in response to Duchardt's affidavit. App. 305.

Appellate Case: 08-1925   Page: 15   Date Filed: 11/18/2009 Entry ID: 3607842

In *Lindhorst*, the Court held that the competing affidavits submitted by the Government in response to allegations in a § 2255 motion served only to trigger an evidentiary hearing where the affiants would be subject to cross-examination, and such affidavits could not be used to show conclusively that the movant is not entitled to relief. *Id.* In his Opening Brief, Sinisterra alleges, consistent with *Lindhorst*, that Duchardt's affidavit could not be considered as part of the "files or records of the case" for the purpose of permitting the district court to summarily dismiss his § 2255 motion and that its submission by the Government gave rise to issues of material fact that were required to be determined at an evidentiary hearing. Op. Br. at 42-46. The Government concedes that *Lindhorst* requires an evidentiary hearing where there are "genuine disputes about material facts, particularly when credibility determinations are required." App. Br. at 53.

The Government argues, however, that no evidentiary hearing was required here because its submission to the district court of Duchardt's affidavit failed to create a genuine issue of material fact. The assertion is disingenuous because the Government's present appellate counsel also represented the Government in the district court. There, they moved for a hearing where Duchardt could be made to waive the attorney-client privilege in order to execute an affidavit the Government could employ to rebut the factual assertions contained in an affidavit executed by co-counsel Jennifer Brewer to the effect that Duchardt and Brewer rendered ineffective assistance in their representation of Sinisterra at trial and capital sentencing. Dist. Ct. Doc. No. 47 at 2-3. As the Government argued in its motion, "Sinisterra submitted

11

an affidavit from co-trial counsel Jennifer (Brewer) Herndon, in which she impugns the effectiveness of the legal assistance her co-trial counsel, Fred Duchardt, provided to Sinisterra". *Id.*

The district court granted the request for a hearing and, after the hearing, ordered Duchardt to prepare the affidavit requested by the Government. Dist. Ct. Doc. Nos. 48, 49. Duchardt's 24-page affidavit was attached to the Government's Response in Opposition to Movant's 28 U.S.C. § 2255 Motion. Appx. 209 (Dist. Ct. Doc. Nos. 50, 53). The district court made liberal use of the factual assertions contained in Duchardt's affidavit to deny relief on the three ineffective assistance of counsel claims that comprise Argument I. Add. 16-21. Most significantly, the district court relied on Duchardt's affidavit to find Brewer's factual assertions to be "incredible efforts at second guessing co-counsel's, as well as her own performance" and to find that Duchardt's factual assertions constituted "strategic decisions" that were "well-reasoned." Add. 25. Again, the law requires that Sinisterra be given the opportunity to test Duchardt's *post hoc* rationalizations for his omissions. *Wiggins*, 539 U.S. at 527.

Sinisterra's Opening Brief contains numerous descriptions of assertions made by Duchardt that are inconsistent with the factual assertions in Brewer's two affidavits and the record. It bears repeating that Duchardt claims to have known of the mitigating evidence of Sinisterra's childhood background in Colombia that § 2255 counsel purported to uncover in his investigation, although Duchardt fails to state specifically what he knew or how he knew it. Appx. 218. To the extent Duchardt is

12

referring to evidence of homosexual gang rape, familial homosexual sexual assault, physical abuse, and neglect, Duchardt's cryptic assertion is almost certainly false. Duchardt asserts that he ceded control over the mitigation aspect of the case to Brewer, and that she "took the lead on developing mitigation evidence from Colombia." App. 215. Brewer was not aware of the evidence of a horrific childhood in Colombia until she read about it in the § 2255 motion. Appx. 307-08.

The Government contends that Sinisterra has misconstrued *Lindhorst* to mean that the case "prevents a district court from ever considering affidavits supporting the Government in determining whether an evidentiary hearing is required on a § 2255 petition." App. Br. at 51. Sinisterra does not read *Lindhorst* that broadly. Sinisterra reads *Lindhorst* to mean that where, as here, there are contested issues of material fact set forth in competing affidavits, an evidentiary hearing is required.

### b.    The cases upon which the Government relies are inapt.

The Government cites the Court's later decisions in *Kingsberry v. United States*, 202 F.3d 1030, 1034 (8th Cir. 2000), and *United States v. Arvizu*, 270 F.3d 605, 606 (8th Cir. 2001), in support of the proposition that the district court may dispense with an evidentiary hearing and deny relief based solely on affidavits secured by the Government and attached to its opposition to a § 2255 motion. App. Br. at 51. The Government's parentheticals, which are included with the citations to those two case and which indicate that the district court's judgment in each case rested solely on the affidavits of the petitioners' trial counsel, are simply incorrect. It was the absence of contested facts that led the Court to dispense with the

13

evidentiary hearing in each case.

Preliminarily, Sinisterra notes that the panel split in *Kingsberry* on the question whether Kingsberry's claim could be denied in the absence of an evidentiary hearing. Judge Richard Arnold dissented from the panel majority's decision to deny the movant an evidentiary hearing, and he would have granted rehearing and rehearing *en banc*. 202 F.3d at 1033-35, 1030 n. *. Then-Chief Judge Wollman and Judges MacMillian and Hansen also would have granted rehearing *en banc*. 202 F.3d at 1030 n. *.

In *Kingsberry*, the § 2255 movant raised a claim of ineffective assistance of trial counsel for misstating Kingsberry's sentencing exposure if he went to trial and failing to convey a plea offer that would have resulted in a prison sentence of 15 years rather than the life sentence he received as a career criminal after a trial. 202 F.3d at 1032, 1033 n. 7. Kingsberry alleged that counsel misunderstood that he qualified as a career criminal, and he would have accepted the Government's plea offer rather than stand trial if he had been informed that he could receive a life sentence were he to be convicted at trial. *Id*.

Kingsberry attached two affidavits to the motion, that of his wife, in which she averred that trial counsel communicated a plea offer for five years, and Kingsberry's own affidavit, in which he averred that counsel communicated an offer of 15 years in prison. Kingsberry's counsel executed an affidavit in which he denied ever receiving a plea offer, and the Government argued in opposition that it made no plea

14

offer.[3] *Kingsberry*, 202 F.3d at 1031, 1033 n. 7. The district court denied relief.

This Court affirmed the district court's denial of § 2255 relief without an evidentiary hearing. While the panel majority ruled that "[n]o facts casting genuine doubt on the veracity of [defense counsel's] affidavit were presented," it found that "the veracity of Kingsberry's own supporting facts can be challenged as they recite inconsistent facts regarding the substance of the alleged plea agreement offer." *Id.* at 1033.

Judge Arnold wrote that the salient points in the affidavits of Kingsberry and his wife were that a plea offer was extended, even if they disagreed as to its terms. *Id.* at 1034 (Arnold, J., dissenting). That, and the failure of the Assistant U.S. Attorney to have supplied an affidavit despite falsely representing to the district court that he *had* submitted one, were sufficient for Judge Arnold to decide that an evidentiary hearing was required. *Id.* at 1034-35.

In *Arvizu*, a defendant was convicted of a drug offense, but filed the notice of appeal 57 days later, rather than within ten days as required by statute. 270 F.3d at 606. He later filed a § 2255 motion raising a claim of ineffective assistance of counsel in which he did not actually claim that his counsel refused to file the notice

---

[3] Counsel for the Government, who also prosecuted the case, argued on appeal that he submitted an affidavit to the district court in which he denied that a plea offer had been extended to Kingsberry. However, this Court noted that the record contained no such affidavit. The panel majority described the omission as a mere "technical oversight, rather than dissembling on the part of the Government." *Id.* at 1031 n. 3.

Appellate Case: 08-1925    Page: 20    Date Filed: 11/18/2009 Entry ID: 3607842

of appeal. Rather, he asked the district court to infer "from the circumstances" counsel's failure to do so. *Id.* The Government submitted an affidavit from Arvizu's trial counsel in which he averred that Arvizu failed to request that he file the appeal. *Id.*

This Court affirmed the denial of relief. The Court noted that the district court explained to Arvizu his appellate rights and the ten-day limitations period for filing notice of appeal. *Id.* The Court also noted that Arvizu *conceded* in his motion that trial counsel had consulted with him as to an appeal. The Court found that "[t]here is an absence of any evidence in the record to counter [defense counsel's affidavit] testimony that he never received express instructions from Arvizu about his appeal. Arvizu has therefore not made out an ineffective assistance of counsel claim, and he has not shown that the district court was required to hold an evidentiary hearing." *Id.*

Thus, both cases turned on the absence of an issue of material fact for the district court to decide. Here, the Government expressly states in the parentheticals that it was trial counsel's affidavits that permitted the district court to deny relief even without an evidentiary hearing, implying that dispensing with the evidentiary hearing is appropriate here even where the affidavits are competing. App. Br. at 51. *Lindhorst* and the Supreme Court's decision in *Marchibroda v. United States,* 368 U.S 487, 514 (1962), compel a different result. The district court abused its discretion in denying Sinisterra an evidentiary hearing.

16

**B.     Ineffective assistance of counsel for failing to obtain a mental health expert appropriate to the development of mitigation.**

The Government contends that defense counsel were justified in not presenting any mental health mitigation because Duchardt had Sinisterra evaluated by Dr. Enrique Dos Santos, who found "no evidence of mental problems." App. Br. at 66. The Government argues that Duchardt's statement that Dr. Dos Santos "found 'no mental problems' *suggests* that Dr. Dos Santos performed a thorough evaluation, particularly since Duchardt made this statement immediately after noting that he was being accused of not retaining an expert to evaluate Sinisterra's capacity to plan the crime." App. Br. at 67 (emphasis added).

Sinisterra fails to grasp the Government's logic. Because it was solicited by the Government to rebut factual assertions contained in the § 2255 motion and attached affidavits, Duchardt's affidavit should have contained precise detail as to the purpose of Dr. Dos Santos' evaluation. It did not. The ineffective assistance of counsel claim should have caused Duchardt extremely sober reflection about what he did and why. Instead, the affidavit is telling for what it did not reveal with respect to Dr. Dos Santos' evaluation.

An evidentiary hearing is required because the Government can only "suggest" the nature of Dr. Dos Santos' evaluation. The record fails to demonstrate the purpose of Dr. Dos Santos' evaluation. The record fails to demonstrate whether the evaluation was for competency to stand trial, sanity at the time of the offense, a mental state defense at the guilt phase, or mitigation. The record fails to demonstrate when the

17

Appellate Case: 08-1925     Page: 22     Date Filed: 11/18/2009 Entry ID: 3607842

evaluation took place or whether Duchardt produced to Dr. Dos Santos any memoranda or even oral reports as to Sinisterra's horrific childhood, his history of head injuries and substance abuse, or Dr. Wheelock's report of low IQ and poor intellectual functioning.

The record fails to demonstrate whether Dr. Dos Santos contacted Sinisterra's family to learn of risk factors that may have contributed to psychological or psychiatric illness and/or neuropsychological dysfunction. The record fails to demonstrate whether Duchardt provided information necessary for Dr. Dos Santos to contact Sinisterra's family members or others in Colombia to obtain relevant background information for his evaluation.

In the § 2255 proceedings, Dr. Llorente spoke with Sinisterra's mother and sister, and the information he gleaned with respect to Sinisterra's exposure to physical and emotional abuse as a child was relevant to his diagnoses. Appx. 199 - 200, 207. For example, Dr. Llorente concluded that Sinisterra "lacked significant parental controls that would have protected him as a youth" which, coupled with his neuropsychological deficits and absence of psychological assistance, contributed his being placed "at risk to undue influences." Appx. 207. According to Dr. Llorente, these psychosocial factors partially accounted for Sinisterra's contact with the criminal justice system. *Id.* An evidentiary hearing is required to determine the purpose of any evaluation by Dr. Dos Santos and whether defense counsel adequately prepared him for the evaluation.

Sinisterra's citation to decisions of the Supreme Court and this Court that

18

require the production of such records is ignored entirely by the Government in its brief. Instead, the Government argues without support that the information "which Sinisterra argues should have been provided to Dr. Dos Santos, was unavailable at that time, and Sinisterra's counsel were not deficient in failing to uncover it." Appx. Br. at 68. That reasoning is circular.

Where the missing information has the potential to make more accurate and mitigating the diagnosis of the retained mental health expert, the Supreme Court and this Court have held that the failure to investigate that information and produce it to the defense mental health experts constitutes ineffective assistance of counsel. *See* Op. Br. at 64 (citing *Rompilla v. Beard*, 545 U.S. 374, 392-93 (2005); *Kenley v. Armontrout*, 937 F.2d 1298, 1307 (8th Cir. 1991)). To the extent any of the mental health evidence was "unavailable," it was rendered so by counsel's deficient investigation. As the Supreme Court has noted, the failure to uncover and present mitigating evidence cannot be justified as a "tactical decision" where counsel fails first to fulfill their obligation to conduct a thorough investigation into the defendant's background. *Williams (Terry) v. Taylor*, 529 U.S. 510, 522 (2000).

The Government concludes, curiously, that "Sinisterra's counsel was not deficient given that any mental health expert is likely to concur that Sinisterra has a low intellectual capacity." App. Br. at 68. That argument fails to explain why the evidence was not presented. Of course any explanation offered by the Government now would be novel and would conflict with the Government's false assertion to the district court in its opposition to Sinisterra's § 2255 motion that the evidence *was*

19

Appellate Case: 08-1925    Page: 24    Date Filed: 11/18/2009 Entry ID: 3607842

presented to the sentencing jury. Appx. 278.

Evidence of low intellectual functioning is, according to the Supreme Court, "inherently mitigating." *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). However, contrary to Duchardt's uncorrected and erroneous assertion that he presented Dr. Wheelock's testimony at trial (Appx. 225), the evidence of Sinisterra's low intellectual functioning was *never* revealed to the jury. It was only presented at a pretrial suppression hearing. The Government objected to its introduction at the guilt stage, and defense counsel never presented it at sentencing. Thus, although any mental health expert might have testified a capital sentencing to low intellectual functioning on the part of Sinisterra, none was asked by defense counsel to do so here.

**C.    Ineffective assistance of counsel for failing to retain a mitigation specialist.**

The Government's argument that Duchardt *did* obtain a mitigation specialist is a red herring. That Duchardt retained Daniel Grothaus as a guilt phase investigator to investigate primarily in Houston, and that Grothaus may have assisted tangentially with the Houston aspect of the mitigation investigation is to completely misunderstand Sinisterra's argument.

The problem was that defense counsel did not adequately investigate and present the evidence of Sinisterra's horrific childhood *in Colombia*. The Government's mantra that Grothaus was qualified to perform a mitigation investigation (App. Br. at 38, 46, 55) rings hollow because it was the evidence in Colombia that went uninvestigated and was not presented to the capital sentencing

20

Appellate Case: 08-1925    Page: 25    Date Filed: 11/18/2009 Entry ID: 3607842

jury. Grothaus averred in the affidavit attached to Sinisterra's Traverse that he had absolutely nothing to do with the Colombia portion of the investigation and he did not accompany Brewer on her trip to Colombia to meet Sinisterra's family. Appx. 314.

Sinisterra agrees with the Government's point that the failure to obtain a mitigation specialist "should not constitute the basis of a distinct ineffective assistance of counsel claim as long as the overall mitigation investigation was constitutionally sufficient." App. Br. at 57. *See Jells v. Mitchell*, 538 F.3d 478, 495 (6th Cir. 2008) ("[w]hile Jell's counsel did not have a specific obligation to employ a mitigation specialist, they did have an obligation to fully investigate the possible mitigation evidence available.").

As noted in the Opening Brief and in this Reply Brief, defense counsel failed to investigate and present compelling mitigating evidence of Sinisterra's horrific childhood in Colombia, which *would have been presented* had defense counsel obtained the requisite mitigation specialist. The *Jells* Court granted the writ of habeas corpus in a capital case on claims of ineffective assistance of counsel where counsel failed to timely begin an investigation of mitigation and failed to retain a mitigation specialist to gather information about the petitioner's "educational, medical, psychological, and social background necessary to prepare a proper mitigation defense." 538 F.3d at 494. This Court should find persuasive the reasoning of *Jells* that in the absence of a thorough mitigation investigation by defense counsel, counsel has a constitutional duty to retain a qualified mitigation specialist to perform that task.

21

Appellate Case: 08-1925    Page: 26    Date Filed: 11/18/2009 Entry ID: 3607842

An evidentiary hearing is required here to test the veracity of various statements made by Duchardt with respect to why he did not protect Sinisterra's right to present all available mitigating evidence at the capital sentencing hearing, including his statement that he was unable to locate a mitigation specialist who could have met with Sinisterra and gone to Colombia to develop mitigation there. Appx. 222. Mr. Jenab, who represented Sinisterra in the § 2255 proceedings, as well as represents him in this appeal, found a mitigation specialist with dual U.S.-Colombian citizenship, Hector Guevarra, with qualifications necessary to perform a mitigation investigation in support of the present ineffective assistance claim. Appx. 101, 116. The district court denied both of Mr. Jenab's requests that Mr. Guevarra be funded to perform the mitigation investigation necessary for Sinisterra to prove the ineffective assistance claim. Appx. 105, 121.

Of course, prior to noting in his affidavit that he could not find a mitigation specialist, Duchardt stated that he did not need one because, in his experience, family members are more effective in presenting the case in mitigation. Appx. 218. An evidentiary hearing is required to determine whether these inconsistent explanations (I did not need one/I could not find one) constitute a *post hoc* rationalization for the failure to retain a qualified mitigation specialist.

Duchardt would also be asked to explain at a hearing his dubious assertion that his applications for visas for the Colombian witnesses were "timely" (Appx. 220), where the record does not reflect when the applications were filed, while the Government was successful in gaining entry for its witnesses when those applications

22

were filed in August 1999. Tr. 3114; Appx. 24. Tello's lawyers were unsuccessful in obtaining visas, and those efforts occurred in December 1999. Tr. 3110. Brewer did not even go to Colombia to investigate mitigation until the spring of 2000, so it is unlikely that Duchardt, whose role did not include development of Colombian mitigation, would have acted as early as the Government did to attempt to gain entry for the Colombian mitigation witnesses. Duchardt would also be made to answer why he "believed" the threat of reversal on appeal would have caused "the Court, the Department of Justice and the Department of State to permit these witnesses to enter the country." Appx. 219. The subjects to be probed would include Duchardt's experience in securing the entry into the United States of witnesses from Colombia.

While Duchardt admitted in hindsight that he should have retained a mitigation specialist to present the "Colombia witness information," Appx. 223, reasonably competent counsel would have acted with *foresight* to have investigated and presented that mitigating evidence. It was objectively unreasonable for counsel not to have retained a mitigation expert to investigate evidence of Sinisterra's horrific childhood and present the evidence at the sentencing hearing. An evidentiary hearing is required to prove deficient performance and *Strickland* prejudice.

## II.

**German Sinisterra was denied his right to effective assistance of counsel under the Sixth Amendment where trial counsel failed to object to prosecutorial misconduct in closing argument at the capital sentencing hearing, and the same appellate counsel failed to raise the claim of prosecutorial misconduct on direct appeal.**

Sinisterra's Opening Brief attacks the Government's closing argument at the

23

Appellate Case: 08-1925    Page: 28    Date Filed: 11/18/2009 Entry ID: 3607842

capital sentencing hearing on two grounds, that it denied Sinisterra the individualized sentencing determination required by the Eighth Amendment and it deprived Sinisterra a vehicle required by the Eighth Amendment for the sentencing jury's consideration of mitigating evidence. Op. Br. at 69-74. In short, Sinisterra argues that the Government's repeated appeals to the jury to impose the death penalty as the "conscience of the community" and to "send a message" to the "drug traffickers of the world" resulted in the imposition of the death penalty based on arguments that diverted the jury's attention away from a proper consideration of the offense and the background and character of Sinisterra, which is required under the Supreme Court and this Court's Eighth Amendment jurisprudence. *See Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 438 U.S. 586 (1978); *Weaver v. Bowersox*, 438 F.3d 832 (8th Cir. 2006).

In addition, the argument that it would be "wrong" for the jury not to impose the death penalty based on evidence introduced at sentencing that Sinisterra's wife and children loved him and how his death would impact them, served to deprive Sinisterra of consideration of mitigating evidence. *See Abdul-Kabir v. Quarterman*, ___ U.S. ___, 127 S.Ct. 1654 (2007); *Penry v. Lynaugh*, 492 U.S. 302 (1992). *See also United States v. Rodriguez*, 581 F.3d 775, 820 (8th Cir. 2009) (Melloy, J., concurring in part, dissenting in part) (Government's improper argument that how the defendant's execution will affect his family is not mitigating "under the law" required a curative instruction to the effect that "[a] defendant's possible value to other human beings and the impact of his execution on the defendant's family members are

24

Appellate Case: 08-1925     Page: 29     Date Filed: 11/18/2009 Entry ID: 3607842

without question valid mitigating factors.").

The Government fails to challenge the portion of trial counsel Jennifer Brewer's affidavit, which was attached to the Traverse, in which she averred that she was unaware at the time of trial that case law proscribed "conscience of the community" and "send a message" arguments. Appx. 305-06. The Government fails to challenge Brewer's further averment that she had no strategic reason not to object to the prosecutors' arguments. Appx. 306.

## A. The Government's "send a message" and "conscience of the community" arguments are unconstitutional.

### 1. Violation of requirement of individualized sentencing.

The Government argues that Sinisterra's argument fails to take into account the full "context" in which the prosecutors made their penalty phase closing arguments. App. Br. at 72-73, 81-82. Sinisterra notes that the Government's brief ignores the first closing argument assertion the Government made to the jury that a death verdict would "send a message to all other drug dealers that this community will not tolerate it." Tr. 2892. Sinisterra noted that comment in his Opening Brief and identified the Government's repeated return to that theme in its later rebuttal argument at closing. Op. Br. at 66.

The Government quotes substantially the same prosecution rebuttal closing arguments reproduced in Sinisterra's Opening Brief. Op. Br. at 66-68. The Government, however, emphasizes through the use of italics the portions of sentences where the trial prosecutors argue that a death verdict would send the message *to*

25

Appellate Case: 08-1925     Page: 30     Date Filed: 11/18/2009 Entry ID: 3607842

*Sinisterra* that his actions were wrong. App. Br. at 81-82. The Government fails to italicize the portions of the arguments that Sinisterra posits are constitutionally objectionable. The Government argues: 1) "*Tell this defendant* and those like him that murder will not be tolerated especially murder to further drug trafficking crimes"; 2) *Tell him he's wrong* and tell the other drug traffickers of the world if they come to Kansas City they are going to be dealt with in the most sever way, they are going to receive a sentence of death." App. Br. at 81-82 (italics in original). That the prosecutors also happen to have made arguments that did not violate the Constitution does not save the objectionable arguments from the Court's scrutiny or from reversal.

The Government then agues that the Court's decision in *Weaver v. Bowersox*, 438 F.3d 832, 841 (8th Cir. 2006), is distinguishable from the present case. App. Br. at 82. In that case, as the Government notes, the prosecutor repeatedly told the jury that the case went beyond the defendant and "touched all the dope dealers and murderers in the world." *Id.* (quoting from *Weaver*, 438 F.3d at 837). Actually, this Court noted that the misconduct also included references to the prosecutor begging the jury "for the entire community and for society not to spare [the defendant's] life"; that life in prison would send the wrong message "to the drug dealers, the dope peddlers and the hit men they hire to do their dirty deeds"; that "the message has to be death for these types of people"; and that the punishment "is far more important than William Weaver," that "it goes far beyond William Weaver," and that it "touches all the dope peddlers and murderers in the world." *Id.*

The Government argued at Sinisterra's sentencing hearing that the jury should

26

"send a message to all other drug dealers that this community will not tolerate it," "it's time to turn the tables on drug traffickers like this defendant," "[t]ell this defendant and those like him that murder will not be tolerated, especially murder committed to further drug trafficking schemes," and "tell the other drug dealers of the world if they come to Kansas City they are going to be dealt with in the most severe way, they are going to receive a sentence of death." Tr. 2892, 2910-11. *See* Op. Br. at 66-67. There is no principled way to distinguish the two cases. In both cases, the prosecutors distracted the jury from making the individualized sentencing determination required by the Eighth Amendment. *See Weaver*, 438 F.3d at 841.

The Government attempts to blunt the trial prosecutors' three "conscience of the community" arguments by arguing that they merely "referred to the jury's role in determining the appropriate punishment for Sinisterra." App. Br. at 82. As the Court stated in *Weaver*, however, "the conscience of the community as a guiding principle for punishment puts too significant a burden on a single defendant." 438 F.3d at 841. The implication that the jury could solve the community ill of drug crime by killing Sinisterra diluted the individualized sentencing to which Sinisterra was entitled under the Eighth Amendment.

In addition, the argument led the jury to believe that the decision to impose the death penalty did not rest with the jury alone; it shared that responsibility with "the community." The Supreme Court and this Court have held that arguments that diminish the jury's responsibility for the imposition of the death penalty violate the Eighth Amendment. *See Caldwell v. Mississippi*, 472 U.S. 320, 328 (1985); *Antwine*

27

Appellate Case: 08-1925     Page: 32     Date Filed: 11/18/2009 Entry ID: 3607842

*v. Delo*, 54 F.3d 1357, 1362 (8th Cir. 1995).

> ### 2. The Government errs in arguing that reasonably competent counsel would not have known to object at the time of Sinisterra's trial.

The Government also seeks to distinguish *Weaver* on the basis that it was not decided "until 2006, six years after Sinisterra's penalty phase." App. Br. at 84. According to the Government, reasonably competent counsel would not have been on notice that "send a message" arguments violate the Eighth Amendment. *Id.* The Government acknowledges, however, that this Court condemned similar "send a message" arguments when it ordered that the writ of habeas corpus issue as to a capital sentence in 1989 in *Newlon v. Armontrout*, 885 F.2d 1328 (8th Cir. 1989). App. Br. at 84.

What is clear from both *Weaver* and *Newlon* is that *Weaver* broke no new ground with respect to Eighth Amendment jurisprudence and the requirement of individualized sentencing. The requirement that a capital sentence be based on the character and record of the offender and the circumstances of the offense, and not on extraneous matters, predated Sinisterra's trial. *See Woodson v. North Carolina*, 428 U.S. 233, 303-04 (1978) (plurality); *Weaver,* 438 F.3d at 841 (citations omitted).

In *Newlon*, this Court quoted a decision of a sister circuit for the proposition that "a decision on the propriety of a closing argument must look to the Eighth Amendment's command that a death sentence be based on a complete assessment of the defendant's individual circumstances." 885 F.2d at 1337 (citation omitted). Reasonably competent counsel would also have understood the impropriety of the

28

Appellate Case: 08-1925     Page: 33     Date Filed: 11/18/2009 Entry ID: 3607842

"conscience of the community" arguments based on the Supreme Court's 1985 decision in *Caldwell* that bars argument that diminishes the jury's responsibility for imposing death. 472 U.S. at 328. Reasonably competent counsel practicing in Kansas City would have known at the time of Sinisterra's trial that the Government's "send a message" and "conscience of the community" arguments were violative of the Eighth Amendment.

**B. The Government's sentencing hearing argument that it would be "wrong" for the jury to base a life verdict on familial love constituted reversible error.**

The Government asserts that the prosecutor merely commented on the weight of the evidence in arguing that it would be "wrong" for the jury to base a life verdict on the love of Sinisterra's children for their father. App. Br. at 80. The Government argues that the prosecutor did not state that the jury was "legally prevented from considering the love of Sinisterra's children." *Id.*

This Court's recent decision in *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009), provides guidance on whether the Government's argument denied Sinisterra a vehicle with which to give voice to his mitigating evidence under *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007), and *Penry v. Lynaugh*, 492 U.S. 302 (1989). In *Rodriguez*, the Government told the jury that "the issue of punishment for the Defendant is not an issue of how it affects his family, not under the law." 581 F.3d at 800. The Court found that the argument, in isolation, would have been improper because it directed the jury to ignore a proposed mitigating factor. *Id.* However, the Government later argued that the "family impact mitigation" should be

29

given "little weight when determining the appropriate penalty." *Id.*

Here, the Government failed to ameliorate its remark that it would be "wrong" for the jury to base a life verdict on Sinisterra's family impact evidence. The Government failed to temper that remark with argument that such evidence should be given little weight. As noted in *Rodriguez*, "A defendant's possible value to other human beings and the impact of the defendant's execution on the defendant's family members are without question valid mitigating factors." 581 F.3d at 820 (Melloy, J., concurring in part, dissenting in part). The Government's argument barred the jury's consideration of that non-statutory mitigating factor.

C. **Sinisterra's ineffective assistance of counsel claim gains support from the claim raised on direct appeal that was based on the failure to object to the Government's Hitler, Manson, Dahmer argument.**

In a footnote, Sinisterra noted that Duchardt and Brewer raised as plain error on direct appeal a claim of prosecutorial misconduct based on the Government's raising in closing argument at the capital sentencing hearing the specter of Adolph Hitler, Charles Manson, and Jeffrey Dahmer. Op. Br. at 77 n.11. Sinisterra does not re-raise as a distinct claim here the Government's Hitler, Manson, Dahmer argument, which the Court decided. *See United States v. Ortiz*, 315 F.3d 873, 903 (8th Cir. 2002).

The Government's Hitler, Manson, Dahmer argument buttresses Sinisterra's present claims of misconduct and the claim of ineffective assistance of counsel based on Duchardt and Brewer's failure both to object to the remarks at trial and to raise all of the prosecutorial misconduct on direct appeal. Contrary to the Government's

30

Appellate Case: 08-1925    Page: 35    Date Filed: 11/18/2009 Entry ID: 3607842

argument, this Court did not earlier rule that the references to Hitler, Manson, and Dahmer were "constitutionally acceptable." App. Br. at 77.

Instead, the Court found that the Government did not argue that Sinisterra was like the mass murderers, but only that they too had families who loved them, which was employed to blunt Sinisterra's mitigation evidence that his family loved him and would be negatively affected by his execution. *Ortiz*, 315 F.3d at 903. The Court concluded that this type of reference was "not prejudicial enough" to deprive Sinisterra of his constitutional right to a fair penalty phase hearing, noting that "there was only a single reference to these famous criminals." *Id.* In light of the pervasive additional improper remarks identified here, the Hitler, Manson, and Dahmer reference should necessarily be viewed as far more prejudicial and contributing to a finding that Sinisterra has proved the deficient performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The reference to the mass murderers was not made benignly. A prosecutor's reference to mass murderers Charles Manson, Richard Speck, and Son-of-Sam served as one ground for the district court's grant of habeas relief in *Newlon v. Armontrout*, 693 F.Supp. 799, 806 (W.D.Mo. 1988). This Court noted those references when it affirmed in *Newlon*, 885 F.2d at 1335, 1342. In this case, the Hitler, Manson, Dahmer references were calculated to conjure the familiar images of those men and inflame Sinisterra's capital sentencing jury. That tactic was recognized by co-defendant Ortiz as so prejudicial that counsel, who were present in court for the Government's Hitler, Manson, and Dahmer argument in Sinisterra, moved to bar the death penalty for

31

Appellate Case: 08-1925     Page: 36     Date Filed: 11/18/2009 Entry ID: 3607842

Ortiz. Tr. 2929. In the alternative, counsel asked for another jury to be impaneled that had not heard the reference. *Id.* Those requests were denied. Tr. 2930.

The district court's approval of the argument on the basis that "bad people have people that love them, too," *id.*, was in error for the additional reason that there was no evidence of record to support the Government's reference. *See United Sates v. Hawkins*, 548 F.3d 1143, 1147-48 (8th Cir. 2008); *Newlon*, 885 F.2d at 1338. In the context of all of the Government's remarks in closing, references to Hitler, Manson and Dahmer were extremely prejudicial. If the point were that "everyone" has family members who love them, it could have been done without reference to three notorious mass murderers and the emotions references to them evoked.

**D.    Sinisterra has proved *Strickland* prejudice.**

In *Newlon*, the Court described three factors that comprise the test for prejudice with respect to a claim of prosecutorial misconduct in closing argument. The test asks whether the prosecutor attempted to cure his earlier misconduct, whether defense counsel entered an objection, either contemporaneous with the prosecutor's argument or in defense counsel's own argument, or whether the trial court *sua sponte* responded to the improper argument or later gave a curative instruction. 885 F.2d 1337. None of those things occurred at Sinisterra's sentencing hearing to cure the prejudice from the improper argument.

Each time a prosecutor made the "send a message" (Tr. 2908-11) or "conscience of the community" (Tr. 2881, 2892, 2911) arguments, defense counsel failed to object. The prosecutors, rather than curing their errors in later argument,

32

exacerbated the prejudice with additional improper argument along the same lines. The Government even interjected the argument that Sinisterra's presentation of mitigating evidence was equivalent to an octopus who, when in danger, shoots out dark ink into the water so he can escape. Tr. 2906. The prosecutor also argued the mitigation was "a smokescreen." Tr. 2906. The prosecutor further argued that Sinisterra was doing that "to escape justice." Tr. 2907. After arguing that it would be "wrong" for the jury to base it verdict on how Sinisterra's children feel, the prosecutor argued that the jury would not be hurting Sinisterra's children with a death verdict and that the jury should not "be manipulated in that way." Tr. 2908.

The presentation of mitigation consistent with the Eighth Amendment and the provisions of the federal death penalty statute does not constitute "manipulation." Nor does it constitute a smokescreen to allow capital defendants to escape justice. This Court has condemned a similar prosecution guilt phase closing argument that the defense is "all smoke and mirrors" and that certain evidence was merely "a red herring." *United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005). The "octopus" analogy employed by the Government here is similar to an argument condemned in the dissenting opinion in *Rodriguez*, where the Government disparaged the defense by characterizing defense argument as "another cloud to blast up into the air hoping that no one is going to notice." 581 F.3d at 818 (Melloy, J., concurring in part, dissenting in part).

The pervasiveness of the Government's misconduct and the absence of any curative action by defense counsel or the district court require that the Court find a

33

reasonable probability of a different outcome at sentencing (*Strickland*, 466 U.S. at 687), had appellate counsel raised the claim on direct appeal that trial counsel rendered ineffective assistance for failing to enter a contemporaneous objection to the Government's improper closing arguments or ameliorated their prejudice with curative defense arguments.

## CONCLUSION

For the reasons stated in Arguments I & II, German Sinisterra respectfully requests that the Court reverse the judgment of the district court, vacate the sentence of death and impose a life sentence or permit a retrial on the issue of punishment. In the alternative, for the reasons stated in Argument I, Sinisterra requests that the Court remand this matter to the district court for an evidentiary hearing. Sinisterra requests any further relief the Court deems appropriate.

Respectfully submitted this 17th day of November, 2009.

Jon M. Sands
Federal Public Defender
Timothy M. Gabrielsen
Leticia Marquez
Assistant Federal Public Defenders
John Jenab, Esq.

By _____
Timothy M. Gabrielsen

ATTORNEYS FOR APPELLANT
GERMAN C. SINISTERRA

34

Appellate Case: 08-1925    Page: 39    Date Filed: 11/18/2009 Entry ID: 3607842

## CERTIFICATE OF COMPLIANCE

I, Timothy M. Gabrielsen, do hereby certify that this brief was prepared in Corel WordPerfect format. The number of words contained in this brief is 8,921 and was calculated by the word processing software. I have enclosed a disk upon which this file has been recorded. I have scanned that disk for viruses and found none.

Timothy M. Gabrielsen

## CERTIFICATE OF SERVICE

I certify that on the 17th day of November, 2009, two copies of the foregoing Appellant's Reply Brief were sent via Federal Express to Ms. Lajuana M. Counts, Assistant United States Attorney, 400 E. 9th Street, Kansas City, Missouri, 64106-2149.

Tamelyn McNeill
Secretary, Capital Habeas Unit
Federal Public Defender's Office

Appellate Case: 08-1925    Page: 40    Date Filed: 11/18/2009 Entry ID: 3607842