# ATTACHMENT 1

Appellate Case: 08-1925     Page: 1     Date Filed: 05/24/2010 Entry ID: 3667753

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS, LOUISIANA


*********************************
UNITED STATES OF AMERICA          *      CRIMINAL ACTION
                                  *
VERSUS                            *      NO. 04-17
                                  *      SECTION "C"
JOHN JOHNSON                      *      MAY 27, 2009
*********************************

**DAY 12 OF 12**

TRIAL PROCEEDINGS HEARD BEFORE
THE HONORABLE HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE


FOR THE UNITED STATES:   U. S. Attorney's Office
                         BY:  MARK A. MILLER, ESQ.
                              BRIAN P. MARCELLE, ESQ.
                         Hale Boggs Federal Bldg.
                         500 Poydras Street
                         Room 210
                         New Orleans, LA 70130
                         504-680-3018

FOR THE DEFENDANT:       Julian R. Murray, Jr.
                         Chehardy, Sherman, Ellis, Murray,
                         Recile, Griffith, Stakelum & Hayes
                         One Galleria Blvd.
                         Suite 1100
                         Metairie, LA 70001
                         (504) 833-5600
                         jrm@chehardy.com

                         - and -

                         Ronald Jacobs Rakosky
                         Ronald J. Rakosky, Attorney at Law
                         700 Camp St.
                         New Orleans, LA 70130
                         (504) 528-9500
                         captainjacobs@att.net

2

COURT REPORTER:          Pinkey Ferdinand,
                         Official Court Reporter
                         500 Poydras Street, Room HB-406
                         New Orleans, Louisiana   70130
                         (504) 589-7781


Proceedings recorded by mechanical stenography, transcript produced by computer.

Appellate Case: 08-1925     Page: 3     Date Filed: 05/24/2010 Entry ID: 3667753

**I N D E X**

(May 27, 2009)

CLOSING ARGUMENT OF THE GOVERNMENT.........................4

CLOSING ARGUMENT OF THE DEFENSE BY MR. MURRAY............26

        BY MR. RAKOSKY....................................27

        FURTHER ARGUMENT..................................42

REBUTTAL BY THE GOVERNMENT...............................53

JURY INSTRUCTIONS.......................................70

VERDICT OF THE JURY....................................96

Appellate Case: 08-1925    Page: 4    Date Filed: 05/24/2010 Entry ID: 3667753

53

But also remember John Johnson's family.  By causing another death, you're not doing good; you're doing harm. And I hope you can understand and appreciate that.

Ladies and gentlemen, the John Johnson I know, I don't recognize in that video.

THE COURT:  Mr. Miller?

MR. MILLER:  Thank you, Your Honor.

MR. MURRAY:  I'm not finished.

THE COURT:  Oh, I'm sorry.  Sorry.

MR. MURRAY:  Almost.  John Johnson is my friend, and I beg you, don't kill him.  Please don't kill him.

Now I'm finished, Your Honor.

THE COURT:  Okay.  I'm sorry, Mr. Murray.

Mr. Miller?

**REBUTTAL BY THE GOVERNMENT**

BY MR. MILLER:  When is enough enough?  When?  When do we draw that line in the sand?  When do we hold people accountable for what they do?  Today we say, "Enough."  In this courtroom today, we say, "Enough."  Today in this courtroom, we draw that line in the sand.  Today we say, "No more."  Today, ladies and gentlemen, today, we hold this defendant accountable, not for one, but for two murders.  And he certainly committed them.

Was there anybody who doubted after Robert

54

Goodman testified that this defendant killed Joe Gennaro in cold blood, another man with a broken gun, another defenseless man?  Is there anybody?

You know he killed Joe Gennaro because Goodman told you.  Jones told you.  And they didn't get together.  They didn't have time.  They were in different parts of the country.  The time was consistent.  They commit the robberies at the same time.  The manner in which they committed the robbery was consistent.  The murder was consistent with the Iberia Bank.  All the same usual suspects doing the same usual things that they did, robbing and doing dope.

Today, ladies and gentlemen, today is the day for justice, and justice must be done.  It is a day for justice for the victims.  It is a day of justice for the people of this parish and surrounding parishes.  It is a day of justice for John Johnson.  Today, today, justice demands a sentence of death.

Now, I listen to defense counsel, and now I get it.  It's Captain Jenkins' fault somehow.  See, the Government thought that he was a hero, who, like Sidney Zaffuto, put a gun on every day, went into those banks, did these details to protect people, to protect the tellers, to protect the customers, to protect the loan officers, people who tried to make our lives better, get us mortgages, get

us car loans, do those sorts of things.  I thought he was a hero.  I thought doing something like that, serving your community, made you a good person.  But I guess not.

I guess he came in here and told you something that didn't happen.  Take it to the bank, so to speak, ladies and gentlemen, if he hadn't have warned him, he wouldn't have told you.  Andrew Jenkins isn't that kind of person.  This is a blame game.  Let's kind of push it off on Jenkins.  Oh, we're not calling him names, but he's lying to you, ladies and gentlemen.  That's what he said.

But you see, the problem is, it's not Jenkins' fault he decided to commit a bank robbery.  It wasn't Jenkins' fault that he decided to put a .45 caliber weapon in his hand and to load it before he went there.  It wasn't Jenkins' fault that he tried to kill Sidney Zaffuto. Jenkins did what he was supposed to do.  He warned them and when he didn't -- he sought to protect people.  He put himself in a position of danger.  He did the right thing.

The defendant, not Jenkins, set this whole thing in motion.  And if it hadn't been for this defendant, Sidney Zaffuto would be alive today.  And it's not Jenkins' fault that he killed Joe Gennaro.  Did Jenkins make him put a bullet in the back of Joe Gennaro?  No, he didn't, ladies and gentlemen.  Iberia Bank was not Andrew Jenkins' fault. And Iberia Bank was not his first taste of blood.

Appellate Case: 08-1925   Page: 7   Date Filed: 05/24/2010 Entry ID: 3667753

You know, counsel cried at the end here about John Johnson and the punishment he faces.  You know, if you want to shed a tear, cry, cry for Sidney Zaffuto.  If you want to shed a tear, cry for his wife, Shirley Zaffuto.  Cry for her.  She rides her bicycle to go to the bank.  Shed a tear for Linda Kelly, Terry Zaffuto, his siblings, who will never hear that laugh again, the laugh they described so lovingly.  Shed a tear for Andrew Medina, the kid whose best memory of him is asking if he can call him dad.  Shed a tear for his mother.  She had to bury her own son.  And if you want to shed a tear, shed a tear for the City of New Orleans because we lost one of our best and we lost one of our bravest.

You know, counsel talked to you, too, about his upbringing, and he wants you to use it as an excuse, an excuse for murder.  Again, the blame game.  Again, a refusal to take responsibility for his actions, as Robert Goodman reminded him he should be doing.

See, the problem with this argument about this terrible childhood, it wasn't as terrible as he makes it out to be.  His mother set a good example; taught him about self-sufficiency; taught him about getting off of welfare; taught him about getting a job; taught him about doing the right things in life; provided him a home; provided him the necessities he needed.

His sisters; his brother, the disabled vet -- his brother is a disabled vet; his friend, Arthur Devore, who came in, all raised in the same environment, not one a murderer, not one a drug addict, not one a bank robber.

It's all about choices, ladies and gentlemen. It's all about choices.  He chose to kill.

You see, a lousy childhood may explain why somebody steals, may explain why somebody drinks, may even explain why somebody becomes a dope dealer, but murder -- but it does not, under any circumstances, explain, and it certainly does not excuse not one, but two murders.

Counsel talked to you about addiction.  You know, the evidence was really kind of unclear about the extent of his addiction.  It fails to establish whose needles they were, because we know they were all using drugs at one time or the other.  And we really don't know what the amount of his drug usage was at the time of the offense.  But the evidence did establish that the Iberia Bank was not one of those I-need-dope-now kind of robberies.  It was a well-planned crime in which he entered the business with a powerful and loaded weapon.

Addiction doesn't make you choose a .45 caliber semi automatic pistol instead of a fake gun, an empty gun, a .22, a water pistol.  Anything else he could have chosen. He chose one of the most powerful handguns available.

Appellate Case: 08-1925    Page: 9    Date Filed: 05/24/2010 Entry ID: 3667753

If he needed money he could have shoplifted; he could have been a burglar; he could have been a petty thief.

Recall the expert testimony. Heroin addicts are generally nonviolent and that they choose, they choose -- again, this is a case about choices -- they choose what kind of crimes they want to commit in order to support their habits. He chose to rob on January 8, 2004.

Addiction doesn't make you kill. That, too, was his choice.

Counsel blames the Government. We hid things. We exaggerated. Come on. Come on. I'm not going to answer those sorts of charges, but those reports are in evidence. Look at Hibb's (phonetic) report. He'll tell you that the tall person fired a shot wildly -- at the end of it -- and that they recovered that slug. That's not the person who killed, the tall person. It was him who killed Joe Gennaro.

Counsel talked about the character of John Johnson and his good deeds as a father, as a mentor. He pointed to that. You know, it's not an overstatement to say a good father doesn't kill; doesn't commit murder. A good father doesn't make his quality time prison visits with his family. A good father, a good mentor, walks that walk, does the right thing, and leads by example. He

teaches respect for the law by the way he lives, the way Sidney Zaffuto did.

You work hard as a deputy sheriff and then you make ends meet, not by robbing people and taking things that don't belong to you.  You make ends meet by doing details.  You live a life like Sidney Zaffuto.

Actions always, always speak louder than words. The actions of the defendant in this case speak volumes.  A person who's essentially good does not commit murder; a person who is essentially rotten to his core does.  It really is that simple.  Some people are just broken.

Counsel talked to you about his family and about the nice things, I guess, that they said about him.  You know, they were good people.  They were good people.  But their good deeds are not his good deeds.  Their good choices are not his good choices, any more than his bad choices are their bad choices.  You don't reward him because his grandchildren may be doing well or his nieces and nephews may be doing well, any more than you punish them because of the things he's done in his life.  You are not here to make his family's life better.

They are in a sense victims, too, ladies and gentlemen, and any anguish that may occur to his family as a result of a sentence of death is a result of his actions. It's not the result of you doing the right thing in this

case.  It is up to him.  It is up to him to make peace with his family.  It is not your job to do that for him.

Make him, make him take responsibility for his choices.  Make him explain this to his family.  Don't feel guilty about doing your duty in a death penalty case.  We are here because of the choices the defendant made.  We are here because a brave man is dead.  Remember the victim.  His name was Sidney Zaffuto.  We are here because the defendant killed a police officer.  And most importantly, ladies and gentlemen, in the end, his family really didn't know him.  See, they never had to deal with him as he pointed a gun at them.  See, they never had to deal with him that way.

They didn't have to deal with him, and they didn't have to hide underneath a teller area; they didn't have to urinate on themselves; they didn't have to listen to him as he shouted obscenities, threats, and demands at them while he threatened to kill them.  No, they didn't know John Johnson, but you do.

Who is the real Johnson, real John Johnson?  I will tell you who he is.  He is a violent, opportunistic, and vulgar career criminal whose character, whose real values, the real person, were revealed to you on the bank surveillance tapes.  He showed you by his own actions what kind of man he is.

Now, make no mistake. Those, those stills, those series of pictures, bank surveillance tapes, they were grim. But they showed you a man devoid of decency, a man devoid of humanity. They show you a man who long ago, long ago, chose a path of lawlessness and violence. They show you a man who believed he had the right, he had the right to terrorize decent people and take, take, what was not his. They showed you an unrepentant killer who was willing to unleash gunfire on anybody who got in his way.

Make no mistake, ladies and gentlemen, he kills anybody who doesn't do what he wants them to do. That's John Johnson. And when you are weighing the aggravators and mitigators and determining his character, consider, too, the manner in which he executed Joe Gennaro, his first murder: three shots; one to the neck, one to the head, and one in the back.

Joe Gennaro would have had to have been prone; he had to come up and shot this man in the back. Let's talk about cowards. And why would he do that? Why did he do that? Well, he didn't have to protect himself, but he was protecting his partner, Alfred Smith, just as he protected Alfred's brother, Joseph Smith, on January the 8th of 2004. He was willing to kill decent, hardworking people to save brutal, lawless armed robbers. That's John Johnson.

John Johnson is not a decent man who become a

robber and a murderer because he did drugs.  He is a murderer and a robber who happened, maybe, maybe, to be a heroin addict.

Recall the testimony of the sister.  He was violent and antisocial at age 12.  He was bad in 1974, and nothing you have heard over the past couple of weeks would make you not think that he's still cold and calloused today.  John Johnson cannot and he will not ever be rehabilitated.  Ladies and gentlemen, he just doesn't have it in him.

He was given a second chance in 1974 when he escaped justice for the murder of Joe Gennaro.  And what did he do with that second chance?  Did he become a better man?  Did he become a law-abiding man?  No.  He continued to use heroin.  He continued to rob banks.  He continued to intimidate decent people, hardworking citizens.  And he decided to murder a deputy sheriff who was working a detail.  That's what he did with his second chance.  Don't give him a third change.

Ladies and gentlemen, John Johnson killed essentially two defenseless people.  To sentence him to death or to sentence him to anything less than death, won't change his life at all.  It will only put him with the type of people with whom he has always felt comfortable, the type of people with whom he has always chose to associate.

Failure to impose a sentence of death is a statement that his life is worth more than the victim he annihilated -- in fact, the two victims he annihilated.  He essentially asks you to send him to his room where he gets privileges, three squares, and the ability to have visitors.  The only visitors that Sidney Zaffuto will have come to his grave site.

You see, for Sidney Zaffuto's wife, for his mother, for them, the pain, the pain will never cease, and the nightmare is never going to end.  They're going to remember this every day for the rest of their life.  It will haunt them.  Believe me, it is going to haunt them.

An imposition of the death penalty alone cannot bring peace to the victims.  And it's not meant to bring the victim back.  It's not meant to bring him back.  That's not the purpose of imposing death in this sentence.  Instead, it is meant to show society's outrage, absolute outrage regarding the most heinous of crimes --

MR. RAKOSKY:  Excuse me.

MR. MILLER:  -- committed by the most violent --

MR. RAKOSKY:  Excuse me, Judge.  This is not proper argument to talk about what we're doing for society.  This is a case made on the facts of this case.

MR. MILLER:  Your Honor, general deterrence is --

THE COURT:  Overruled.  Overruled.  You can

continue.

MR. MILLER:  It is instead meant to show society's outrage regarding the most heinous of crimes committed by the most violent and depraved among us.  It is meant to punish and condemn, in no uncertain terms, the defendant's barbaric behavior.  It is because we value life so highly, because we value it so highly, that he must, ladies and gentlemen, he must forfeit his.

You know, counsel's plea was essentially a plea for mercy.  Don't kill him.  He doesn't deserve to die.  Well, it has been said that children are innocent and they love justice, and that adults are wicked and they prefer mercy.  Don't give John Johnson what he wants.  Give him what Mr. Marcelle told you, give him what he has earned.

Does a few words of encouragement to family members in the times that he wasn't in prison really outweigh all the terror, all the pain, all the loss, and all the brutally he has inflicted over his 35 years of his criminal career?  Does it?  Remember, life without parole is the least sentence.  It is the least sentence available.  And nothing he has done and nothing that you have seen makes that the appropriate resolution of this case.

Don't be the water that washes the blood from his hands.  For every drop of blood that spilled on the floor of the Iberia Bank, sentence him to death.  For every

bullet that tore into the bodies of the victims, sentence him to death.  And for every gurgle and every gasp of Joe Gennaro on that tile floor on May the 3rd, sentence him to death.

Do not confuse mercy with weakness.  You have an obligation to uphold the law, and it takes courage to do that.  The Government is confident, absolutely confident, that you have that courage.

Mercy.  Think about it.  Under what sort of twisted notion of unfairness would a society reward its most willing -- or excuse me -- it's most violent members? Mercy ceases to be a concept worthy of a civilized nation where it is not reserved for those truly unfortunate cases. Mercy must the exception and not the rule.

A mother steals to feed her children.  A son steals or robs to take care of his mother's kidney dialysis.  A father kills somebody who abused his child. To those people you show mercy.  You recognize that their behavior, though not inexcusable, is deserving of some special consideration.

Do you show mercy for a career criminal who enters a bank on a typical workday, armed with a loaded handgun, with a certain knowledge -- especially since he killed before -- the certain knowledge that he may have to use to use it and indeed was willing to do so?

Do you show mercy for a stone cold killer who stood over Joe Gennaro and pumped a bullet into his back? Do you show mercy for that kind of person? No, ladies and gentlemen, you do not.

He is a killer and he is contemptuous. By his actions he has absolutely shown you that he is contemptuous of society's law and has decided long ago to play by his own rules. That is clear from his criminal record, which has been established to you beyond a reasonable doubt, that has spanned some 35 years. He must now be held accountable for those murderous decisions in 1974 and 2004.

You know, in a few minutes you're going to be beginning your deliberations in this case. Know this: a death penalty trial is a prayer. It is a prayer for justice. It is the last opportunity for society to vindicate the victim, the last opportunity for citizens to make a statement.

MR. RAKOSKY: Judge? Judge, I apologize, and I do regret interrupting, but that is not what a trial is all about. It is not a prayer. It's not a last opportunity for society to do anything. That's improper, and I would ask that you ask the Government to move on.

MR. MILLER: It's not improper, Your Honor. Again, it's --

THE COURT: Let's wrap up, though.

MR. MILLER:  All right.

Look at this defendant.  Look at his crimes. Some crimes, some defendants, deserve the death penalty regardless of the mitigation presented.  Such is the case here.  When a career criminal kills a police officer, he deserves the death penalty.  When a convict kills a second time, commits a second felony murder, it always deserves the death penalty, without exception.  You don't get to commit two murders.  Enough is enough.

You must not capitulate.  You must be vigilant. Anything less than a sentence of death in this case is a failure of will and a wholly inadequate response to the senseless murder of a man who dedicated his life to protecting us.  Don't have a tepid or timid response. Respond in kind and make sure your response is certain. Express your outrage and our outrage and our unyielding commitment to protect those who protect us.

Ladies and gentlemen, people who do good, people who are good, they deserve good things to happen to them. Sidney Zaffuto was a good and decent man.  He lived like a hero and he died like one.  He should have finished his shift.  He should have gone home to his wife.  He should have drank a beer, and he should have ate a plate of red beans.

He did not deserve to die in a puddle of his own

68

blood at the hands of a cynical, manipulative criminal.

Joe Gennaro should have gone home on May the 3rd, 1974. He should have reopened on Monday, and he should have cashed David Simoneaux's check the following Friday. He did not deserve to die at age 58 on a cold tile floor in his own restaurant.

The defendant killed them both. This has been a story of not one unfinished life, it is the story of two unfinished lives: one a police officer and one a restaurant owner. Both left this earth long before they should have. Both left behind families. Both left behind dreams.

People who do evil, people who are evil, deserve justice. Make no mistake. John Johnson is evil. Justice, justice can only be had in this case if the death penalty is imposed.

As you sit there, you are not simply 12 people. You are the conscience of the community. You represent the United States. In this case, you are the dispensers of justice.

Shirley Zaffuto, Linda Kelly, Terry Zaffuto, Andrew Medina, they all wait for you to give them some justice. The citizens of this parish and surrounding parishes look to you for justice. Justice can only be had, only be had, by imposing a sentence of death.

Appellate Case: 08-1925   Page: 20   Date Filed: 05/24/2010   Entry ID: 3667753

The death penalty was enacted for situations like the one that confronts you today.  Make no mistake about it.  And if it must -- and it must be, it must be imposed in this case because if not him, who?  If not when -- if not now, when?  Because if killing a police officer after executing a restaurant owner is not enough, what is?

I'm going to tell you something, ladies and gentlemen, your head, your heart, and your gut is going to tell you what the right thing is in this case.  The right thing is to punish him by imposing a sentence of death.  Do the right thing, impose that sentence, not simply because he deserves it, impose it because he has earned it.

Thank you.

Thank you, Your Honor.

THE COURT:  All right.  Ladies and gentlemen, we're going to take a break, and then we'll come back and we'll do the jury instructions.  So let's take a 20-minute break and we'll come back for instructions.

All rise for the jury.

(At which time the proceedings were recessed for 20 minutes.)

COURT SECURITY OFFICER:  All rise.

THE COURT:  Okay.  Y'all have instructions and

verdict sheets.  Pick those up and please sit down.

**JURY INSTRUCTIONS**

Members of the jury, you have unanimously found that the defendant John Johnson is eligible to receive a death penalty.  However, just because a person is eligible to receive a death penalty does not mean that he should.

On the contrary, you must now consider which of the following two sentences is justified:  Death or life imprisonment without the possibility of release.

Obviously, it is impossible for me to overstate the importance of the decision before you, with a careful and thorough consideration you should give this matter.  It is my duty now to give you instructions as to the law applicable to this extremely serious question.

Regardless of any opinion that you may have as to what the law may be or should be, it would be a violation of your oath as jurors to base your verdict upon any view of the law other than that given to you in these instructions.

Some of the legal principles that you must apply to the sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence.  Others are different.  The instructions I'm giving you now are a complete set of instructions on the law applicable to the sentencing decision.  I have prepared them to insure that you are clear in your duties at this very serious stage of